ACCEPTED
14-15-00295-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
4/3/2015 11:45:08 AM
CHRISTOPHER PRINE
CLERK

NO. 14-15-00295-CV
NO. _____

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
4/3/2015 11:45:08 AM
CHRISTOPHER A. PRINE
Clerk

In the _____ District Court of Appeals
Houston, Texas

KHYATI UNDAVIA, MINU RX, LTD., AND MINU GP, LLC
Appellants,

v.

AVANT MEDICAL GROUP, P.A., D/B/A INTERVENTIONAL SPINE ASSOCIATES, AND
BRETT L. GARNER, D/B/A ALLIED MEDICAL CENTERS
Appellees.

On Appeal from the 152nd Judicial District Court,
Harris County, Texas
Trial Court Cause No. 2014-22186

## PETITION FOR PERMISSION TO APPEAL INTERLOCUTORY ORDER

Ashish Mahendru
State Bar No. 00796980
amahendru@thelitigationgroup.com
Darren A. Braun
State Bar No. 24082267
dbraun@thelitigationgroup.com
MAHENDRU, PC
639 Heights Boulevard
Houston, Texas 77007
713-571-1519
713-651-0776 fax

APPELLATE COUNSEL FOR APPELLANTS

# IDENTITY OF PARTIES AND COUNSEL

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made so that the Judges in this Court may evaluate possible disqualification issues.

| | |
|---|---|
| Appellants/Defendants: | Minu RX, Ltd. d/b/a Memorial Compounding Pharmacy<br>Minu GP, LLC<br><br>Khyati Undavia |
| Counsel for Appellants | Ashish Mahendru<br>State Bar No. 00796980<br>Darren A. Braun<br>State Bar No. 24082267<br>Mahendru, P.C.<br>639 Heights Blvd.<br>Houston, Texas 77007<br>amahendru@thelitigationgroup.com<br>dbraun@thelitigationgroup.com |
| Appellees/Plaintiffs: | Brett Garner<br>Brett Garner, P.A.<br>Avant Medical Group, P.A d/b/a Allied Medical Centers.<br>Interventional Spine Associates<br>Nisal Corp.<br>Qualcare Rehabilitation |
| Counsel for Appellees/<br>Plaintiffs: | Matias Adrogue<br>State Bar No. 24012192<br>Robert Stephan Kaase<br>State Bar No. 24083287<br>1629 West Alabama St.<br>Houston, Texas 77006<br>713-425-7270 (Telephone)<br>713-425-7571 (Facsimile) |

service@mjalawyer.com

Co-Defendant:                        Compass Bank

Counsel for Co-Defendants
Compass Bank:                        William P. Huttenbach
                                     State Bar No. 24002330
                                     Jacob M. Stephens
                                     State Bar No. 24066143
                                     Hirsch & Westheimer
                                     1415 Louisiana, 36th Floor
                                     Houston, Texas 77002
                                     (713) 223-5181 (Main)
                                     (713) 223-9319 (Fax)

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ......................................................... ii

TABLE OF CONTENTS................................................................................. iv

TABLE OF AUTHORITIES ........................................................................... vi

STATEMENT OF THE CASE.......................................................................... ix

ISSUES PRESENTED.....................................................................................x

SUMMARY ................................................................................................. xi

STATEMENT OF FACTS ...............................................................................1

 A. The Underlying Lawsuit And Mutual Release.....................................2

 B. The Current Lawsuit..........................................................................2

 C. Appellees And Appellants Are Inextricably Connected
   With The Signatories Of The Mutual Release ......................................3

SUMMARY OF THE ARGUMENT ...................................................................7

ARGUMENT AND AUTHORITIES..................................................................9

I. THE ORDER TO BE APPEALED INVOLVES A CONTROLLING ISSUE
 OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUNDS FOR
 DISAGREEMENT. ...................................................................................10

 A. This Appeal Involves A Controlling Issue Of Law Because, If Mutual
   Release Encompasses Appellee's Claims, Then Those Claims Are
   Barred, And Appellants Are Entitled To Summary Judgment. ..........11

B.     Substantial Grounds For Disagreement Exist Because The Issue Before The Court Is Novel And There Is Little Or No Authority Upon Which The Trial Court Can Rely. ........................................................11

     (i)     The issue before the Court is novel because no Texas court appears to have considered to what extent, and under what circumstances, an unnamed plaintiff is bound by a release......12

        a.     Texas courts broadly apply the protection of releases to unnamed defendants that are intimately connected to the facts giving rise to the release . . . . . . . . . . . . . . . . . . . .13

        b.     Despite the absence of case law, there are no policy reasons for not applying the law applicable to unnamed defendants to unnamed plaintiffs . . . . . . . . . . . . . . . . .17

        c.     The interpretation of "agent" in the context of a release is also a novel issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

     (ii)     There are grounds for substantial difference of opinion with regard to the controlling issue of law because there is an absence of case law on the issue ...............................................20

II.     AN IMMEDIATE APPEAL MATERIALLY ADAVANCES THE ULTIMATE TERMINATION OF THIS LITIGATION. ...............................20

CONCLUSION ...................................................................................................22

CERTIFICATE OF COMPLIANCE ...................................................................24

CERTIFICATE OF SERVICE ............................................................................25

APPENDIX .........................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ...............................................28

*Dyrcz v. Longview Enter., Ltd.*, 2:05-CV-476 (TJW),
2006 WL 3289046, at *1 (E.D. Tex. Nov. 13, 2006),
aff'd sub nom. *Dyrcz v. Graham Bros. of Longview, LLC*,
234 Fed. Appx. 236 (5th Cir. 2007)........................................................... 25, 26, 27

*Gulf Coast Asphalt Company, LLC v. Lloyd* , 2015 WL 393407,
at *5 (Tex. App.—Houston [14th Dist.] Jan. 29, 2015, no. pet. h.). .......... 20, 21, 22

*Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194
(Tex. App.—Corpus Christi 1984, no writ)..............................................................29

*McMillen v. Klingensmith*, 467 S.W.2d 193, 197 (Tex. 1971)................................23

*Mem'l Med. Ctr. of E. Tex. v. Keszler,* 943 S.W.2d 433, 435 (Tex.1997)...............23

*Michael Lee Andrews Trust v. Licari*, CIV.A.3:02-CV-1076-N,
2004 WL 524941, at *2 (N.D. Tex. Mar. 17, 2004)................................................24

*Stinnett v. Colo. Interstate Gas Co.*, 227 F.3d 247, 254 (5th Cir. 2000).......... 23, 26

*Vera v. North Star Dodge Sales*, Inc., 989 S.W.2d 13, 16
(Tex. App.—San Antonio, 1998, no pet.)................................................................25

*Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111, 113-14
(Tex. App.—Houston [14th Dist.] 1991, writ denied)................................ 23, 24, 26

**Statutes**

TEX. CIV. PRAC. REM. CODE §51.014(d)...............................................................19
TEX. R. CIV. P. 168.................................................................................................19

**NO. _____**

---

In the _____ District Court of Appeals
Houston, Texas

---

KHYATI UNDAVIA, MINU RX, LTD., AND MINU GP, LLC
Appellants,

v.

AVANT MEDICAL GROUP, P.A., D/B/A INTERVENTIONAL SPINE ASSOCIATES,
AND BRETT L. GARNER, D/B/A ALLIED MEDICAL CENTERS
Appellees.

---

On Appeal from the 152nd Judicial District Court,
Harris County, Texas
Trial Court Cause No. 2014-22186

---

**PETITION FOR PERMISSION TO APPEAL INTERLOCUTORY ORDER**

---

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Appellants, Khyati Undavia, Minu RX, Ltd., and MINU GP, LLC, file this Petition for Permission to Appeal Interlocutory Order issued by the Honorable Robert Schaffer, Judge in the 152nd Judicial District Court, on March 20, 2015, granting in-part and denying in-part Appellants' Motion for Summary Judgment on

vii

the basis of a prior release agreement ***and*** non-suit with prejudice between the parties. Because the release applies to all claims asserted by all Appellees in a manner which presents a controlling issue of law, which if resolved by this Court unquestionably materially advances the ultimate termination of the litigation, as validated by the trial court in applying the release to Nisal Corp. and dismissing all its claims in this lawsuit. If the release applies to Nisal Corp. in this series of transactions as articulated by Appellees in this lawsuit, then it equally applies to ***all*** parties.

The attached appendix will be referred to as "AR001-208".

# STATEMENT OF THE CASE

NATURE OF THE CASE:     Appellees, former tenants of a landlord, filed suit against the landlord's agents for various claims arising out of the parties' landlord-tenant relationship. Previously, one of the Appellees sued the landlord regarding a lease dispute, settled the case, and entered into a broad-form mutual release. Although there are multiple parties here, this case—like the previous case—is a dispute between the landlord and tenants, which was fully resolved, released, and dismissed with prejudice. Appellants contend that the mutual release bars Appellees' claims in this lawsuit, because the Appellee and Appellants are all agents of the parties to the underlying lawsuit and release.

TRIAL COURT:     The Honorable Judge Robert Schaffer, 152nd Judicial District Court, Harris County, Texas

TRIAL COURT'S DISPOSITION:     After a hearing, the trial court granted in part and denied in part Appellants' Motion for Summary Judgment, amended its original order and granted permission to appeal by stating the controlling issue of law and that an immediate appeal will materially advance a termination of this lawsuit.

## ISSUES PRESENTED

The trial court granted Appellants' motion to present the interlocutory order granting in-part and denying in-part their summary judgment for an immediate appeal to this Court. In doing so, the trial court set forth the following controlling issues of law:

> **Issue No. 1:** Whether the broad-form release signed in a prior lawsuit by parties intimately related to parties in the current lawsuit encompasses the claims asserted in this lawsuit. The scope of the release, therefore, is controlling. Further, the controlling question involves the extent to which principal-agent analysis applies in the construction of a release.

> **Issue No. 2:** Whether Appellants' sought relief will materially advance the ultimate termination of the litigation.

## SUMMARY

Appellees consist of a chiropractor and the various companies through which he carries out his chiropractic business. Appellants are the owner and property manager of Providian, a landlord that leased office space to Appellees.

In 2013, after the lease ended, one of the Appellees and another company owned by the chiropractor sued Providian for breach of the lease agreement. The parties settled that lawsuit and entered into a broad-form mutual release ("Mutual Release") in which the parties released any claims against each other, whether known or unknown.

One year later, the chiropractor discovered that the landlord's property manager—in a mail mix-up—had accidently indorsed and deposited checks belonging to the chiropractor during the term of the lease. He and his companies brought suit against the property manager and the owner of landlord for the alleged-conversion.

Appellants moved for summary judgment, arguing that Appellee's claims fell squarely within the broad scope of the Mutual Release. The trial court agreed in-part, and granted summary judgment with respect to Nisal Corp.—one of the companies that actually signed the Mutual Release. The trial court refused to extend the Mutual Release to the other remaining Appellees, who are intimately

connected with both Nisal Corp. and Sterling Practice Management, the other signatory of the Mutual Release.

Without doubt, the broad language of the Mutual Release bars any and all claims that Appellees have against Appellants, because they all arise out of the landlord-tenant relationship between the parties. That relationship was squarely at issue in the original lawsuit that engendered the Mutual Release.

# STATEMENT OF FACTS

Appellant Minu Rx ("Minu") is a pharmacy. (AR 93). Appellant Khyati Undavia ("Undavia"), a pharmacist, owns Minu. *Id.*

Undavia also owns Providian Holding, Inc. ("Providian"). *Id.* Providian, in turn, owns one asset: the building located at 2918 San Jacinto St., Houston, Texas 77004 (the "Building"). *Id.* Minu operates on the lower floor of the Building. *Id.* Providian has no physical office space and its only employee is Undavia. *Id.* Instead, Providian simply uses Minu's offices and employees for its needs. *Id.*

From 2009 through 2013, Nisal Corp. ("Nisal") and Sterling Practice Management, L.L.C. ("Sterling") rented the second floor of the Building from Providian to provide Avant Medical Group P.A. and Qualcare Rehabilitation (Nisal's d/b/a) with medical offices. (AR 41-85, 94). Sterling "managed" Avant's non-medical business dealings. (AR 143). Likewise, Avant managed some of Sterling's business as well: the summary judgment evidence established that Avant paid Sterling's rent from its accounts and also procured the lease-required insurance policy on Sterling's behalf. (AR 108; AR 109). Additionally, all of these entities—Sterling, Nisal, Avant, and Qualcare—are owned, at least in part, by Appellee Brett Garner, who is also a chiropractor for Avant and Qualcare. AR 106; AR 107; AR 113.

1

## A. The Underlying Lawsuit

In 2013, Providian ended its leases with Nisal and Sterling. (AR 114). Nisal and Sterling then sued Providian over a breach of the lease agreements. (AR 110-112). The parties settled the case and executed a broad-form mutual release ("Mutual Release"):

> NISAL [and STERLING] . . . [their] officers, directors, shareholders, partners, successors, agents, assigns, employees, servants, and attorneys . . . . hereby **RELEASE, ACQUIT,** and **FOREVER DISCHARGE** PROVIDIAN, its officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs, and attorneys from any and all liabilities, claims, demands, causes of action, judgments, liens, liabilities or potential claims or causes of action which . . . NISAL [and STERLING] . . . have ever had or could have had, whether now known or unknown, which have arisen or may arise from the beginning of time to the date of this release[.]

(AR 86-90). Importantly, the Mutual Release extends not only to Nisal, Sterling, and Providian but also to their officers, directors, agents, employees, and servants. *Id*. After the parties executed the Mutual Release, Sterling and Nisal nonsuited their claims against Providian with prejudice. (AR 91-92).

## B. The Current Lawsuit

Between 2009 and 2013, the postal service, when delivering mail to the Building, intermingled the mail. (AR 20). It did not make separate deliveries to each of the Building's tenants. *Id*. Instead, it simply dumped all of the Building's

2

mail in a reception area. Because Minu is a pharmacy, it received hundreds of checks per month as payment for dispensed medications. *Id.* There was no formal system of mail sorting or separation; each of Providian's tenants took an ad hoc approach to the mail handling. *Id.*

Through this clumsy process, a few checks dated between 2011 to 2013 made payable to Avant that arrived via the mail were accidentally sorted into Minu's large mail pile, stamped with Minu's endorsement stamp, and then deposited in Minu's account. *Id.*

In 2014, more than one year after Providian, Sterling, and Nisal entered into the Mutual Release in the underlying lawsuit, Avant realized that they had not received payment for some of their outstanding accounts receivable. (AR 1-10). They then learned that some checks intended for Avant had been received by Minu and deposited into Minu's account. Plaintiffs immediately sued Defendants. *Id.*

**C. Appellees And Appellants Are Inextricably Connected With The Signatories Of The Mutual Release**

Three parties signed the Mutual Release: Providian, Sterling, and Nisal. (AR 86-90). Each Appellee is an agent, officer, employee, or servant of either Sterling or Nisal. Likewise, each Appellant is an agent, officer, employee, and servant of Providian.

3

      (i)     <u>Appellee Garner is an agent and officer of both Sterling and Nisal</u>

Here, Garner is both the president and director of Nisal. (AR 106). Further, he signed Nisal's commercial lease with Providian as its "CEO." (AR 54). He is also an owner of Sterling. (AR 143). Garner also works as a chiropractor for Nisal. *Id.*

      (ii)    <u>Appellee Avant is an agent of Sterling</u>

Avant is the agent of both Nisal and Sterling. During the lease, Avant paid Sterling's rent using Avant checks. (AR 95; AR 109). Similarly, Avant procured a commercial general liability policy on behalf of Sterling. (AR 108).

Also, although not actually a party to the written lease, Avant nevertheless operated in the office space leased by Nisal and Sterling. (AR 95; AR 01-10). In fact, Sterling and Nisal had no operations in the Building; their leased premises were occupied by Avant. (AR 95). Sterling and Nisal even negotiated for a lease provision that prevented Providian from leasing space to any other "chiropractor" or "pain management business" in order to protect Avant from competition. (AR 53).

      (iii)   <u>Sterling is Appellee Avant's agent</u>

Sterling also acted as Avant's agent. As admitted by Appellee Garner, Sterling managed Avant's non-medical business dealings. (AR 143).

4

(iv) Garner is Avant's agent

Garner also had a management role at Avant during Avant's tenancy in the Building and worked for Avant as a chiropractor. (AR 95).

(v) Appellees connect themselves via a confusing web of D/B/As

In their case caption, Plaintiffs state that "Allied" is the d/b/a of Avant. (AR 1). Allied, in turn, is also the d/b/a of Garner. (*Id*; AR 143). Allied is again listed as a d/b/a of Avant in the Proof-of-Insurance certificate that Sterling provided to Providian at the outset of the Commercial Leases. (AR 108). Garner also admits that Allied is the d/b/a of Avant. (AR 143).

Simply put, Avant, Sterling, and Nisal were inextricably linked and were all representatives and agents of each other with respect to the lease between Providian, on one hand, and Nisal and Sterling, on the other.

(vi) Appellant Undavia is the owner, director, and agent of Providian

As mentioned above, Providian is a signatory to the Mutual Release. Undavia is Providian's owner and sole employee. (AR 93; AR 107). Undavia even signed the Mutual Release on behalf of Providian. (AR 90).

(vii) Appellant Minu is Providian's property manager

Minu was Providian's agent and representative and was expressly authorized to act on behalf of Providian for any matters, especially matters related to

5

Providian's lease with Plaintiffs. (AR 93-95). In fact, Providian has no physical office space or employees; its physical address is actually that of Minu's. (AR 93). Minu handled a variety of matters for Providian, including collecting rent, obtaining insurance for the Building, arranging and paying for the Building's security, arranging and paying for grounds, facilities, and common area maintenance, and arranging and paying for the Building's elevator inspections and servicing. (AR 93-95; AR 97-101; AR 102-105).

Thus, although Providian owned the building, Minu was the management company and was authorized to act on behalf of Providian for any matters with respect to the Plaintiffs' tenancy at the building. (AR 93-95).

## SUMMARY OF THE ARGUMENT

This appeal involves a controlling question of law as to which there exist substantial grounds for disagreement. The trial court held that the Mutual Release binds only the specifically-named signatories, without consideration of whether the release extended to the signatories' officers, directors, agents, and servants. Indeed, each of the Appellees is an officer, director, agent, or servant of a Mutual Release signatory.

Further, each of the Appellees had an intimate connection not only to the signatories of the Mutual Release, but also to the dispute giving rise to the Mutual Release. Texas case law is clear: an unnamed defendant can claim the protection of a release when its connection with the dispute is not in doubt. But no court has ever considered whether this rule applies to an unnamed *plaintiff* whose connection to the underlying dispute is not in doubt. Thus, there exist substantial grounds for disagreement.

Similarly, no Texas court has considered the level of inquiry necessary to determine whether a plaintiff is an "agent" of a signatory and therefore bound by a release. Appellees argued to the trial court that the inquiry is a fact question for the jury to decide. However, such a rule would undermine the purpose of release because it requires parties to fully litigate a case simply to determine whether the claim is barred.

Finally, an immediate appeal will materially advance the ultimate termination of this litigation. If Appellants and Appellees are subject to the Mutual Release, then Appellee's claims are barred and Appellants will be entitled to a full and final summary judgment.

Accordingly, this Court should grant Appellants' request for a permissive interlocutory appeal.

## ARGUMENT AND AUTHORITIES

This Court has discretionary jurisdiction to accept this appeal. TEX. CIV. PRAC. REM. CODE §51.014(d) establishes the standard for permissive appeals:

> On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:
>
> (1)  the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and
>
> (2)  an immediate appeal from the order may materially advance the ultimate termination of the litigation.

In conjunction with this statute, the legislature enacted TEX. R. CIV. P. 168:

> On a party's motion or on its own initiative, a trial court may permit an appeal from an interlocutory order that is not otherwise appealable, as provided by statute. Permission must be stated in the order to be appealed. An order previously issued may be amended to include such permission. The permission must identify the controlling question of law as to which there is a substantial ground for difference of opinion, and must state why an immediate appeal may materially advance the ultimate termination of the litigation.

TEX. R. CIV. P. 168. Appellants easily establish that this appeal involves a controlling issue of law as to which there is substantial grounds for disagreement, and also establish that an immediate appeal would materially advance the ultimate termination of the litigation. Accordingly, Appellants' petition for permissive interlocutory appeal should be granted.

9

## I. THE ORDER TO BE APPEALED INVOLVES A CONTROLLING ISSUE OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUNDS FOR DISAGREEMENT.

On March 20, 2015, the trial court amended its original order, and granted Appellants' request for permissive interlocutory appeal. The order further granted in-part and denied in-part Appellants' motion for summary judgment.

Texas courts have little guidance as to what constitutes a controlling legal issue as to which there is a difference of opinion. In *Gulf Coast Asphalt Company, LLC v. Lloyd*, the Houston Court of Appeals recognized this absence, and it cited to a Texas commentator's suggestion of looking to federal cases in interpreting the federal counterpart to section 51.014:

> [A] controlling question of law is one that deeply affects the ongoing process of litigation. If resolution of the question will considerably shorten the time, effort, and expense of fully litigating the case, the question is controlling. Generally, if the viability of a claim rests upon the court's determination of a question of law, the question is controlling[.] Substantial grounds for disagreement exist when the question presented to the court is novel or difficult, when controlling circuit law is doubtful, when controlling circuit law is in disagreement with other courts of appeals, and when there simply is little authority upon which the district court can rely[.] Generally, a district court will make [a finding that the appeal will facilitate final resolution of the case] when resolution of the legal question dramatically affects recovery in a lawsuit.

*Gulf Coast Asphalt Company, LLC v. Lloyd* , 2015 WL 393407, at *5 (Tex. App.—Houston [14th Dist.] Jan. 29, 2015, no. pet. h.).

10

Thus, the commentator not only suggests a test for defining a "controlling question of law," but also sets forth factors for determining whether there are "substantial grounds for disagreement": (1) when the question presented to the court is novel or difficult; (2) when controlling circuit law is doubtful; and (3) when there is little authority on which the trial court can rely. *Id.* Appellants conclusively establish that there is a controlling question of law, and establish substantial grounds for disagreement.

**A. This Appeal Involves A Controlling Issue Of Law Because, If Mutual Release Encompasses Appellee's Claims, Then Those Claims Are Barred, And Appellants Are Entitled To Summary Judgment.**

Here, the first sub-element of obtaining a permissive interlocutory appeal is met. There is little doubt that Appellants' position, if adopted, will "considerably shorten the time, effort and expense of litigating the case" and affect "the viability of" Appellees' claims. *Id.* If the Mutual Release encompasses the claims in this lawsuit, then those claims are barred, and the case is over. This fact is further evidenced by the trial court's order, which granted Defendants' a full and final summary judgment with respect to Nisal Corp.'s claims.

Appellants have thus established that this case involves a "controlling question of law."

**B. Substantial Grounds For Disagreement Exist Because The Issue Before The Court Is Novel And There Is Little Or No Authority Upon Which The Trial Court Can Rely.**

11

Appellants also establish the second sub-element for obtaining a permissive interlocutory appeal, because the controlling issue of law is subject to "substantial grounds for disagreement."

"Substantial grounds for disagreement" exist when the issue before the court is novel, or when there is little or no authority upon which the trial court can rely. *Id*. Here, the issue before the court is novel: whether a plaintiff not specifically named, but nonetheless encapsulated by the categories of defined persons or parties in a release, is so connected to the subject matter giving rise to a release and to the signatories of a release that it, too, is bound by the release. Additionally, there is no controlling law upon which the trial court can rely.

     (i)    <u>The issue before the Court is novel because no Texas court appears to have considered to what extent, and under what circumstances, an unnamed plaintiff is bound by a release</u>

Appellants' position is that Appellees, who are not *specifically* named by the Mutual Release, are so connected to the signatories of the Mutual Release and to the dispute that spawned the lawsuit that they, too, are bound by the Mutual Release. Unquestionably, Appellees were tenants of Appellants, and that landlord-tenant relationship engendered the County Court Lawsuit and Mutual Release. Appellees are also agents, principals, owners, and employees of the Mutual Release signatories. Unquestionably, the Mutual Release should bind them.

However, no Texas case appears to have addressed the extent, and under

what circumstances, a release can bind an unnamed plaintiff. There is an extensive body of case law on the inverse situation: the extent to which an unnamed *defendant* can claim the protection of a release. This case law supports Appellants' position that Appellees' claims are barred by the Mutual Release.

### a. Texas courts broadly apply the protection of releases to unnamed defendants that are intimately connected to the facts giving rise to the release

Generally, "unless a party is named in a release, he is not released." *McMillen v. Klingensmith*, 467 S.W.2d 193, 197 (Tex. 1971). "Mentioning does not require particularized enumeration or detailed description, only that the claim being released come within the express contemplation of the release provision when viewed in context of the contract in which the release provision is contained." *Stinnett v. Colo. Interstate Gas Co.,* 227 F.3d 247, 254 (5th Cir. 2000); *Mem'l Med. Ctr. of E. Tex. v. Keszler,* 943 S.W.2d 433, 435 (Tex.1997).

"A tortfeasor can claim the protection of a release if he is referred to with such descriptive particularity that his connection with the tortious event is not in doubt." *Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111, 113-14 (Tex. App.—Houston [14th Dist.] 1991, writ denied). "Indeed, Texas courts have consistently rejected the argument that defendants cannot avail themselves of the protection of a release just because they were not specifically identified as parties

13

to that release." *Michael Lee Andrews Trust v. Licari*, CIV.A.3:02-CV-1076-N, 2004 WL 524941, at *2 (N.D. Tex. Mar. 17, 2004).

In *Winkler*, a health club member signed the following release at the outset of his club membership:

> Buyer does hereby for his or herself, heirs, executors, legatees, administrators, or assigns, waive, release and forever discharge any and all claims the Buyer may now or in the future have against the Club for injuries suffered by the Buyer while participating in any programs of the Club.

*Id*. at 113. While exercising at the club, the member suffered a fatal heart attack. *Id*. at 112. His estate and next of kin filed suit against the club as well as several individuals associated with the club. *Id*. at 113. All defendants, including the individual defendants, moved for summary judgment on the basis that the decedent had released his claims against them. *Id*. Plaintiffs argued in response that the "[defendants] cannot avail themselves of the protection of the release because they were not specifically identified as parties to the release." *Id*. The court rejected that argument, holding that "[i]n releasing 'the Club' from any injuries suffered while participating in the center's programs, it is clear that Winkler intended to release any claim against all individuals and entities involved in the operation, maintenance, and administration of the center." *Id*. at 114.

Likewise, the court in *Vera v. North Star Dodge Sales, Inc.* interpreted a contract between a consumer and a corporation that included a release that

14

"release[d] North Star Dodge from any and all liability regarding the purchase of a 1993 Mazda Protg[.]" 989 S.W.2d 13, 16 (Tex. App.—San Antonio, 1998, no pet.) Although the release enumerated only the car dealership with particularity, the court held that the broad release of "all liability regarding the [vehicle] purchase" barred claims against the sales manager and the employee who handled the financing:

> In this case, it is clear that the release of "North Star Dodge" from any liability associated with the sale of the Mazda, also released the North Star Dodge employees associated with that sale. Under the circumstances, the connection of Powers and Hall with North Star Dodge and the sale of the Mazda is apparent. Therefore, the release encompasses Higinio's claims against North Star Dodge as well as his claims against North Star Dodge employees involved in the sale of the Mazda.

*Id*. at 18.

In *Dyrcz v. Longview Enterprise, Ltd.*, the court reached the same conclusion. There, the plaintiff signed a release prior to participating in a dodgeball game that released:

> Grand Central Station Longview, its partners, agents, and employees from any responsibility or liability for personal injury . . . [that] may [occur] from participating in the Dodge Ball contest.

*Dyrcz v. Longview Enter., Ltd.*, 2:05-CV-476 (TJW), 2006 WL 3289046, at *1 (E.D. Tex. Nov. 13, 2006), aff'd sub nom. *Dyrcz v. Graham Bros. of Longview, LLC*, 234 Fed. Appx. 236 (5th Cir. 2007). Plaintiff thereafter sued Longview

15

Enterprises—the employer of the management and staff at Grand Central Station Longview—for injuries sustained in a dodgeball match. *Id*. Longview Enterprise moved for summary judgment pursuant to the release even though it was not mentioned by the release. *Id*. In evaluating Longview Enterprise's argument, the court noted that "[i]n Texas, in order to claim the protection of a release, the claim being released must come within 'the express contemplation of the release provision when viewed in context of the contract." *Id*., citing *Stinnett*, 227 F.3d at 255. Further, the court recognized that "a tortfeasor can claim the protection of a release as long as he is referred to "with such descriptive particularity that his identity or his connection with the tortious event is not in doubt," and therefore, that "a defendant may still avail himself of the protection of a release even though he has not been specifically identified as a party to the release." *Dyrcz*, 2006 WL 3289046, at *1, citing *Winkler*, 816 S.W.2d at 111.

> Applying these rules, the court concluded that:
>
> [T]he claims against Defendant Longview Enterprises fit within the release signed by Plaintiff. There is no dispute that Plaintiff's claims resulted from participating in a dodgeball game at Graham Central Station.
> . . . .
>
> Although the release does not specifically name Longview Enterprise, the release does cover "partners, agents, and employees" of Graham Central Station . . . [t]herefore, by releasing Graham Central Station, it is clear that Plaintiff intended to release any claim against all individuals and entities involved in the operations and activities of

16

Graham Central Station, which would include . . . . Longview Enterprise.

*Dyrcz*, 2006 WL 3289046, at *2. Accordingly, the court granted the defendant summary judgment. *Id.*

In sum, the rule in Texas is well-established: an unnamed defendant can claim the protection of a release provided that his connection to the event giving rise to the release is unmistakable.

### b. The policy reasons for applying releases to unnamed defendants apply with equal force to unnamed plaintiffs

Despite the well-established case law discussing the application of a release to unnamed defendants, Appellants' counsel have found no case law that discusses the application of a release to unnamed *plaintiffs*. Despite this absence, there is no policy or legal reason why the rule applicable to unnamed defendants should not also be applicable to unnamed plaintiffs.

In this case, the failure of the trial court to extend the Mutual Release to the unnamed Appellees produces a starkly absurd result. Appellee Garner is the owner, director, and president of Nisal Corp. Nisal Corp., as well as its agents, officers, and servants—including Garner—agreed to release any and all claims, whether known or unknown, that they had against the Appellants, whether arising out of the lease or not. Although the trial court granted Appellants's summary

17

judgment as to Nisal Corp.'s claims, it denied the motion with respect to Garner's claims. In doing so, the trial court wholly ignored the language in the release extending the release to the agents, officers, and servants of Nisal Corp.

The trial court's ruling highlights Appellants' point: the Mutual Release is not so narrow that it applies only to the specifically identified signatories. Otherwise, the language that extends the Mutual Release to the signatories' "officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs, and attorneys" is rendered meaningless. However, "[c]ourts should . . . give effect to all the provisions of the contract so that none will be rendered meaningless." See *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Because no Texas court has considered the issue to what extent an unnamed plaintiff is bound by a release, it is a novel issue. Accordingly, there exist substantial grounds for disagreement. Appellants' petition for permissive interlocutory appeal should be granted.

### c. The interpretation of "agent" in the context of a release is also a novel issue

As discussed above, the Mutual Release extends not only to the named signatories, but also to their "agents." A novel question thus arises: how does a court determine whether a party qualifies as an agent of a signatory such that they are bound by a release?

18

In the trial court, the Appellees offered a simple, but untenable solution: whether a party is an agent of a signatory is a question of fact for the jury to decide. Indeed, Appellees cited the trial court to the rule that "a question of agency is one of fact." AR 186-192 (citing *Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194 (Tex. App.—Corpus Christi 1984, no writ).

In furtherance of public policy, this cannot be the rule. The purpose of a release is to buy peace and bring finality to a dispute. If a plaintiff sues on a claim that is within the scope of the release, the defendant claiming the protection of the release should not have to fully litigate the matter through trial in order to obtain a ruling that the claims in the lawsuit are within the scope of the release and therefore barred as a matter of law. The application of fact-driven inquiries will thwart every release, prevent finality, and will force parties to contemplate and actually and specifically name each party subject to the release. In the context of a large multinational corporation, it would force the corporation to specifically list out by name each one of their employees, contractors, and other agents they want encompassed by the release or else face repeated litigation. But worst of all, it would force parties to reject settlement and continue litigation to obtain a final judgment that is not subject to a subsequent lawsuit brought by parties attempting to thwart the effect of the release. This untenable situation cannot be the law in Texas.

19

(ii) There are grounds for substantial difference of opinion with regard to the controlling issue of law because there is an absence of case law on the issue.

As discussed above, the controlling issues of law in this case are novel because no Texas court appears to have addressed them. Consequently, there is an utter absence of case law discussing the extent to which an unnamed plaintiff is bound by a release. Likewise, Appellants have found no case law discussing the proper interpretation of "agents" in the context of a release.

Accordingly, because there is an absence of controlling law, there are grounds for substantial difference of opinion. Appellants' petition for permissive interlocutory appeal should be granted.

## II. AN IMMEDIATE APPEAL MATERIALLY ADAVANCES THE ULTIMATE TERMINATION OF THIS LITIGATION.

Appellants' summary judgment sought complete and total dismissal of all Appellees' claims. That is, the granting of Appellants' motion disposes of all of Appellees' claims against Appellants. When the trial court granted judgment in favor of Appellants as to Nisal Corp.'s claim, it fully acknowledged that this case is subject to immediate termination.

It can be no other way. If the release applies to all parties, then Appellees have no extant claims. The case is over and terminated.

Accordingly, Appellants have shown that an immediate appeal will

materially advance the ultimate termination of this case. This Court should grant

Appellants' petition for permissive interlocutory appeal.

## CONCLUSION

Without doubt, this appeal presents a controlling question of law. If Appellants are correct, then the Mutual Release bars Appellees' claims, and Appellants are entitled to summary judgment.

Without doubt, the controlling question of law is subject to substantial grounds for disagreement. Despite the well-developed and well-reasoned case law applying the protections of releases to unnamed defendants, no Texas court has considered the extent to which an unnamed *plaintiff* is bound by a release. Likewise, no court has considered the factual intrusion necessary to determine whether a plaintiff is an "agent" of a release signatory and therefore bound as well. Without any law to guide the parties or court, the controlling question of law is subject to substantial grounds for disagreement.

Finally, an immediate appeal from the trial court's order will materially advance the ultimate termination of this case. If the Mutual Release bars Appellees' claims, then this case is over.

For the foregoing reasons, Appellants respectfully request the Court to grant their petition for permissive interlocutory appeal and for all other relief to which they may show themselves justly and equitably entitled.

Date:   April 3, 2015                    Respectfully submitted,

**MAHENDRU, P.C.**

By:   _____

Ashish Mahendru
Texas Bar No. 00796980
Darren A. Braun
Texas Bar No. 24082267
639 Heights Boulevard
Houston, Texas 77007
(713) 571-1519 (Telephone)
(713) 651-0776 (Facsimile)
amahendru@thelitigationgroup.com
dbraun@thelitigationgroup.com

**ATTORNEYS FOR
DEFENDANTS—APPELLANTS**

23

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Rule 9.4(i)(2)(B) because it contains **4,812** words, excluding any parts exempted by Rule 9.4(i)(1).

_____
Ashish Mahendru

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing of Appellants' *Petition for Permission for Interlocutory Appeal* was served on the following counsel of record on the 3rd day of April, 2015 via email:

Matias J. Adrogué                               *via email: mja@mjalawyer.com*
Robert Stephan Kaase
1629 West Alabama St.
Houston, Texas 77006
1629 West Alabama St.
Houston, Texas 77006
713-425-7270 (p)
713-425-7271 (f)
*Counsel for Plaintiffs/Appellees*

William P. Huttenbach              *via email: whuttenback@hirschwest.com*
State Bar No. 24002330
Jacob M. Stephens
State Bar No. 24066143
Hirsch & Westheimer
1415 Louisiana, 36th Floor
Houston, Texas 77002
(713) 223-5181 (Main)
(713) 223-9319 (Fax)
*Counsel for Defendant Compass Bank*

_____
Ashish Mahendru

25

# **APPENDIX**

1.  Plaintiffs' Second Amended Original Petition      AR 1-10

2.  Defendants' Third Amended Answer, Verified Denial,
    and Counterclaim      AR 11-16

3.  Defendants' Motion for Summary Judgment      AR 17-40

    Ex. A:    Commercial Lease with Nisal Corp      AR 41-70

    Ex. B:    Commercial Lease Sterling Practice      AR 71-85

    Ex. C:    Mutual Release      AR 86-90

    Ex. D:    Non-Suit with Prejudice      AR 91-92

    Ex. E:    Declaration of Khyati Undavia      AR 93-96

    Ex. F:    Elevator Invoices      AR 97-101

    Ex. G:    Minu Rx's Quickbooks      AR 102-105

    Ex. H:    Officers and Directors of Nisal Corp.      AR 106

    Ex. I:    Officers and Directors of Providian Holdings, Inc.      AR 107

    Ex. J:    Proof of Insurance for Avant Medical Group      AR 108

    Ex. K:    Copy of Avant Rent Check      AR 109

    Ex. L:    County Court Lawsuit Petition      AR 110-112

    Ex. M:    Officers and Directors of Sterling
             Practice Management      AR 113

    Ex. N:    Lease Termination Letter      AR 114-115

    Ex. O:    Declaration of Ashish Mahendru      AR 116-119

Ex. P:      Avant Medical Group Account Status      AR 120

4.    Plaintiffs' Response to Defendants'
Motion for Summary Judgment      AR 121-142

    Ex. 1:      Affidavit of Brett Garner      AR 143-145

    Ex. 2:      Affidavit of Carmen Manzo      AR 146-147

    Ex. 3:      Cancelled Check      AR 148-155

    Ex. 4:      Original Petition from Cause No. 1036848      AR 156-160

    Ex. 5:      Mutual Release      AR 161-165

    Ex. 6:      Assumed Name Filing for Allied Medical
Centers      AR 166

    Ex. 7:      Public Information Report for
Avant Medical Group      AR 167-169

5.    Defendants' Reply to Plaintiffs' Response to Motion for
Summary Judgment      AR 170-185

6.    Defendants' Response to Plaintiffs' Objections to Defendants'
Summary Judgment Evidence      AR 186-192

7.    Order on Defendants' Motion
for Summary Judgment—March 3, 2015      AR 193

8.    Defendants' Motion for Permission to Appeal Interlocutory
Summary Judgment Order, Motion to Amend Order, and
Request for Stay      AR 194-201

9.    Plaintiffs' Response to Defendants' Motion for Permission
to Appeal Interlocutory Summary Judgment      AR 202-206

10.    Order Granting Defendants' Motion for Summary Judgment

| | | |
|---|---|---|
| AVANT MEDICAL GROUP, P.A. d/b/a | § | IN THE DISTRICT COURT OF |
| ALLIED MEDICAL CENTERS and | § | |
| INTERVENTIONAL SPINE | § | |
| ASSOCIATES, | § | |
| | § | |
| Plaintiffs | § | HARRIS COUNTY, TEXAS |
| | § | |
| VS. | § | |
| | § | |
| KHYATI MOHAMED UNDAVIA and | § | |
| MINU RX, LTD. | § | 152nd JUDICIAL DISTRICT |

## PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, AVANT MEDICAL GROUP, P.A. d/b/a INTERVENTIONAL SPINE ASSOCIATES, BRETT L. GARNER d/b/a ALLIED MEDICAL CENTERS, and NISAL CORP. d/b/a QUALCARE REHABILITATION ("Plaintiffs") and file this Second Amended Original Petition complaining of KHYATI MOHAMED UNDAVIA, MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY, MINU GP, LLC, and COMPASS BANK, and for cause of action would respectfully show the Court as follows:

### I. DISCOVERY CONTROL PLAN

1. Pursuant to Rules 190.1 and 190.3 of the Texas Rules of Civil Procedure, discovery in this matter is intended to be conducted under Discovery Control Plan Level 2.

### II. PARTIES

2. Plaintiff, AVANT MEDICAL GROUP, P.A. d/b/a INTERVENTIONAL SPINE ASSOCIATES, is a Texas Professional Association.

3. Plaintiff, NISAL CORP. d/b/a QUALCARE REHABILITATION is a Texas Corporation.

4. Plaintiff, BRETT L. GARNER d/b/a ALLIED MEDICAL CENTERS is an individual residing and doing business in Texas.

5. Defendant, KHYATI MOHAMED UNDAVIA, is an individual residing in Texas. Defendant KHYATI MOHAMED UNDAVIA has been served with process and has appeared in this lawsuit.

6. Defendant, MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY is a Texas Limited Partnership. MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY has been served with process and has appeared in this lawsuit.

7. Defendant, MINU GP, LLC is a Texas Limited Liability Company. MINU GP, LLC has been served with process and has appeared in this lawsuit.

8. Defendant, COMPASS BANK, is a Foreign Financial Institution doing business in the State of Texas, and may be served through its registered agent for service of process, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136. Citation is requested.

## III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this controversy because all events or occurrences giving rise to this lawsuit occurred within the State of Texas.

10. This court has personal jurisdiction over the parties because they are all residents of Texas or are doing business in the State of Texas.

11. Venue is proper in Harris County under the Texas Civil Practice & Remedies Code, § 15.002.

## IV. FACTS

12. Plaintiffs are former tenants in a commercial building which is owned and/or managed by Defendant KHYATI MOHAMED UNDAVIA or an entity for which Defendant KHYATI MOHAMED UNDAVIA is a principal, agent, representative, or employee (the "Building").

AR 000002

While Plaintiffs were tenants in the Building, all mail was delivered to the Building's main address, where it would be collected by Defendant KHYATI MOHAMED UNDAVIA and distributed by her to the other tenants. Because the checks were delivered to Plaintiffs' mailing address, Plaintiffs were in possession of the checks and have a possessory interest in them.

13. Plaintiffs recently discovered that during their tenancy at the building, Defendant KHYATI MOHAMED UNDAVIA would frequently take letters containing checks, from the mail, endorse the checks with the name and bank account information for MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY, and deposit them into at least two bank accounts of MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY. The checks were presented for deposit to Defendant COMPASS BANK, who presented the checks without the payee's endorsement to the various drawee banks. Plaintiffs were only able to discover this recently because Plaintiffs frequently provide medical services to personal injury victims and often have agreements to suspend collection efforts for extended periods of time while the patients attempt to obtain compensation for the third parties responsible for their injuries. Thus far, Plaintiffs have identified over $40,000.00 in checks that were stolen by the Defendants in the above-described manner, and expects to discover more as investigation and discovery in this case progresses. It is uncertain at this time if additional checks were endorsed and deposited or cashed by other entities.

## V. CASUSES OF ACTION AGAINST KHYATI MOHAMED UNDAVIA AND MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY

### CONVERSION & THEFT

14. *Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.* Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a

MEMORIAL COMPOUNDING PHARMACY have exercised dominion and control over Plaintiffs' property interest in the checks, their proceeds, and all interest earned on their proceeds, inconsistent with, and in denial of, Plaintiffs' right to possession.

## TEXAS THEFT LIABILITY ACT

15. *Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.* The Texas Theft Liability Act provides civil liability for certain acts proscribed by the Texas Penal Code, including unlawfully appropriating a trade secret. *See id.* § 134.002(2); *IBP, Inc. v. Klumpe,* 101 S.W.3d 461, 472 (Tex. App.-Amarillo 2001, pet. denied). The Texas Theft Liability Act provides that a person "who commits theft is liable for the damages resulting from the theft." Tex. Civ. Prac & Rem. Code. § 134.003(a). In addition, under the Texas Theft Liability Act a person "who has sustained damages" may recover the amount of actual damages found by the trier of fact. *Id.* § 134.005(a)(1). Finally, a "person who prevails" in a suit under the Act " shall be awarded court costs and reasonable and necessary attorney's fees." *Id.* § 134.005(b).

16. Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY violated the Texas Theft Liability Act, when, without authorization, consent or approval, they cashed and/or deposited checks payable to Plaintiff. Defendants appropriated of the checks and the proceeds of the checks with the intent to deprive Plaintiffs of that interest. The appropriation of Plaintiffs' property interest in the checks and the proceeds of the checks was without Plaintiffs' consent and constituted theft under the Texas Penal Code. Plaintiffs therefore bring suit against Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY for all

AR 000004

all actual damages, exemplary damages and attorney's fees recoverable under the Texas Theft Liability Act.

## FRAUD – COMMON LAW

17. *Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.* Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY knowingly made numerous fraudulent representations to Plaintiffs regarding the delivery of mail to Plaintiffs. Plaintiffs reasonably relied on the misrepresentations, causing significant injury. Plaintiffs hereby bring suit for fraudulent misrepresentation against Defendant KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY, and hereby seek to recover actual damages incurred as a proximate cause of said fraud, as well as exemplary damages.

## CONSTRUCTIVE TRUST & EQUITABLE LIEN

18. *Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.* Under Texas common law the checks, their proceeds, and all interest earned on the proceeds are impressed with a constructive trust for the benefit of the Plaintiffs and Plaintiffs request a judicial declaration that the checks, their proceeds, and all interest earned on the proceeds, are impressed with a constructive trust. The checks, their proceeds, and all interest earned on the funds are further impressed with an equitable lien in favor of the Plaintiffs.

## MONEY HAD AND RECEIVED

19. *Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.* Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY hold money that in equity and good conscience belong to the Plaintiff, namely, the proceeds of the checks and all interest earned on the

proceeds. Plaintiffs therefore bring suit against Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY for all damages and attorney's fees recoverable under a cause of action for Money had and Received.

## BREACH OF CONTRACT

20. ***Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.*** Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY had an oral agreement with Plaintiffs to collect all mail received at the Building and deliver the same to Plaintiffs. Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY committed a material breach of this agreement by withholding mail items addressed to Plaintiffs and converting the checks contained therein, causing injury to Plaintiffs. Plaintiffs therefore bring suit against Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY for all damages and attorney's fees recoverable as a result of Defendants' breach.

## BREACH OF FIDUCIARY DUTY

21. ***Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.*** Plaintiffs allege that Defendant KHYATI MOHAMED UNDAVIA acted as an agent of Plaintiffs with respect to collecting and delivering mail, and therefore owed fiduciary duties to Plaintiffs. Defendant KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY committed a material breach her duties by withholding mail items addressed to Plaintiffs and converting the checks contained therein, causing injury to Plaintiffs. Plaintiffs therefore bring suit against Defendants KHYATI

MOHAMED UNDAVIA for all damages and attorney's fees recoverable as a result of Defendant's breach.

## CONVERSION - STATUTORY

22. *Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.* In the alternative, Plaintiffs allege that Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY are liable to Plaintiffs for conversion as defined in Tex. Bus. & Com. Code. § 3.420. Plaintiffs therefore bring suit against Defendants KHYATI MOHAMED UNDAVIA and MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY for all damages recoverable as a result of Defendants' actions.

## VI. CAUSES OF ACTION AGAINST MINU GP, LLC

## VICARIOUS LIABILITY - PARTNERSHIP

23. *Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.* Because Defendant MINU GP, LLC is the active general partner of Defendant MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY and is therefore jointly and severally liable for all obligations of Defendant MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY. Tex. Bus. Orgs Code § 152.304.

## VII. CAUSES OF ACTION AGAINST COMPASS BANK

## CONVERSION - STATUTORY

24. *Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.* Plaintiffs allege that Defendant COMPASS BANK is liable to Plaintiffs for conversion as defined in Tex. Bus. & Com. Code. § 3.420. Plaintiffs therefore bring suit against Defendant COMPASS BANK for all damages recoverable as a result of Defendant's actions.

AR 000007

## MONEY HAD AND RECEIVED

25. *Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.* Plaintiffs allege that Defendant COMPASS BANK held or currently hold money that in equity and good conscience belong to the Plaintiffs, namely, the proceeds of the checks and all interest earned on the proceeds. Plaintiffs therefore bring suit against Defendant COMPASS BANK for all damages and attorney's fees recoverable under a cause of action for Money had and Received.

## NEGLIGENCE

26. *Plaintiffs incorporate and adopt all of the facts set forth above, as though fully alleged herein.* Plaintiffs allege that Defendant COMPASS BANK was negligent in accepting for deposit and presenting for payment checks which did not bear the payee's endorsement. In accepting checks for deposit from a person not entitled to enforce the checks and presenting them for payment, Defendant COMPASS BANK failed to observe reasonable banking standards, causing harm to the Plaintiffs. Plaintiffs therefore bring suit against Defendant COMPASS BANK for all damages and attorney's fees recoverable under a cause of action for Money had and Received.

## VIII. ATTORNEY'S FEES

27. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by; (a) Section 134.005 of the Texas Civil Practice and Remedies Code; (b) Section 38.001 of the Texas Civil Practice and Remedies Code; and (c) the common law.

## IX. DAMAGES

AR 000008

28. As a direct and proximate result of the actions of Defendants described herein, Plaintiffs have incurred damages in excess of the minimum jurisdictional limits of this Court and will in all likelihood continue to incur damages in the future. Plaintiffs seek all legally recoverable damages, including:

    a. Actual damages including economic, loss of use & consequential damages;

    b. Attorney's fees;

    c. Exemplary damages;

    d. Prejudgment & post judgment interest at the maximum legal rate;

    e. Court costs; and

    f. Other monetary & equitable relief as the Court deems appropriate.

29. Pursuant to Rule 47 of the Texas Rules of Civil Procedure, each claimant seeks monetary relief less over $200,000.00 but not more than $1,000,000.00.

## X. CONDITIONS PRECEDENT

30. All conditions precedent have been performed or have occurred. Tex. R. Civ P. 54.

## XI. DEMAND FOR JURY

31. Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## XII. PRAYER

32. WHEREFORE, PREMISES CONSIDERED, Plaintiffs, AVANT MEDICAL GROUP, P.A. d/b/a INTERVENTIONAL SPINE ASSOCIATES, BRETT L. GARNER d/b/a ALLIED MEDICAL CENTERS, and NISAL CORP. d/b/a QUALCARE REHABILITATION, ask that the Defendants be cited to appear and answer and that Plaintiffs have judgment against the Defendants for damages, including monetary compensation and any other damages within the jurisdictional limits of this Court, pre-judgment and post-judgment interest as allowed by law,

costs of suit, and all other relief the Court deems necessary and appropriate and to which Plaintiffs are justly entitled.

Respectfully submitted,

**MATÍAS J. ADROGUÉ**
PROFESSIONAL LIMITED LIABILITY COMPANY

By: _____
Matías J. Adrogué
Attorney at Law
State Bar No. 24012192
Robert Stephan Kaase
State Bar No. 24083287
1629 West Alabama St.
Houston, Texas 77006
713-425-7270 *Telephone*
713-425-7271 *Facsimile*
service@mjalawyer.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing has been served to all counsel of record in accordance with the Texas Rules of Civil Procedure, on this the ____ day of February, 2015.

_____
Matías J. Adrogué

AR 000010

| AVANT MEDICAL GROUP, P.A. | § | IN THE DISTRICT COURT OF |
| d/b/a ALLIED MEDICAL CENTERS | § | |
| and INTERVENTIONAL SPINE | § | |
| ASSOCIATES, | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| KHYATI MOHAMED UNDAVIA and | § | |
| MINU RX, LTD., | § | |
| *Defendants* | § | 152ND JUDICIAL DISTRICT |

---

**DEFENDANTS' THIRD AMENDED ANSWER AND
VERIFIED DENIAL AND ORIGINAL COUNTERCLAIMS**

---

**TO THE HONORABLE JUDGE ROBERT SCHAFFER:**

Defendants, Khyati Undavia,Minu RX, Ltd., and MINU GP, LLC, file this Third Amended Answer and Verified Denial and Original Counterclaims and would respectfully show the Court as follows:

**I.**
**GENERAL DENIAL**

1.    Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendants file this General Denial of the claims and allegations contained in Plaintiffs' Second Amended Original Petition, and Defendants request that the Court require Plaintiffs to prove their claims and allegations by a preponderance of the evidence as required by the Constitution and the laws of the State of Texas.  Defendants hereby reserve their right to amend this answer and assert other and further defenses and claims as the facts of this case warrant.

1

AR 000011

## II.
## VERIFIED DENIAL

2.     Pursuant to Rule 93 of the Texas Rules of Civil Procedure, Defendant, Khyati Mohamed Undavia ("Undavia"), files this verified denial to Plaintiffs' claims against her. Specifically, Defendant Undavia denies that she is liable in her individual capacity for Plaintiffs' claims.  (See Declaration of Undavia; Ex. A).

## III.
## AFFIRMATIVE DEFENSES

3.     Subject to and without waiving the foregoing, Defendants assert and raise the following affirmative defenses to Plaintiffs' claims:

a.   Plaintiffs' claims are barred in whole or in part because Plaintiffs come into the Court with unclean hands.

b.   Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel, including, but not limited to, collateral estoppel.

c.   Plaintiffs' claims are barred in whole or in part by the doctrine of res judicata.

d.   Plaintiffs' claims are barred in whole or in part by the statute of repose.

e.   Plaintiffs' claims are barred in whole or in part because Plaintiffs failed to perform all conditions precedent.

f.   Plaintiffs' claims are barred in whole or in part because Plaintiffs intentionally relinquished Plaintiffs' known rights or engaged in intentional conduct inconsistent with claiming those rights.

g.   Plaintiffs' claims are barred in whole or in part by the statute of frauds.

h.   Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

2

AR 000012

i. Plaintiffs' claims are barred in whole or in part by abandonment of opportunity.

j. Plaintiffs' claims are barred because they are unreasonable, frivolous, vexatious and brought to harass Defendants.

k. Plaintiffs' claims are barred because there is a defect in the parties.

l. Plaintiffs' claims are barred in whole or in part because Defendants acted at all times in good faith and in a reasonable manner.

m. Plaintiffs' claims are barred in whole or in part because Plaintiffs failed to mitigate their damages.

n. Plaintiffs' claims are barred in whole or in part because of laches.

o. Plaintiffs have no claims based on release and settlement.

p. Plaintiffs' claims are barred in whole or in part by the statute of limitations.

q. Plaintiffs' claims are barred by accord and satisfaction.

## IV.
### DEFENDANTS' ORIGINAL COUNTERCLAIMS

4. Counter-plaintiffs Khyati Undavia, Minu RX, Ltd., and MINU GP, LLC have made an appearance through counsel.

5. Counter-defendants Avant Medical Group, P.A. d/b/a Interventional Spine Associates, Nisal Corp. d/b/a Qualcare Rehabilitation, and Brett L. Garner d/b/a Allied Medical Centers have made an appearance through counsel.

### A. VENUE AND JURISDICTION

6. This court has jurisdiction over the claims because the amount in controversy exceeds the jurisdictional requirements of the court. Venue is proper in Harris County because all or a substantial part of the events or omissions giving rise to the claim

3

AR 000013

occurred in Harris County.  This court has personal jurisdiction over the parties because they are all Texas residents and have all made an appearance in this lawsuit.

## B.    BACKGROUND

7.    Defendants Minu Rx ("Minu") is a pharmacy.  Defendant Khyati Undavia ("Undavia"), a pharmacist, owns Minu.

8.    Undavia also owns Providian Holding, Inc. ("Providian").  As a holding company, Providian, in turn, owns 2918 San Jacinto St., Houston, Texas 77004 (the "Building").  Minu operates on the lower floor of the Building.

9.    Beginning in 2009, Plaintiff Nisal Corp. ("Nisal") and Sterling Practice Management ("Sterling") rented the second floor of the Building from Providian under two separate leases.

10.    In 2013, Nisal and Sterling ended their leases with Providian.  Nisal and Sterling then sued Providian over a breach of the lease agreements in County Court of Harris County.  The parties entered into a settlement agreement and executed a broad-form mutual release ("Mutual Release") in which they released "any and all claims . . . whether known or unknown" that they may have had against each other.  Sterling and Nisal then nonsuited their claims against with prejudice.

11.    Because the Mutual Release and Nonsuit with Prejudice bar all claims between the parties, this lawsuit is in direct breach of the Mutual Release.

## V.
## CLAIMS

### A.    *Declaratory Judgment*

12.    Counter-Plaintiffs request this Court to declare their rights, status, and legal

4

AR 000014

relations with respect to the Mutual Release. Counter-defendants contend that Counter-Defendants released all of their claims in this matter through the Mutual Release and dismissal with prejudice of the County Court lawsuit.

13. Counter-Plaintiffs are entitled to recover attorney's fees incurred in the prosecution of this matter. TEX. CIV. PRAC. & REM. Code §37.009.

## B. Breach of Contract

14. Counter-Plaintiffs and Counter-Defendants entered into a Mutual Release. Counter-Defendants breached that Mutual Release by filing claims in this lawsuit directly released in that Mutual Release. Counter-Plaintiffs are, therefore, damaged as a result and sue for their attorney's fees under Chapter 38 of the Civil Practices and Remedies Code.

## VI.
### CONCLUSION

15. For the foregoing reasons, Defendants ask the Court to order that Plaintiffs take nothing on their claims, that costs be assessed against Plaintiffs, and that Additionally, Counter-Plaintiffs ask the Court to award damages as a result of Counter-Defendants' breach of the Mutual Release, including, but not limited to attorney's fees and expenses. Counter-Plaintiffs further seek a declaratory judgment from this Court that all claims asserted in this lawsuit are released and dismissed as a matter of law. Counter-Plaintiffs also seek their attorney's fees under the Declaratory Judgment Act.

16. Defendants and Counter-Plaintiffs request all other relief to which they are entitled at law or equity.

5

**AR 000015**

Dated:  February 16, 2015

Respectfully submitted,

MAHENDRU, P.C.

By: _____

Ashish Mahendru
State Bar No. 00796980
Darren A. Braun
State Bar No. 24082267
639 Heights Blvd.
Houston, Texas  77007
Telephone:    713-571-1519
Facsimile:    713-651-0776
amahendru@thelitigationgroup.com
dbraun@thelitigationgroup.com

**ATTORNEYS FOR DEFENDANTS
AND COUNTER-PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been provided to all counsel of record in accordance with the applicable Texas Rules of Civil Procedure on this 16th day of February, 2015.

Matias J. Adrogué
Robert Stephan Kaase
1629 West Alabama St.
Houston, Texas 77006

*Email:mja@mjalawyer.com*
*Email:  rsk@mjalawyer.com*
*Facsimile:  713.425.7271*

_____

Ashish Mahendru

6

**AR 000016**

| AVANT MEDICAL GROUP, P.A. | § | IN THE DISTRICT COURT OF |
| d/b/a ALLIED MEDICAL CENTERS | § | |
| and INTERVENTIONAL SPINE | § | |
| ASSOCIATES, | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| KHYATI MOHAMED UNDAVIA  and | § | |
| MINU RX, LTD., | § | |
| | § | |
| *Defendants* | § | 152ND JUDICIAL DISTRICT |

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

**TO THE HONORABLE JUDGE ROBERT SCHAFFER:**

Defendants Khyati Mohamed Undavia, Minu RX, Ltd., and Minu GP, L.L.C. file this Motion for Summary Judgment and would respectfully show the Court as follows:

**I.**
**SUMMARY**

1.      Plaintiffs entered into a Mutual Release with all Defendants; therefore, Plaintiffs have no extant claims.  All Defendants are named in the Mutual Release. Not only that, the law on releases captures all Defendants and  Plaintiffs even if Plaintiff somehow convinces this Court that only some of the parties are named in the Mutual Release.

2.      Beyond the application of the Mutual Release and release law, the claims are barred because Plaintiffs dismissed their claims against Defendants in an underlying lawsuit with prejudice. Res judicata, therefore, bars the claims.

1

AR 000017

3. With respect to the conversion claim, Plaintiffs are mere payees of the converted checks and, according to the plain language of the Texas Business and Commerce Code, have no cause of action against Defendants.

4. Finally, several of Plaintiffs claims are barred by the statute of limitations.

## II.
### ISSUES PRESENTED

5. In this motion, Defendants present the following issues for this Court's decision as a matter of law:

   a. By executing a full, unqualified release in a related lawsuit, did Plaintiffs release their claims in the instant lawsuit?

   b. Are Plaintiffs' claims barred by the doctrine of res judicata because they nonsuited with prejudice their claims against Defendants in a related lawsuit?

   c. Are Plaintiffs foreclosed from bringing a conversion claim for the checks where Plaintiffs never actually received delivery of the checks?

   d. Are Plaintiffs' claims barred in-part by the statute of limitations?

As a matter of law, the answer to the foregoing question is a resounding "Yes."

## III.
### SUMMARY JUDGMENT EVIDENCE

6. This motion is based on the following evidence:

- Commercial Leases (Exhibits A and B)
- Mutual Release (Exhibit C)
- Non-Suit with Prejudice (Exhibit D)
- Declaration of Khyati Undavia (Exhibit E)
- Elevator Invoices (Exhibit F)
- Minu Rx's Quickbooks (Exhibit G )
- Officers and Directors of Nisal Corp. (Exhibit H)
- Officers and Directors of Providian Holdings, Inc. (Exhibit I)

2

AR 000018

- Proof of Insurance Coverage for Avant Medical Group (Exhibit J)
- Copy of Rent Check (Exhibit K)
- County Court Lawsuit Petition (Exhibit L)
- Officers and Directors of Sterling (Exhibit M)
- Lease Termination Letter (Exhibit N)
- Declaration of Ashish Mahendru (Exhibit O)
- Avant Medical Group Account Status (Exhibit P)

## IV.
### BACKGROUND FACTS

7. The facts below are supported by the Declaration of Khyati Undavia, which declaration is incorporated by reference as if fully stated herein. (See Undavia Declaration; Ex. E).

8. Defendant Minu Rx ("Minu") is a pharmacy. Defendant Khyati Undavia ("Undavia"), a pharmacist, owns Minu.

9. Undavia also owns Providian Holding, Inc. ("Providian"). As a holding company, Providian, in turn, owns 2918 San Jacinto St., Houston, Texas 77004 (the "Building"). Outside of that, Providian does not conduct regular business. Minu operates on the lower floor of the Building. Providian has no physical office space, nor does it have any employees aside from Undavia. Instead, Providian simply uses Minu's offices and employees for its needs.

10. Beginning in 2009, Plaintiff Nisal Corp. ("Nisal") and Sterling Practice Management ("Sterling") rented the second floor of the Building from Providian under two separate leases. (See Commercial Leases; Exs. A and B).

11. In 2013, Nisal and Sterling ended their leases with Providian. Nisal and Sterling then sued Providian over a breach of the lease agreements. (See County Court Petition; Ex.

3

AR 000019

L). The parties entered into a settlement agreement and executed a broad-form mutual release ("Mutual Release") in which they released "any and all claims . . . whether known or unknown" that they may have had against each other. (See Mutual Release; Ex. C). Sterling and Nisal then nonsuited their claims against with prejudice. (See Nonsuit With Prejudice; Ex. D).

12. During the pendency of the leases, the postal service, when delivering mail to the Building, intermingled the mail. It did not make separate deliveries to each of the Building's tenants. Instead, it simply dumped all of the Building's mail in Minu's offices. Because Minu is a pharmacy, it received hundreds of checks per month as payment for dispensed medications. There was no formal system of mail sorting or separation, and each tenant of Providian took an ad hoc approach to the mail handling.

13. Allegedly, through this process, a few checks dated from 2011 to 2013 made payable to Plaintiffs that arrived via the mail were accidently sorted into Minu's mail pile and then deposited into Minu's account.

14. Because the Mutual Release and Nonsuit with Prejudice bar all claims between the parties, this Court must grant summary judgment.

## V.
### SUMMARY JUDGMENT STANDARD

9. Rule 166a provides a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine fact issue. *See Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex. 1972). The party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is

4

AR 000020

entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex. 1993); *Nixon v. Mr. Property Mgt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985); *Calvillo v. Gonzalez,* 922 S.W.2d 928, 929 (Tex. 1966). The nonmovant has a burden to respond after the movant conclusively establishes its cause of action or defense. *See Oram v. General Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex. 1974); *Swilley*, 488 S.W.2d at 67-68. The movant must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995); *City of Houston*, 589 S.W.2d at 678.

10. As shown below, Defendants conclusively prove each element of their affirmative defenses of release and res judicata as a matter of law. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Defendants are therefore entitled to summary judgment.

## VI.
### LEGAL STANDARD FOR RELEASES

11. Generally, "unless a party is named in a release, he is not released." *McMillen v. Klingensmith*, 467 S.W.2d 193, 197 (Tex. 1971). In order to release a claim, the releasing document must "mention it." *Victoria Bank and Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex.1991). However, "a tortfeasor can claim the protection of a release if he is referred to with such descriptive particularity that his connection with the

5

AR 000021

tortious event is not in doubt." *Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111, 113-14 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

12.    "Mentioning does not require particularized enumeration or detailed description, only that the claim being released come within the express contemplation of the release provision when viewed in context of the contract in which the release provision is contained." *Stinnett v. Colo. Interstate Gas Co.,* 227 F.3d 247, 254 (5th Cir.2000); *Mem'l Med. Ctr. of E. Tex. v. Keszler,* 943 S.W.2d 433, 435 (Tex.1997). "Indeed, Texas courts have consistently rejected the argument that defendants cannot avail themselves of the protection of a release just because they were not specifically identified as parties to that release." *Michael Lee Andrews Trust v. Licari*, CIV.A.3:02-CV-1076-N, 2004 WL 524941, at *2 (N.D. Tex. Mar. 17, 2004).

13.    Releases "[do] not require that the parties anticipate and identify each potential cause of action relating to the releases subject matter," and a "valid release may encompass unknown claims and damages[.] *Keck, Mahin & Cate v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000).

**VII.**
**MOTION FOR SUMMARY JUDGMENT**

14.    Whether by the plain language of the Mutual Release, or by Texas courts' liberal application of releases to unnamed parties, the Mutual Release bars Plaintiffs' claims in this lawsuit as to all Defendants.

6

AR 000022

**A. By The Plain Terms Of the Release, Plaintiffs Have Released Defendants.**

15. The Mutual Release specifically names each Defendant, each Plaintiff, and each claim in this lawsuit. Plaintiffs' claims are entirely barred.

    (i)    <u>Each Plaintiff and Defendant in this lawsuit is specifically mentioned in the Mutual Release</u>

16. The Mutual Release states, in relevant part, that:

> NISAL [and STERLING] . . . [their] officers, directors, shareholders, partners, successors, agents, assigns, employees, servants, and attorneys . . . . hereby **RELEASE, ACQUIT,** and **FOREVER DISCHARGE** PROVIDIAN, its officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs, and attorneys from any and all liabilities, claims, demands, causes of action, judgments, liens, liabilities or potential claims or causes of action which . . . NISAL [and STERLING] . . . have ever had or could have had, whether now known or unknown, which have arisen or may arise from the beginning of time to the date of this release[.]

(See Mutual Release, p. 1-2; Ex. C) (emphasis in original). In this case, each party is either a signatory to the Mutual Release or an agent of a signatory.

        **a.    Plaintiff Nisal is bound by the Mutual Release because it is a signatory.**

17. This is a no-brainer. Nisal is both a Plaintiff and a signatory to the Mutual Release. Accordingly, it is bound by the Mutual Release, and its claims are barred.

        **b.    Plaintiff Garner is bound by the Mutual Release because he is an agent of Nisal.**

18. In addition to Nisal, Garner is also bound by the Mutual Release.

7

**AR 000023**

19. The Mutual Release extends not only to the named parties, but also to their "agents" and "employees." *Id.* Accordingly, any agent or employee of Nisal is bound by the release.

20. Here, Garner is both the president and director of Nisal. (See Officers and Directors of Nisal Corp.; Ex. H). Further, he signed Nisal's commercial lease with Providian as its "CEO." (See Nisal Commercial Lease, p. 14; Ex. A). Likewise, he is designated as Nisal's representative for any official notice required by the lease. *Id.* at p. 13.

21. Accordingly, Garner is Nisal's agent as a matter of law, and is bound by the Mutual Release. His claims are barred.

### c. Plaintiff Avant is bound by the Mutual Release because it is an agent of both Sterling and Nisal

22. Rounding out the Plaintiffs, Avant is the agent of both Nisal and Sterling, and is bound by the Mutual Release.

23. First, even Plaintiffs admit that Avant is Allied, and that Allied is Garner, and thus, Avant is Garner. In their case caption, Plaintiffs state that Allied is the d/b/a of Avant. (See Plaintiffs' First Amended Petition). Allied, in turn, is the d/b/a of Garner. *Id.* at ¶4. Allied is again listed as a d/b/a of Avant in the Proof-of-Insurance certificate that Sterling provided to Providian at the outset of the Commercial Leases. (See Proof of Insurance Coverage for Avant Medical Group; Ex. J). Because Avant is simply a d/b/a for entities bound by the Mutual Release, it too is bound by the Mutual Release.

8

AR 000024

24. Second, **Avant paid Sterling's rent out of its own account**. (See Avant Rent Check; Ex. K); (See Declaration of Khyati Undavia, ¶15; Ex. E). Similarly, **Avant procured a CGL policy on behalf of Sterling**. (See Proof of Insurance Coverage for Avant Medical Group; Ex. J).

25. Third, although not actually a party to the written lease, Avant nevertheless operated in the office space leased by Nisal and Sterling. (See Declaration of Khyati Undavia; Ex. E); (See Plaintiff's First Amended Petition; ¶11). In fact, Sterling and Nisal had no operations in the Building; their leased premises were occupied by Avant. *Id*. Sterling and Nisal even negotiated for a lease provision that prevented Providian from leasing space to any other "chiropractor" or "pain management business" in order to protect Avant from competition. (See Nisal Commercial Lease, p. 13; Ex. A).

26. Finally, Plaintiff Garner is the president and director of Nisal and the member-manager and registered agent of Sterling. (See Officers and Directors of Nisal; Ex. H); (See Officers and Directors of Sterling; Ex. M). Sterling, in turn, serves as Avant's registered agent. (See Avant Medical Group Account Status; Ex. P). Garner also had a management role at Avant during Avant's tenancy in the Building and worked for Avant as a chiropractor. (See Declaration of Khyati Undavia, ¶13; Ex. E).

27. Avant, Sterling, and Nisal were inextricably linked and were all representatives and agents of each other with respect to the lease between Providian, on one hand, and Nisal and Sterling, on the other. Having signed a Mutual Release of all claims, these Plaintiffs are forever barred from bringing claims for anything related to Defendants.

9

AR 000025

### d. Defendant Undavia is subject to the Mutual Release because she is an agent of Providian

28. Just like the Plaintiffs, Undavia is bound by—and protected by—the Mutual Release.

29. Providian is a signatory to the Mutual Release. Undavia is Providian's owner and sole employee. (See Declaration of Khyati Undavia; Ex. E); (See Officers and Directors of Providian Holdings, Inc.; Ex. I). Undavia even signed the Mutual Release on behalf of Providian. (See Mutual Release; Ex. C). Accordingly, Undavia is Providian's agent and is specifically mentioned in the Mutual Release. Therefore, all claims against her as an individual are barred.

### e. Defendant Minu is bound by the Mutual Release because it is an agent of Providian.

30. Like Undavia, Minu was Providian's agent and representative and was expressly authorized to act on behalf of Providian for any matters, including matters related to Providian's lease with Plaintiffs. (See Declaration of Khyati Undavia; Ex. E). In fact, Providian has no physical office space or employees; its physical address is actually that of Minu's. *Id*. at ¶13. Minu handled a variety of matters for Providian, including collecting rent, obtaining insurance for the Building, arranging and paying for the Building's security, arranging and paying for grounds, facilities, and common area maintenance, and arranging and paying for the Building's elevator inspections and servicing. *Id*. at ¶5-12; (See Minu Rx's Quickbook; Ex. G); (See Elevator Invoices; Ex. F). The Commercial Leases made many of these tasks Providian's responsibilities. (See

10

**AR 000026**

Commercial Lease, p. 8; Exs. A and B) (Stating that "grounds maintenance" and "common area" maintenance are Provdian's obligations).

31. That Minu was Providian's agent with regard to the lease is further evidenced by the Plaintiffs' own allegations. Plaintiffs allege that:

> ***Defendants*** . . . had an oral agreement with Plaintiffs to collect all mail received at the Building and deliver the same to Plaintiffs.

(Plaintiffs' First Amended Petition, ¶19). Plaintiffs allege that Minu was responsible for receiving and sorting the Building's mail—a task of the Landlord—and certainly one that would not arise in the absence of an agency relationship between Providian and Minu. Moreover, despite only having a lease with Providian, Minu was so involved in the management of the Building as alleged by Plaintiffs that Plaintiffs characterize their agreement as being with **Minu** and not Providian. In fact, Plaintiffs failed mention Providian once in their amended petition. Following that logic, Minu is the "landlord" of Plaintiffs.

32. Although Providian owned the building, Minu was the management company and was authorized to act on behalf of Providian for any matters with respect to the Plaintiffs' tenancy at the building. (See Declaration of Khyati Undavia, ¶4; Ex. E). It is therefore subject to, and protected by, the Mutual Release.

33. Plaintiffs' claims against Minu GP fail for the same reasons specified above. Further, Plaintiffs' have alleged vicarious liability on Minu GP because of its relationship to Minu. Because Minu is not liable for Plaintiffs' claims, Plaintiffs' claims against Minu GP likewise fail.

11

**AR 000027**

(ii)     The Mutual Release specifically mentions each claim in this lawsuit

34.     The Mutual Release, aside from specifically mentioning each party in this lawsuit, also specifically mentions each claim in this lawsuit.  These claims are, therefore, barred.

35.     In settling the Original Lawsuit, the parties executed the Mutual Release in which Nisal and Sterling, as well as their officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs and attorneys" **released** Providian, as well as its officers, directors, shareholders, partners, successors, agents, assigns, heirs, employees, servants, and attorneys, from "**all liabilities, claims, demands, causes of actions, judgments, liens, liabilities or potential causes of action which Sterling and Nisal have ever had or could have had, whether now known or unknown, which have arisen or may arise from the beginning of time to the date of this release[.]"** (See Mutual Release; Ex. C).  In this release, the parties no doubt contemplated the claims in this current lawsuit because they released not only those claims actually alleged in the original lawsuit, but also **all** claims "whether **known or unknown**, which have arisen or may arise." *Id*.

36.     This Mutual Release was signed on October 3, 2013.  In this instant lawsuit, all allegedly-converted checks are dated prior to this time. (See Plaintiffs' Original Petition). Indeed, releases "[do] not require that the parties anticipate and identify each potential cause of action relating to the releases subject matter," and a "valid release may encompass unknown claims and damages[.] *Keck, Mahin & Cate v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000).  The parties' broad,

12

**AR 000028**

unqualified release language encompasses the Plaintiffs' unknown claims against Defendants as a matter of law. Defendants are entitled to summary judgment.

**B.** THE PARTIES ARE SO INTIMATELY CONNECTED TO THE MUTUAL RELEASE THAT THEY ARE BOUND BY IT.

37. Even if certain Plaintiffs and Defendants are not specifically mentioned in the Mutual Release, each party is so intimately connected to the other parties and claims involved in the Mutual Release that they are bound by the Mutual Release. Indeed, Texas courts readily extend releases to unnamed, but related, parties.

38. In *Winkler*, a health club member signed the following release at the outset of his club membership:

> Buyer does hereby for his or herself, heirs, executors, legatees, administrators, or assigns, waive, release and forever discharge any and all claims the Buyer may now or in the future have against the Club for injuries suffered by the Buyer while participating in any programs of the Club.

*Id.* at 113. While exercising at the club, the member suffered a fatal heart attack. *Id.* at 112. His estate and next of kin filed suit against the club as well as several individuals associated with the club. *Id.* at 113. All defendants, including the individual defendants, moved for summary judgment on the basis that the decedent had released his claims against them. *Id.* Plaintiffs argued in response that the "[defendants] cannot avail themselves of the protection of the release because they were not specifically identified as parties to the release." *Id.* The court rejected that argument, holding that "[i]n releasing 'the Club' from any injuries suffered while participating in the center's programs, it is clear that Winkler intended to release any claim against all individuals and

13

**AR 000029**

entities involved in the operation, maintenance, and administration of the center." *Id.* at 114.

39.     Likewise, the court in *Vera v. North Star Dodge Sales, Inc.* interpreted a contract between a consumer and a corporation that including a release that "release[d] North Star Dodge from any and all liability regarding the purchase of a 1993 Mazda Protg[.]" 989 S.W.2d 13, 16 (Tex. App.—San Antonio, 1998, no pet.) Although the release enumerated only the car dealership with particularity, the court held that the broad release of "all liability regarding the [vehicle] purchase" barred claims against the sales manager and the employee who handled the financing:

> In this case, it is clear that the release of "North Star Dodge" from any liability associated with the sale of the Mazda, also released the North Star Dodge employees associated with that sale. Under the circumstances, the connection of Powers and Hall with North Star Dodge and the sale of the Mazda is apparent. Therefore, the release encompasses Higinio's claims against North Star Dodge as well as his claims against North Star Dodge employees involved in the sale of the Mazda.

*Id.* at 18.

40.     In *Dyrcz v. Longview Enterprise, Ltd.*, the court reached the same conclusion. There, the plaintiff signed a release prior to participating in a dodgeball game that released:

> Grand Central Station Longview, its partners, agents, and employees from any responsibility or liability for personal injury  . . . [that] may [occur] from participating in the Dodge Ball contest.

*Dyrcz v. Longview Enter., Ltd.*, 2:05-CV-476 (TJW), 2006 WL 3289046, at *1 (E.D. Tex. Nov. 13, 2006), aff'd sub nom. *Dyrcz v. Graham Bros. of Longview, LLC*, 234 Fed. Appx. 236 (5th Cir. 2007). Plaintiff thereafter sued Longview Enterprises—the employer of the

14

AR 000030

management and staff at Grand Central Station Longview—for injuries sustained in a dodgeball match. *Id.* Longview Enterprise moved for summary judgment pursuant to the release even though it was not mentioned by the release. *Id.* In evaluating Longview Enterprise's argument, the court noted that "[i]n Texas, in order to claim the protection of a release, the claim being released must come within 'the express contemplation of the release provision when viewed in context of the contract." *Id.*, citing *Stinnett*, 227 F.3d at 255. Further, the court recognized that "a tortfeasor can claim the protection of a release as long as he is referred to "with such descriptive particularity that his identity or his connection with the tortious event is not in doubt," and therefore, that "a defendant may still avail himself of the protection of a release even though he has not been specifically identified as a party to the release." *Id.*, citing *Winkler*, 816 S.W.2d at 111.

41.     Applying these rules, the court concluded that:

> [T]he claims against Defendant Longview Enterprises fit within the release signed by Plaintiff. There is no dispute that Plaintiff's claims resulted from participating in a dodgeball game at Graham Central Station.
> . . . .
>
> Although the release does not specifically name Longview Enterprise, the release does cover "partners, agents, and employees" of Graham Central Station . . . [t]herefore, by releasing Graham Central Station, it is clear that Plaintiff intended to release any claim against all individuals and entities involved in the operations and activities of Graham Central Station, which would include . . . . Longview Enterprise.

*Id.* at 2. Accordingly, the court granted the defendant summary judgment. *Id.*

42.     In *Memorial Medical Center*, the Texas Supreme Court applied these same concepts in finding that a physician, in releasing a hospital from "all claims" arising out of the parties' employer-employee relationship, also released the physician's unknown

15

AR 000031

claims for exposure to toxic chemicals. *Memorial Medical Center of East Texas*, 943 S.W.2d at 434.

43. All of the foregoing cases lead to only one conclusion in the case at hand-- Plaintiffs Nisal, Avant, Garner, as well as Defendants Minu and Undavia, are bound by the Mutual Release because of their intimate connection to the underlying subject matter—the Commercial Leases.

(i) The parties were all intimately involved in the Commercial Leases

44. First, Providian—a company owned by Undavia—leased office space to Nisal and Sterling. Although not actually parties to the lease, Avant and Garner nevertheless operated in the office space leased by Nisal and Sterling. In fact, Nisal and Sterling had no operations in the building. Plaintiff Garner is a principal of Avant and is the president and director of Nisal and the member-manager and registered agent of Sterling. (See Officers and Directors of Nisal; Ex. H); (See Officers and Directors of Sterling; Ex. M).

45. Sterling, in turn, serves as the registered agent of Avant. Sterling, Nisal, and Avant were inextricably linked and were all representatives and agents of each other with respect to the lease between Providian, on one hand, and Nisal and Sterling, on the other.

46. This notion is cemented by Plaintiffs' own allegations. They allege:

> **Plaintiffs** are former tenants in a commercial building which is owned and/or managed by Defendant Khyati Mohamed Undavia or an entity for which Defendant Khyati Mohamed Undavia is a principal, agent, representative, or employee (the "Building").
> . . . .
> While **Plaintiffs** were tenants in the Building, all mail was delivered to the Building's main address, where it would be collected by Defendant Khyatia Mohamed Undavia and distributed by her to her other tenants.
> . . . .

16

AR 000032

> Plaintiffs recently discovered **during their tenancy at the building**, Defendant Khyati Mohamed Undavia would frequently take letters containing checks, from the mail, endorse the checks with the name and bank account information for Minu Rx, LTD. d/b/a Memorial Compounding Pharmacy, and deposit them into at least two bank accounts of Minu RX, LTD. d/b/a Memorial Compounding Pharmacy.
> . . . .
> **Defendants** . . . had an oral agreement **with Plaintiffs** to collect all mail received at the Building and deliver the same to Plaintiffs.
> . . . .
> Plaintiffs allege that Defendant Khyati Mohamed Undavia acted **as an agent of Plaintiffs** with respect to collecting and delivering mail, and therefore owed fiduciary duties to Plaintiff.

(See Plaintiff's Amended Petition, ¶ 11, 12, 19, 20). Through these statements, Plaintiffs acknowledge they were **all** tenants under the leases. If they were **all** tenants under the lease, then surely they were parties to the Mutual Release.

    (ii)    <u>The Original Lawsuit—which spawned the Mutual Release—arose out of Plaintiffs' tenancy with Defendants</u>

47.    Aside from being inextricably connected to each other, the parties in this lawsuit were also all involved in the lawsuit that gave rise to the Mutual Release.

48.    The Original Lawsuit arose out of a dispute concerning the commercial leases between Providian and Nisal/Sterling. The Plaintiffs' original petition in that lawsuit alleged:

> Sterling entered into a lease agreement with [Providian] . . . upon termination of the lease and sixty days after Sterling provided a forwarding address, [Providian] has refused to refund the security deposit to Sterling. [Providian] has acted in bad faith.
> . . . . . .
> Nisal entered into a lease agreement with [Providian] . . . upon termination of the lease and sixty days after Sterling provided a forwarding address, [Providian] has refused to refund the security deposit to Nisal. [Providian] has acted in bad faith.

17

(See Original Petition in Original Lawsuit; Ex. L).

49.     In settling the Original Lawsuit, the parties executed a Mutual Release in which Nisal and Sterling, as well as their officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs and attorneys" **<u>released</u>** Providian, as well as its officers, directors, shareholders, partners, successors, agents, assigns, heirs, employees, servants, and attorneys, from "**<u>all liabilities, claims, demands, causes of actions, judgments, liens, liabilities or potential causes of action which Sterling and Nisal have ever had or could have had, whether now known or unknown, which have arisen or may arise from the beginning of time to the date of this release[.]</u>**" (See Mutual Release; Ex. C).

50.     In other words, this lawsuit involves the same parties, the same subject matter, and the same claims that were captured in the Mutual Release.  The inescapable conclusion is that each Plaintiff, each Defendant, and each claim in this lawsuit—whether or not specifically mentioned in the Mutual Release—is so intimately connected to that release that it is unequivocally encompassed in the Mutual Release.

## C.  PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF RES JUDICATA

51.     The Mutual Release is not the only bar to Plaintiffs' claims in this lawsuit. Plaintiffs' claims are also barred by the doctrine of res judicata.

52.     "Res Judicata bars litigation of all issues and defenses which, with the use of diligence, might have been tried in the prior suit." *Bell v. Morris*, 832 S.W.2d 749, 754 (Tex. App.—Houston [14th Dist.] 1992, writ denied).  "When there has been a prior

18

**AR 000034**

judgment in a subsequent suit in which there is identity of the parties, issues, and subject matter, such judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action on the theory that they have merged into the judgment." *Id*. "Summary judgment may be granted upon a proper plea of res judicata." *Id*.

53. "In general, if [a] dismissal is with prejudice, res judicata applies." *Id*. at 755. "Also, if the dismissal is entered by agreement of the parties in pursuance of the compromise or settlement of a controversy, res judicata applies." *Id*.

54. Here, the doctrine of res judicata bars' Plaintiffs' claims. In the Original Lawsuit, Plaintiffs contended that:

> Sterling entered into a lease agreement with [Providian] . . . upon termination of the lease and sixty days after Sterling provided a forwarding address, [Providian] has refused to refund the security deposit to Sterling. [Providian] has acted in bad faith.
>  . . . . .
> Nisal entered into a lease agreement with [Providian] . . . upon termination of the lease and sixty days after Sterling provided a forwarding address, [Providian] has refused to refund the security deposit to Nisal. [Providian] has acted in bad faith.

(See Original Petition in Original Lawsuit; Ex. L). Plaintiffs' allegations in this lawsuit are for a claim for breach of contract. (See §5 of the Nisal Commercial Lease; Ex. A) ("Within 60 days after tenant surrenders the leased premises . . . Landlord will refund the security deposit[.]"). Included are various torts including breach of duty of good faith and fair dealing, conversion, theft liability act, and breach of fiduciary duty. These torts are in play because Plaintiffs' alleged "bad faith".

**AR 000035**

55. The claims in the Original Lawsuit are the exact same claims that Plaintiffs now assert against Defendants. Further, these current claims and the prior claims all arise out of the **exact same** subject matter: the parties' lease agreements.

56. Of course, res judicata only bars those claims that a party could have asserted in the underlying lawsuit "with the use of diligence." *Bell*, 832 S.W.2d at 754. Here, Plaintiffs could have asserted their current claims in the Original Lawsuit had they used any diligence at all. Defendants allegedly deposited Plaintiffs' checks as early as August 2011. (See Plaintiffs' Original Petition); (See First Amended Petition). Plaintiffs did not file the Original Lawsuit until September 5, 2013, meaning that Plaintiffs had over *two years* to discover the fact that Defendants had deposited their checks. As a matter of law, two years is not due diligence.

57. Accordingly, Plaintiffs claims are barred by the doctrine of res judicata. Defendants are entitled to summary judgment as a matter of law.

**D. PLAINTIFFS NEVER RECEIVED DELIVERY OF THE CHECKS AND THEREFORE HAVE NO ACTION FOR CONVERSION AGAINST DEFENDANTS**

58. Here, Plaintiffs allege that Defendants took the checks intended for Plaintiffs and deposited them into Defendants' own bank accounts. Under the Texas Business and Commerce Code, Plaintiffs have no claims against Defendants.

59. "An action for conversion of an instrument may not be brought by . . . **a payee** or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee." Tex. Bus. & Com. Code § 3.420(b). The policy behind this rule is that:

20

AR 000036

Until delivery, the payee does not have any interest in the check. The payee never became the holder of the check nor a person entitled to enforce the check. Section 3-301. Nor is the payee injured by the fraud. Normally the drawer of a check intends to pay an obligation owed to the payee. But if the check is never delivered to the payee, the obligation owed to the payee is not affected. If the check falls into the hands of a thief who obtains payment after forging the signature of the payee as an indorsement, the obligation owed to the payee continues to exist after the thief receives payment. Since the payee's right to enforce the underlying obligation is unaffected by the fraud of the thief, there is no reason to give any additional remedy to the payee.

Tex. Bus. & Com. Code Ann. § 3.420, cmt 3.

60.     Here, Plaintiffs contend that Defendants "stole" Plaintiffs' checks before the checks were delivered to Plaintiffs' offices.  Thus, Plaintiffs never received "delivery" of the checks and cannot maintain a conversion action against Defendants.

61.     Further, there is no basis for holding that Defendants were Plaintiffs' agents.  First, Plaintiffs terminated their tenancy on or about March 31, 2013.  (See Original Lawsuit; Ex. L) (Lease Termination Letter; Ex. N). Any agency relationship between the Defendants and Plaintiffs, assuming arguendo that one existed, ended on that date.  Yet several of the checks allegedly converted by Defendants are dated well after the end of Plaintiffs' tenancy.  (See Exhibit 1 to Plaintiffs' Motion to Compel) (four checks totaling $11,387.15 dated September 25, 2013).

62.     Even during the Plaintiffs' tenancy, there was no agency relationship between Plaintiffs and Defendants regarding the mail, and Plaintiffs' contention that Defendants

21

"orally agreed" to accept Plaintiffs' mail is untenable. The leases between Plaintiffs and Defendants contained standard merger and no-oral modification clauses:

> The lease contains the entire agreement between the Landlord and Tenant and may not be changed except by written agreement.

(See Nisal Commercial Lease, § 38(A); Ex. A). The alleged "contract" regarding the mail is not mentioned by the lease agreements. In fact, there is no mention of mail anywhere. Accordingly, Plaintiffs' reliance on the alleged oral agreement violates either the parol-evidence rule or the no-oral modification clause. See *Robbins v. Warren*, 782 S.W.2d 509, 511 (Tex. App.—Houston [1st Dist.] 1989, no writ) (in a contract required by law to be written, a no-oral modification clause is valid and enforceable); see Tex. Bus. & Com. Code §26.01(b)(5) (providing that a lease of real estate for more than one year must be in writing to be enforceable); (See Nisal Commercial Lease; Ex. A) (providing for a three-year lease).

**E.    PLAINTIFFS' CLAIMS ARE BARRED IN PART BY THE STATUTE OF LIMITATIONS.**

63.    Plaintiffs' claims are also barred in part by the applicable statute of limitations period.

64.    Conversion is subject to a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code §16.003. Unjust enrichment and money had and received claims are also subject to a two-year limitations period. *Elledge v. Friberg-Cooper Water Sup.*, 240 S.W.3d 869, 870 (Tex. 2007).

65.    Here, Plaintiffs seek recovery for checks that Defendants allegedly took as early as 2011. Yet Plaintiffs did not file suit until April 22, 2014, and they allege no basis

22

sufficient to toll the statute of limitations. Accordingly, based on the allegations Plaintiffs have asserted, their claims pre-date April 22, 2012; therefore, claims for conversion, unjust enrichment, and money had and received are barred as a matter of law.

**F.    DEFENDANTS/COUNTER-PLAINTIFFS ARE ENTITLED TO THEIR ATTORNEY'S FEES**

66.    Pursuant to Tex. Civ. Prac. Rem. Code §37.009 and §38.001, Counter-Plaintiffs are entitled to their reasonable attorney's fees in prosecuting their affirmative claims. To date, Counter-Plaintiffs have incurred $11,257.50 in reasonable and necessary attorney's fees. (See Declaration of Ashish Mahendru, ¶13; Ex. O).

## VIII.
### CONCLUSION

67.    Plaintiffs entered into a Mutual Release in which they released any known or unknown claims that they had against all Defendants. By operation of law and by application of the Mutual Release, Plaintiffs' claims are barred as to all Defendants. Additionally, Plaintiffs' claims are barred by res judicata because Plaintiffs nonsuited their prior lease claims against Defendants with prejudice. Because Plaintiffs never received delivery of the checks, they have no claim for conversion. Plaintiffs' claims are also barred in part by the applicable limitations periods.

68.    Defendants respectfully request that this Court grant them summary judgment, dismiss Plaintiffs' claims with prejudice, grant them their reasonable attorney's fees, and grant Defendants all further relief to which they are entitled at law or equity.

23

**AR 000039**

Date: January 30, 2015                    Respectfully submitted,

                                          **MAHENDRU, P.C.**

                                          By: _____

                                          Ashish Mahendru
                                          Texas Bar No. 00796980
                                          Darren A. Braun
                                          Texas Bar No. 24082267
                                          639 Heights Boulevard
                                          Houston, Texas 77007
                                          (713) 571-1519 (Telephone)
                                          (713) 651-0776 (Facsimile)
                                          amahendru@thelitigationgroup.com
                                          dbraun@thelitigationgroup.com

                                          **ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been provided to all counsel of record in accordance with the applicable Texas Rules of Civil Procedure on this 30th day of January 2015.

Matias J. Adrogué
Robert Stephan Kaase
1629 West Alabama St.
Houston, Texas 77006

_____
Ashish Mahendru

24

**AR 000040**



# TEXAS ASSOCIATION OF REALTORS
## COMMERCIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2006

## Table of Contents

| No. | Paragraph Description | Pg. |
|---|---|---|
| 1. | Parties | 2 |
| 2. | Leased Premises | 2 |
| 3. | Term | 2 |
| | A. Term | |
| | B. Delay of Occupancy | |
| 4. | Rent and Expenses | 3 |
| | A. Base Monthly Rent | |
| | B. First Full Month's Rent | |
| | C. Prorated Rent | |
| | D. Additional Rent | |
| | E. Place of Payment | |
| | F. Method of Payment | |
| | G. Late Charges | |
| | H. Returned Checks | |
| 5. | Security Deposit | 4 |
| 6. | Taxes | 4 |
| 7. | Utilities | 4 |
| 8. | Insurance | 5 |
| 9. | Use and Hours | 5 |
| 10. | Legal Compliance | 6 |
| 11. | Signs | 6 |
| 12. | Access By Landlord | 7 |
| 13. | Move-In Condition | 7 |
| 14. | Move-Out Condition | 7 |
| 15. | Maintenance and Repairs | 7 |
| | A. Cleaning | |
| | B. Conditions Caused by a Party | |
| | C. Repair & Maintenance Responsibility | |
| | D. Repair Persons | |
| | E. HVAC Service Contract | |
| | F. Common Areas | |
| | G. Notice of Repairs | |
| | H. Failure to Repair | |
| 16. | Alterations | 9 |
| 17. | Liens | 9 |
| 18. | Liability | 9 |
| 19. | Indemnity | 9 |
| 20. | Default | 9 |
| 21. | Abandonment, Interruption of Utilities, Removal of Property & Lockout | 10 |

| No. | Paragraph Description | Pg. |
|---|---|---|
| 22. | Holdover | 10 |
| 23. | Landlord's Lien & Security Interest | 10 |
| 24. | Assignment and Subletting | 10 |
| 25. | Relocation | 11 |
| 26. | Subordination | 11 |
| 27. | Estoppel Certificates | 11 |
| 28. | Casualty Loss | 11 |
| 29. | Condemnation | 12 |
| 30. | Attorney's Fees | 12 |
| 31. | Representations | 12 |
| 32. | Brokers | 12 |
| 33. | Addenda | 13 |
| 34. | Notices | 13 |
| 35. | Special Provisions | 13 |
| 36. | Agreement of the Parties | 14 |

### ADDENDA & EXHIBITS (check all that apply)

☒ Exhibit A _____
☐ Exhibit _____
☐ Commercial Lease Addendum for Broker's Fee
☐ Commercial Lease Expense Reimbursement Addendum
☒ Commercial Lease Addendum for Extension Option
☐ Commercial Lease Addendum for Percentage Rent
☒ Commercial Lease Parking Addendum
☒ Commercial Landlord's Rules and Regulations
☒ Commercial Lease Guaranty
☒ Commercial Lease Right of First Refusal to Lease Addendum
☐ Commercial Lease Addendum for Optional Space
☒ Commercial Leasehold Construction Addendum
☒ Acceptance Form _____
☒ Right of First Refusal to Purchase

(TAR-2101) 5-26-06    Initialed for Identification by Tenant: _____ _____, and Landlord _____    Page 1 of 14

Norma Scott Page 210-732-5258

**AR 000041**

**EXHIBIT A**


**1. PARTIES:** The parties to this lease are:

> Tenant: Nisal Corporation
>
> _____ ; and
>
> Landlord: Providian Holdings, Inc.
>
> _____ .

**2. LEASED PREMISES:**

A. Landlord leases to Tenant the following described real property, known as the "leased premises," along with all its improvements *(Check only one box)*:

☑ **(1) Multiple-Tenant Property:** Suite or Unit Number __200__ containing approximately __4,700__ square feet of rentable area in Memorial Compounding Pharmacy Building *(project name)* at 2918 San Jacinto Street
*(address)* in Houston 77004 *(city)*, Harris *(county)*, Texas, which is legally described on attached Exhibit __A__ or as follows:
The premises are being leased "AS IS". Tenant has inspected the premises and accepts the premises "AS IS".
_____ .

☐ **(2) Single-Tenant Property:** The real property at: _____
_____ *(address)* in
_____ *(city)*, _____ *(county)*, Texas, which
is legally described on attached Exhibit _____ or as follows: _____
_____
_____

B. If Paragraph 2A(1) applies:
  (1) "Property" means the building or complex in which the leased premises are located, inclusive of any common areas, drives, parking areas, and walks; and
  (2) the parties agree that the rentable area of the leased premises may not equal the actual or useable area within the leased premises and may include an allocation of common areas in the Property.

**3. TERM:**

A. Term: The term of this lease is __36__ months and __0__ days, commencing on:

March 1, 2009 _____ (Commencement Date) and ending on

February 29, 2012 _____ (Expiration Date).

AR 000042

B. Delay of Occupancy: If Tenant is unable to occupy the leased premises on the Commencement Date because of construction on the leased premises to be completed by Landlord that is not substantially complete or a prior tenant's holding over of the leased premises, Landlord will not be liable to Tenant for such delay and this lease will remain enforceable. In the event of such a delay, the Commencement Date will automatically be extended to the date Tenant is able to occupy the Property and the Expiration Date will also be extended by a like number of days, so that the length of this lease remains unchanged. If Tenant is unable to occupy the leased premises after the 90th day after the Commencement Date because of construction on the leased premises to be completed by Landlord that is not substantially complete or a prior tenant's holding over of the leased premises, Tenant may terminate this lease by giving written notice to Landlord before the leased premises become available to be occupied by Tenant and Landlord will refund to Tenant any amounts paid to Landlord by Tenant. This Paragraph 3B does not apply to any delay in occupancy caused by cleaning or repairs.

C. Unless the parties agree otherwise, Tenant is responsible for obtaining a certificate of occupancy for the leased premises if required by a governmental body.

## 4. RENT AND EXPENSES:

A. Base Monthly Rent: On or before the first day of each month during this lease, Tenant will pay Landlord base monthly rent as described on attached Exhibit xxxxxxxxxxxxxxxxxxxxas follows:

| from | March 1, 2009 | to | August 31, 2009 | : | $ 0.00 | ; |
| from | September 1, 2009 | to | February 28, 2010 | : | $3,600.00/month | ; |
| from | March 1, 2010 | to | February 28, 2011 | : | $3,900.00/month | ; |
| from | March 1, 2011 | to | February 29, 2012 | : | $4,200.00/month | ; |
| from | | to | | : | $ | . |

B. First Full Month's Rent: The first full base monthly rent is due on or before September 1, 2009

C. Prorated Rent: If the Commencement Date is on a day other than the first day of a month, Tenant will pay Landlord as prorated rent, an amount equal to the base monthly rent multiplied by the following fraction: the number of days from the Commencement Date to the first day of the following month divided by the number of days in the month in which this lease commences. The prorated rent is due on or before the Commencement Date.

D. Additional Rent: In addition to the base monthly rent and prorated rent, Tenant will pay Landlord all other amounts, as provided by the attached (Check all that apply.):
❑ (1) Commercial Expense Reimbursement Addendum N/A
❑ (2) Commercial Percentage Rent Addendum N/A
❑ (3) Commercial Parking Addendum N/A
❑ (4) N/A
All amounts payable under the applicable addenda are deemed to be "rent" for the purposes of this lease.

E. Place of Payment: Tenant will remit all amounts due Landlord under this lease to the following person at the place stated or to such other person or place as Landlord may later designate in writing:

Name: Providian Holdings, Inc.
Address: 2918 San Jacinto Street, Suite 100
Houston, Texas 77004

F. Method of Payment: Tenant must pay all rent timely without demand, deduction, or offset, except as permitted by law or this lease. If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is returned to Landlord by the institution on which it was drawn, Landlord after

AR 000043

providing written notice to Tenant may require Tenant to pay subsequent amounts that become due under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

G. <u>Late Charges</u>: If Landlord does not <u>actually receive</u> a rent payment at the designated place of payment within 5 days after the date it is due, Tenant will pay Landlord a late charge equal to 5% of the amount due. In this paragraph, the mailbox is not the agent for receipt for Landlord. The late charge is a cost associated with the collection of rent and Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 20.

H. <u>Returned Checks</u>: Tenant will pay $25.00 (not to exceed $25) for each check Tenant tenders to Landlord which is returned by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment.

## 5. SECURITY DEPOSIT:

A. Upon execution of this lease, Tenant will pay $ 3,600.00 to Landlord as a security deposit.

B. Landlord may apply the security deposit to any amounts owed by Tenant under this lease. If Landlord applies any part of the security deposit during any time this lease is in effect to amounts owed by Tenant, Tenant must, within 10 days after receipt of notice from Landlord, restore the security deposit to the amount stated.

C. Within 60 days after Tenant surrenders the leased premises and provides Landlord written notice of Tenant's forwarding address, Landlord will refund the security deposit less any amounts applied toward amounts owed by Tenant or other charges authorized by this lease.

## 6. TAXES: Unless otherwise agreed by the parties, Landlord will pay all ~~real~~ personal property ad valorem taxes assessed against the leased premises.

## 7. UTILITIES:

A. The party designated below will pay for the following utility charges to the leased premises and any connection charges for the utilities. (Check all that apply.)

| | N/A | Landlord | Tenant |
|---|---|---|---|
| (1) Water | ☐ | ☒ | ☐ |
| (2) Sewer | ☐ | ☒ | ☐ |
| (3) Electric | ☐ | ☒ | ☐ |
| (4) Gas | ☐ | ☒ | ☐ |
| (5) Telephone | ☐ | ☐ | ☒ |
| (6) Trash , Cleaning | ☐ | ☐ | ☒ |
| (7) Cable | ☐ | ☐ | ☒ |
| (8) _____ | ☐ | ☐ | ☐ |
| (9) All other utilities | ☐ | ☐ | ☒ |

B. The party responsible for the charges under Paragraph 7A will pay the charges directly to the utility service provider. The responsible party may select the utility service provider, except that if Tenant selects the provider, any access or alterations to the Property or leased premises necessary for the utilities may be made only with Landlord's prior consent, which Landlord will not unreasonably withhold. If Landlord incurs any liability for utility or connection charges for which Tenant is responsible to pay and Landlord pays such amount, Tenant will immediately upon written notice from Landlord reimburse Landlord such amount.

AR 000044

C. **Notice: Tenant should determine if all necessary utilities are available to the leased premises and are adequate for Tenant's intended use.**

D. <u>After-Hours HVAC Charges</u>: "HVAC services" mean heating, ventilating, and air conditioning of the leased premises. *(Check one box only.)*

☒ (1) Landlord is obligated to provide the HVAC services to the leased premises only during the Property's operating hours specified under Paragraph 9C.

☒ (2) Landlord will provide the HVAC services to the leased premises during the operating hours specified under Paragraph 9C for no additional charge and will, at Tenant's request, provide HVAC services to the leased premises during other hours for an additional charge of $ 20.00 per hour. Tenant will pay Landlord the charges under this paragraph immediately upon receipt of Landlord's invoice. Hourly charges are charged on a half-hour basis. Any partial hour will be rounded up to the next half hour. Tenant will comply with Landlord's procedures to make a request to provide the additional HVAC services under this paragraph.

☐ (3) Tenant will pay for the HVAC services under this lease.

8. **INSURANCE:**

A. During all times this lease is in effect, Tenant must, at Tenant's expense, maintain in full force and effect from an insurer authorized to operate in Texas: $2,000,000.00
   (1) public liability insurance in an amount not less than $1,000,000.00 on an occurrence basis naming Landlord as an additional insured; and
   (2) personal property damage insurance for Tenant's business operations and contents on the leased premises in an amount sufficient to replace such contents after a casualty loss.

B. Before the Commencement Date, Tenant must provide Landlord with a copy of insurance certificates evidencing the required coverage. If the insurance coverage is renewed or changes in any manner or degree at any time this lease is in effect, Tenant must, not later than 10 days after the renewal or change, provide Landlord a copy of an insurance certificate evidencing the renewal or change.

C. If Tenant fails to maintain the required insurance in full force and effect at all times this lease is in effect, Landlord may:
   (1) purchase insurance that will provide Landlord the same coverage as the required insurance and Tenant must immediately reimburse Landlord for such expense; or
   (2) exercise Landlord's remedies under Paragraph 20.

D. Unless the parties agree otherwise, Landlord will maintain in full force and effect insurance for: (1) fire and extended coverage in an amount to cover the reasonable replacement cost of the improvements of the Property; and (2) any public liability insurance in an amount that Landlord determines reasonable and appropriate.

E. If there is an increase in Landlord's insurance premiums for the leased premises or Property or its contents that is caused by Tenant, Tenant's use of the leased premises, or any improvements made by or for Tenant, Tenant will, for each year this lease is in effect, pay Landlord the increase immediately after Landlord notifies Tenant of the increase. Any charge to Tenant under this Paragraph 8E will be equal to the actual amount of the increase in Landlord's insurance premium.

9. **USE AND HOURS:**

A. Tenant may use the leased premises for the following purpose and no other: general office use

**AR 000045**

B. Unless otherwise specified in this lease, Tenant will operate and conduct its business in the leased premises during business hours that are typical of the industry in which Tenant represents it operates.

C. The Property maintains operating hours of (specify hours, days of week, and if inclusive or exclusive of weekends and holidays): 8:30am - 7:00pm, Monday thru Friday  exclusive of holidays which includes Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day and New Year's Day. Also Saturday 8:30am-2:00pm except holidays.

## 10. LEGAL COMPLIANCE:

A. Tenant may not use or permit any part of the leased premises or the Property to be used for:
   (1) any activity which is a nuisance or is offensive, noisy, or dangerous;
   (2) any activity that interferes with any other tenant's normal business operations or Landlord's management of the Property;
   (3) any activity that violates any applicable law, regulation, zoning ordinance, restrictive covenant, governmental order, owners' association rules, tenants' association rules, Landlord's rules or regulations, or this lease;
   (4) any hazardous activity that would require any insurance premium on the Property or leased premises to increase or that would void any such insurance;
   (5) any activity that violates any applicable federal, state, or local law, including but not limited to those laws related to air quality, water quality, hazardous materials, wastewater, waste disposal, air emissions, or other environmental matters;
   (6) the permanent or temporary storage of any hazardous material; or
   (7) _____
   _____
   _____
   _____

B. "Hazardous material" means any pollutant, toxic substance, hazardous waste, hazardous material, hazardous substance, solvent, or oil as defined by any federal, state, or local environmental law, regulation, ordinance, or rule existing as of the date of this lease or later enacted.

C. Landlord does not represent or warrant that the leased premises or Property conform to applicable restrictions, zoning ordinances, setback lines, parking requirements, impervious ground cover ratio requirements, and other matters that may relate to Tenant's intended use. Tenant must satisfy itself that the leased premises may be used as Tenant intends by independently investigating all matters related to the use of the leased premises or Property. Tenant agrees that it is not relying on any warranty or representation made by Landlord, Landlord's agent, or any broker concerning the use of the leased premises or Property.

## 11. SIGNS:

A. Tenant may not post or paint any signs at, on, or about the leased premises or Property without Landlord's written consent. Landlord may remove any unauthorized sign, and Tenant will promptly reimburse Landlord for its cost to remove any unauthorized sign.

B. Any authorized sign must comply with all laws, restrictions, zoning ordinances, and any governmental order relating to signs on the leased premises or Property. Landlord may temporarily remove any authorized sign to complete repairs or alterations to the leased premises or the Property.

C. By providing written notice to Tenant before this lease ends, Landlord may require Tenant, upon move-out and at Tenant's expense, to remove, without damage to the Property or leased premises, any or all signs that were placed on the Property or leased premises by or at the request of Tenant. Any signs that Landlord does not require Tenant to remove and that are fixtures, become the property of the Landlord and must be surrendered to Landlord at the time this lease ends.

(TAR-2101) 5-26-06          Initialed for Identification by Tenant: _____, _____, and Landlord _____ _____          Page 6 of 14

**AR 000046**

## 12. ACCESS BY LANDLORD:

A. During Tenant's normal business hours Landlord may enter the leased premises for any reasonable purpose, including but not limited to purposes for repairs, maintenance, alterations, and showing the leased premises to prospective tenants or purchasers. Landlord may access the leased premises after Tenant's normal business hours if: (1) entry is made with Tenant's permission; or (2) entry is necessary to complete emergency repairs. Landlord will not unreasonably interfere with Tenant's business operations when accessing the leased premises.

B. During the last __90__ days of this lease, Landlord may place a "For Lease" or similarly worded sign in the leased premises.

## 13. MOVE-IN CONDITION: Tenant has inspected the leased premises and accepts it in its present (as-is) condition unless expressly noted otherwise in this lease. Landlord and any agent have made no express or implied warranties as to the condition or permitted use of the leased premises or Property.

## 14. MOVE-OUT CONDITION AND FORFEITURE OF TENANT'S PERSONAL PROPERTY:

A. At the time this lease ends, Tenant will surrender the leased premises in the same condition as when received, except for normal wear and tear. Tenant will leave the leased premises in a clean condition free of all trash, debris, personal property, hazardous materials, and environmental contaminants.

B. If Tenant leaves any personal property in the leased premises after Tenant surrenders possession of the leased premises, Landlord may: (1) require Tenant, at Tenant's expense, to remove the personal property by providing written notice to Tenant; or (2) retain such personal property as forfeited property to Landlord.

C. "Surrender" means vacating the leased premises and returning all keys and access devices to Landlord. "Normal wear and tear" means deterioration that occurs without negligence, carelessness, accident, or abuse.

D. By providing written notice to Tenant before this lease ends, Landlord may require Tenant, upon move-out and at Tenant's expense, to remove, without damage to the Property or leased premises, any or all fixtures that were placed on the Property or leased premises by or at the request of Tenant. Any fixtures that Landlord does not require Tenant to remove become the property of the Landlord and must be surrendered to Landlord at the time this lease ends.

## 15. MAINTENANCE AND REPAIRS:

A. Cleaning: Tenant must keep the leased premises clean and sanitary and promptly dispose of all garbage in appropriate receptacles. ☐ Landlord ☒ Tenant will provide, at its expense, janitorial services to the leased premises that are customary and ordinary for the property type. Tenant will maintain any grease trap on the Property which Tenant uses, including but not limited to periodic emptying and cleaning, as well as making any modification to the grease trap that may be necessary to comply with any applicable law. Tenant shall clean the premises and the restrooms on the second floor at its expense.

B. Repairs of Conditions Caused by a Party: Each party must promptly repair a condition in need of repair that is caused, either intentionally or negligently, by that party or that party's guests, patrons, invitees, contractors or permitted subtenants.

C. Repair and Maintenance Responsibility: Except as otherwise provided by this Paragraph 15, the party designated below, at its expense, is responsible to maintain and repair the following specified items in the leased premises (if any). The specified items must be maintained in clean and good operable condition. If a governmental regulation or order requires a modification to any of the specified items, the party designated to maintain the item must complete and pay the expense of the modification. The

**AR 000047**

specified items include and relate only to real property in the leased premises. Tenant is responsible for the repair and maintenance of its personal property. *(Check all that apply.)*

| | | N/A | Landlord | Tenant |
|---|---|---|---|---|
| (1) | Foundation, exterior walls, roof, and other structural components | ☐ | ☒ | ☐ |
| (2) | Glass and windows | ☐ | ☒ | ☐ |
| (3) | Fire protection equipment and fire sprinkler systems | ☒ | ☐ | ☐ |
| (4) | Exterior & overhead doors, including closure devices, molding, locks, and hardware | ☒ | ☐ | ☐ |
| (5) | Grounds maintenance, including landscaping and irrigation systems | ☐ | ☒ | ☐ |
| (6) | Interior doors, including closure devices, frames, molding, locks, and hardware | ☐ | ☐ | ☒ |
| (7) | Parking areas and walks | ☐ | ☒ | ☐ |
| (8) | Plumbing systems, drainage systems, electrical systems, and mechanical systems, except systems or items specifically designated otherwise | ☐ | ☒ | ☐ |
| (9) | Ballast and lamp replacement | ☐ | ☐ | ☒ |
| (10) | Heating, Ventilation and Air Conditioning (HVAC) systems | ☐ | ☒ | ☐ |
| (11) | Signs and lighting: | | | |
| (a) Pylon | Tenant shall pay for cost of new sign and cost of repair and maintenance thereof. Landlord must approve any new sign as to design, location and size before any new sign is installed. | ☐ | ☐ | ☐ |
| (b) Facia | | ☐ | ☐ | ☒ |
| (c) Monument | | ☐ | ☐ | ☐ |
| (d) Door/Suite | | ☐ | ☐ | ☒ |
| (12) | Extermination and pest control, excluding wood-destroying insects | ☐ | ☒ | ☐ |
| (13) | Fences and Gates | ☐ | ☒ | ☐ |
| (14) | Storage yards and storage buildings | ☐ | ☒ | ☐ |
| (15) | Wood-destroying insect treatment and repairs | ☐ | ☒ | ☐ |
| (16) | Cranes and related systems | ☒ | ☐ | ☐ |
| (17) | Repairs costing less than $100.00 | ☐ | ☐ | ☒ |
| (18) | _____ | ☐ | ☐ | ☐ |
| (19) | All other items and systems | | ☐ | ☐ |

D. <u>Repair Persons:</u> Repairs must be completed by trained, qualified, and insured repair persons.

E. ~~HVAC Service Contract: If Tenant maintains the HVAC system under Paragraph 15C(10), Tenant~~ ☐ is ☐ is not required to maintain, at its expense, a regularly scheduled ~~maintenance~~ and service contract for the HVAC system. The maintenance and service ~~contract must~~ be purchased from a HVAC maintenance company that regularly provides ~~such contracts~~ to similar properties. If Tenant fails to maintain a required HVAC ~~maintenance~~ and service contract in effect at all times during this lease, Landlord ~~may do so and~~ charge Tenant the expense of such a maintenance and service contract or ~~exercise Landlord's remedies under Paragraph 20.~~

F. <u>Common Areas:</u> Landlord will maintain any common areas in the Property in a manner as Landlord determines to be in the best interest of the Property. Landlord will maintain any elevator and signs in existing the common area. Landlord may change the size, dimension, and location of any common areas, provided that such change does not materially impair Tenant's use and access to the leased premises. Tenant has the non-exclusive license to use the common areas in compliance with Landlord's rules and restrictions. Tenant may not solicit any business in the common areas or interfere with any other person's right to use the common areas. This paragraph does not apply if Paragraph 2A(2) applies.

AR 000048

G. <u>Notice of Repairs</u>: Tenant must promptly notify Landlord of any item that is in need of repair and that is Landlord's responsibility to repair. All requests for repairs to Landlord must be in writing.

H. <u>Failure to Repair</u>: Landlord must make a repair for which Landlord is responsible within a reasonable period of time after Tenant provides Landlord written notice of the needed repair. If Tenant fails to repair or maintain an item for which Tenant is responsible within 10 days after Landlord provides Tenant written notice of the needed repair or maintenance, Landlord may: (1) repair or maintain the item, without liability for any damage or loss to Tenant, and Tenant must immediately reimburse Landlord for the cost to repair or maintain; or (2) exercise Landlord's remedies under Paragraph 20.

## 16. ALTERATIONS:

A. Tenant may not alter, improve, or add to the Property or the leased premises without Landlord's written consent. Landlord will not unreasonably withhold consent for the Tenant to make reasonable non-structural alterations, modifications, or improvements to the leased premises.

B. Tenant may not alter any locks or any security devices on the Property or the leased premises without Landlord's consent. If Landlord authorizes the changing, addition, or rekeying of any locks or other security devices, Tenant must immediately deliver the new keys and access devices to Landlord.

C. If a governmental order requires alteration or modification to the leased premises, the party obligated to maintain and repair the item to be modified or altered as designated in Paragraph 15 will, at its expense, modify or alter the item in compliance with the order and in compliance with Paragraphs 16A and 17. Tenant must obtain at its expense all permits required for any improvements.

D. Any alterations, improvements, fixtures or additions to the Property or leased premises installed by either party during the term of this lease will become Landlord's property and must be surrendered to Landlord at the time this lease ends, except for those fixtures Landlord requires Tenant to remove under Paragraph 11 or 14 or if the parties agree otherwise in writing.

17. **LIENS:** Tenant may not do anything that will cause the title of the Property or leased premises to be encumbered in any way. If Tenant causes a lien to be filed against the Property or leased premises, Tenant will within 20 days after receipt of Landlord's demand: (1) pay the lien and have the lien released of record; or (2) take action to discharge the lien. Tenant will provide Landlord a copy of any release Tenant obtains pursuant to this paragraph.

18. **LIABILITY:** At all times /To the extent permitted by law, Landlord is NOT responsible to Tenant or Tenant's employees, patrons, guests, or invitees for any damages, injuries, or losses to person or property caused by:
A. an act, omission, or neglect of: Tenant; Tenant's agent; Tenant's guest; Tenant's employees; Tenant's patrons; Tenant's invitees; or any other tenant on the Property;
B. fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, riot, strike, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, environmental contaminants, or other occurrences or casualty losses.

19. **INDEMNITY:** Each party will indemnify and hold the other party harmless from any property damage, personal injury, suits, actions, liabilities, damages, cost of repairs or service to the leased premises or Property, or any other loss caused, negligently or otherwise, by that party or that party's employees, patrons, guests, or invitees.

## 20. DEFAULT:

A. If Landlord fails to comply with this lease within 30 days after Tenant notifies Landlord of Landlord's failure to comply, Landlord will be in default and Tenant may seek any remedy provided by law. If, however, Landlord's non-compliance reasonably requires more than 30 days to cure, Landlord will not be in default if the cure is commenced within the 30-day period and is diligently pursued.

**AR 000049**

B. If Landlord does not actually receive at the place designated for payment any rent due under this lease within 5 days after it is due, Tenant will be in default. If Tenant fails to comply with this lease for any other reason within 10 days after Landlord notifies Tenant of its failure to comply, Tenant will be in default.

C. If Tenant is in default, Landlord may: (i) terminate Tenant's right to occupy the leased premises by providing Tenant with at least 3 days written notice; and (ii) accelerate all rents which are payable during the remainder of this lease or any renewal period without notice or demand. Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by using commercially reasonable means. If Tenant is in default, Tenant will be liable for:
(1) any lost rent;
(2) Landlord's cost of reletting the leased premises, including brokerage fees, advertising fees, and other fees necessary to relet the leased premises;
(3) repairs to the leased premises for use beyond normal wear and tear;
(4) all Landlord's costs associated with eviction of Tenant, such as attorney's fees, court costs, and prejudgment interest;
(5) all Landlord's costs associated with collection of rent such as collection fees, late charges, and returned check charges;
(6) cost of removing any of Tenant's equipment or fixtures left on the leased premises or Property;
(7) cost to remove any trash, debris, personal property, hazardous materials, or environmental contaminants left by Tenant or Tenant's employees, patrons, guests, or invitees in the leased premises or Property;
(9) cost to replace any unreturned keys or access devices to the leased premises, parking areas, or Property;
(10) any other recovery to which Landlord may be entitled under this lease or under law.

21. **ABANDONMENT, INTERRUPTION OF UTILTIES, REMOVAL OF PROPERTY, AND LOCKOUT:** Chapter 93 of the Texas Property Code governs the rights and obligations of the parties with regard to: (a) abandonment of the leased premises; (b) interruption of utilities; (c) removal of Tenant's property; and (d) "lock-out" of Tenant.

22. **HOLDOVER:** If Tenant fails to vacate the leased premises at the time this lease ends, Tenant will become a tenant-at-will and must vacate the leased premises immediately upon receipt of demand from Landlord. No holding over by Tenant, with or without the consent of Landlord, will extend this lease. Tenant will indemnify Landlord and any prospective tenants for any and all damages caused by the holdover. Rent for any holdover period will be 2 times the base monthly rent plus any additional rent calculated on a daily basis and will be immediately due and payable daily without notice or demand.

23. **LANDLORD'S LIEN AND SECURITY INTEREST:** To secure Tenant's performance under this lease, <u>Tenant grants to Landlord a lien and security interest against all of Tenant's nonexempt personal property that is in the leased premises or Property.</u> This lease is a security agreement for the purposes of the Uniform Commercial Code. Landlord may file a copy of this lease as a financing statement.

24. **ASSIGNMENT AND SUBLETTING:** Landlord may assign this lease to any subsequent owner of the Property. Tenant may not assign this lease or sublet any part of the leased premises without Landlord's written consent. An assignment of this lease or subletting of the leased premises without Landlord's written consent is voidable by Landlord. If Tenant assigns this lease or sublets any part of the leased premises, Tenant will remain liable for all of Tenant's obligations under this lease regardless if the assignment or sublease is made with or without the consent of Landlord. Tenant may not sublease or assign this lease without the consent of Landlord which consent may be subject to terms and conditions imposed by Landlord regarding any such sublease or assignment and the payment of rent thereunder.

**AR 000050**

## 25. RELOCATION:

☐ A. ~~By providing Tenant with not less than 90 days advanced written notice, Landlord may require Tenant~~ to relocate to another location in the Property, provided that the other location is equal in size or larger than the leased premises then occupied by Tenant and contains similar leasehold improvements. Landlord will pay Tenant's reasonable out-of-pocket moving expenses for moving to the other location. "Moving expenses" means reasonable expenses payable to professional movers, utility companies for connection and disconnection fees, wiring companies for connecting and disconnecting Tenant's office equipment required by the relocation, and printing companies for reprinting Tenant's stationary and business cards. A relocation of Tenant will not change or affect any other provision of this lease that is then in effect, including rent and reimbursement amounts, except that the description of the suite or unit number will automatically be amended.

☒ B. Landlord may not require Tenant to relocate to another location in the Property without Tenant's prior consent.

## 26. SUBORDINATION:

A. This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to:
   (1) any lien, encumbrance, or ground lease now or hereafter placed on the leased premises or the Property that Landlord authorizes;
   (2) all advances made under any such lien, encumbrance, or ground lease;
   (3) the interest payable on any such lien or encumbrance;
   (4) any and all renewals and extensions of any such lien, encumbrance, or ground lease;
   (5) any restrictive covenant affecting the leased premises or the Property; and
   (6) the rights of any owners' association affecting the leased premises or Property.

B. Tenant must, on demand, execute a subordination, attornment, and non-disturbance agreement that Landlord may request that Tenant execute, provided that such agreement is made on the condition that this lease and Tenant's rights under this lease are recognized by the lien-holder.

## 27. ESTOPPEL CERTIFICATES: Within 10 days after receipt of a written request from Landlord, Tenant will execute and deliver to Landlord an estoppel certificate that identifies the terms and conditions of this lease.

## 28. CASUALTY LOSS:

A. Tenant must immediately notify Landlord of any casualty loss in the leased premises. Within 20 days after receipt of Tenant's notice of a casualty loss, Landlord will notify Tenant if the leased premises are less than or more than 50% unusable, on a per square foot basis, and if Landlord can substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty loss.

B. If the leased premises are less than 50% unusable and Landlord can substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty, Landlord will restore the leased premises to substantially the same condition as before the casualty. If Landlord fails to substantially restore within the time required, Tenant may terminate this lease.

C. If the leased premises are more than 50% unusable and Landlord can substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty, Landlord may: (1) terminate this lease; or (2) restore the leased premises to substantially the same condition as before the casualty. If Landlord chooses to restore and does not substantially restore the leased premises within the time required, Tenant may terminate this lease.

D. If Landlord notifies Tenant that Landlord cannot substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty loss, Landlord may: (1) choose not to restore and terminate this lease; or (2) choose to restore, notify Tenant of the estimated time to restore, and give Tenant the option to terminate this lease by notifying Landlord within 10 days.

AR 000051

E. If this lease does not terminate because of a casualty loss, rent will be reduced from the date Tenant notifies Landlord of the casualty loss to the date the leased premises are substantially restored by an amount proportionate to the extent the leased premises are unusable.

29. **CONDEMNATION:** If after a condemnation or purchase in lieu of condemnation the leased premises are totally unusable for the purposes stated in this lease, this lease will terminate. If after a condemnation or purchase in lieu of condemnation the leased premises or Property are partially unusable for the purposes of this lease, this lease will continue and rent will be reduced in an amount proportionate to the extent the leased premises are unusable. Any condemnation award or proceeds in lieu of condemnation are the property of Landlord and Tenant has no claim to such proceeds or award. Tenant may seek compensation from the condemning authority for its moving expenses and damages to Tenant's personal property.

30. **ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, reasonable attorney's fees, and all other costs of litigation from the nonprevailing party.

31. **REPRESENTATIONS:**

   A. Tenant's statements in this lease and any application for rental are material representations relied upon by Landlord. Each party signing this lease represents that he or she is of legal age to enter into a binding contract and is authorized to sign the lease. If Tenant makes any misrepresentation in this lease or in any application for rental, Tenant is in default.

   B. Landlord is not aware of any material defect on the Property that would affect the health and safety of an ordinary person or any environmental hazard on or affecting the Property that would affect the health or safety of an ordinary person, except: _____
   _____
   _____
   _____

   C. Each party and each signatory to this lease represents that: (1) it is not a person named as a Specially Designated National and Blocked Person as defined in Presidential Executive Order 13224; (2) it is not acting, directly or indirectly, for or on behalf of a Specially Designated and Blocked Person; and (3) is not arranging or facilitating this lease or any transaction related to this lease for a Specially Designated and Blocked Person. Any party or any signatory to this lease who is a Specially Designated and Blocked person will indemnify and hold harmless any other person who relies on this representation and who suffers any claim, damage, loss, liability or expense as a result of this representation.

32. **BROKERS:**

   A. The brokers to this lease are:   NONE

   | Cooperating Broker | License No. | Principal Broker | License No. |
   |---|---|---|---|
   | Address | | Address | |
   | Phone | Fax | Phone | Fax |
   | E-mail | | E-mail | |

   Cooperating Broker represents Tenant.

   Principal Broker: *(Check only one box)*
   ☐ represents Landlord only.
   ☐ represents Tenant only.
   ☐ is an intermediary between Landlord and Tenant.

**AR 000052**

B. <u>Fees</u>:

❑ (1) Principal Broker's fee will be paid according to: *(Check only one box)*.
    ❑ (a) a separate written commission agreement between Principal Broker and:
        ❑ Landlord ❑ Tenant.
    ❑ (b) the attached Addendum for Broker's Fee.

❑ (2) Cooperating Broker's fee will be paid according to: *(Check only one box)*.
    ❑ (a) a separate written commission agreement between Cooperating Broker and:
        ❑ Principal Broker ❑ Landlord ❑ Tenant.
    ❑ (b) the attached Addendum for Broker's Fee.

33. **ADDENDA:** Incorporated into this lease are the addenda, exhibits and other information marked in the Addenda and Exhibit section of the Table of Contents. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at its discretion, amend from time to time.

34. **NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by facsimile transmission to:

<u>Tenant</u> at the leased premises,
and a copy to: _____
    Address: _____
    Phone: _____ Fax: _____
☒ Tenant also consents to receive notices by e-mail at: bgarner5@aol.com

<u>Landlord</u> at: Providian Holdings, Inc.
    Address: 2918 San Jacinto Street, Suite 100, Houston, Texas 77004
    Phone: 713 523-7847 Fax: _____
and a copy to: _____
    Address: _____
    Phone: _____ Fax: _____
☒ Landlord also consents to receive notices by e-mail at: khyati_undavia@sbcglobal.net

## 35. SPECIAL PROVISIONS:

A. Landlord shall not be obligated to install any facilities at the Property or in the premises, including any ADA (American With Disabilities) or related facilities required by federal, state and city laws, regulations or ordinances.

B. Tenant will turn off the lights in the premises and lock the doors to the building when premises are vacated each evening.

C. As a fixture as part of the premises, Tenant may place a sign on the exterior of the building at its sole cost and expense, the size and location of such sign to be approved by Landlord before being erected.

D. Landlord shall not lease any space in the building to a chiropractor nor lease any space in the building to any other medical profession in the pain management business. Dentists are not considered part of the medical profession.

AR 000053

## 36. AGREEMENT OF PARTIES:

A. <u>Entire Agreement</u>: This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. <u>Binding Effect</u>: This lease is binding upon and inures to the benefit of the parties and their respective heirs, executors, administrators, successors, and permitted assigns.

C. <u>Joint and Several</u>: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, or refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its renewal, or its termination is binding on all Tenants.

D. <u>Controlling Law</u>: The laws of the State of Texas govern the interpretation, performance, and enforcement of this lease.

E. <u>Severable Clauses</u>: If any clause in this lease is found invalid or unenforceable by a court of law, the remainder of this lease will not be affected and all other provisions of this lease will remain valid and enforceable.

F. <u>Waiver</u>: Landlord's delay, waiver, or non-enforcement of acceleration, contractual or statutory lien, rental due date, or any other right will not be deemed a waiver of any other or subsequent breach by Tenant or any other term in this lease.

G. <u>Quiet Enjoyment</u>: Provided that Tenant is not in default of this lease, Landlord covenants that Tenant will enjoy possession and use of the leased premises free from material interference.

H. <u>Force Majeure</u>: If Landlord's performance of a term in this lease is delayed by strike, lock-out, shortage of material, governmental restriction, riot, flood, or any cause outside Landlord's control, the time for Landlord's performance will be abated until after the delay.

I. <u>Time</u>: Time is of the essence. The parties require strict compliance with the times for performance.

**Brokers are not qualified to render legal advice, property inspections, surveys, engineering studies, environmental assessments, tax advice, or compliance inspections. The parties should seek experts to render such services. READ THIS LEASE CAREFULLY. If you do not understand the effect of this Lease, consult your attorney BEFORE signing.**

| NISAL CORPORATION | PROVIDIAN HOLDINGS, INC. |
|---|---|
| Tenant | Landlord |
| By _____ 2/26/09 Date | By _____ Date |
| Printed Name BRETT L. GARNER | Printed Name _____ 2/26/09 |
| Title CEO | Title _____ |
| | |
| Tenant | Landlord |
| By _____ Date | By _____ Date |
| Printed Name _____ | Printed Name _____ |
| Title _____ | Title _____ |

AR 000054



# Texas Association of Realtors
## COMMERCIAL LEASE EXHIBIT

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2004

**EXHIBIT** A

## TO COMMERCIAL LEASE BETWEEN THE UNDERSIGNED PARTIES CONCERNING THE LEASED PREMISES AT 2918 San Jacinto Street, Houston, Texas



NOT TO SCALE. DIMENSIONS AND SIZE SUBJECT TO MEASUREMENT. PARTITIONS MAY NOT EXIST AS SHOWN.

AR 000055



**ACCEPTANCE OF THE LEASED PREMISES AT** 2918 San Jacinto Street, Houston, Texas, Suite 200

**REGARDING THE COMMERCIAL LEASE BETWEEN THE UNDERSIGNED PARTIES.**

A.   The parties have inspected the leased premises. The parties acknowledge that any improvements, construction, repairs, or other items required by the lease have been substantially completed. The condition of the leased premises is acceptable to Tenant for the purposes of the lease.   On or before _____, ❑ Landlord ❑ Tenant   will complete the following (punch list):

B.   The parties ratify the lease and confirm the following:
   (1)   The term of the lease is for _____36_____ months and ___0___ days.
   (2)   The Commencement Date of the lease is March 1, 2009_____.
   (3)   The Expiration Date of the lease is ___February 29, 2012_____.

C.   Special Provisions:

   Tenant has inspected the premises and accepts the premises "AS IS".


NISAL CORPORATION                                        PROVIDIAN HOLDINGS, INC.

| Tenant | | Landlord | |
|---|---|---|---|
| By_____ 2/26/09 | | By_____ | |
| Date | | Date 2/26/09 | |

| Tenant | | Landlord | |
|---|---|---|---|
| By_____ | | By_____ | |
| Date | | Date | |

(TAR-2113) 5-26-06                                                        Page 1 of 1

**AR 000056**



**ADDENDUM TO THE COMMERCIAL LEASE BETWEEN THE UNDERSIGNED PARTIES CONCERNING THE LEASED PREMISES AT** <u>2918 San Jacinto Street, Houston, Texas Suite 200</u>

A. At Tenant's option, Tenant may extend the term of above-referenced lease for <u>1</u> additional term(s) of <u>36</u> months each. The first additional term commences upon the expiration of the term stated in the lease and any subsequent additional term commences upon the expiration of the then applicable extended term.

B. Tenant may exercise Tenant's option(s) to extend under Paragraph A only by providing written notice to Landlord at least <u>90</u> days before the end of the then current term of the lease.

C. Tenant may not exercise Tenant's option(s) to extend under Paragraph A if the lease is terminated before Tenant exercises its option to extend or Tenant is in breach of the lease at the time Tenant exercises its option to extend.

D. During the additional term(s), all provisions of the lease will continue as in effect immediately before the extension(s) commences except the base monthly rent during the additional term(s) will be:

☑ (1) $ <u>4,400.00</u> from <u>March 1, 2012</u> to <u>February 28, 2013</u> ;

$ <u>4,600.00</u> from <u>March 1, 2013</u> to <u>February 28, 2014</u> ;

$ <u>4,800.00</u> from <u>March 1, 2014</u> to <u>February 28, 2015</u> ;

$ _____ from _____ to _____ ;

$ _____ from _____ to _____ ;

☐ (2) adjusted to reflect increases in the Consumer Price Index for "All Urban Consumers, U.S. City Average, All Items", issued by the Bureau of Labor Statistics of the U.S. Department of Labor. The adjustment will be determined by multiplying the base monthly rent for the last month of the lease by the following fraction: (i) the numerator will be the published index number for January in the year the additional term commences; and (ii) the denominator will be the published index number for January in the year in which the original lease term commences. *(Notice: This paragraph is appropriate for use only when the rent in the lease remained constant through the term of the lease.)*

☐ (3) the prevailing rental rate on the 45th day before the additional term commences for premises of comparable size, quality, condition, improvements, utility, location, and length of term for tenant's of similar credit standing as Tenant.

E. If Paragraph D(3) applies and the parties do not agree on the amount of the prevailing rental rate for the additional term before the 30th day before the additional term commences, each party will employ a state-certified appraiser and deliver the appraiser's written opinion of the prevailing rental rate to the other party not later than the 15th day before the additional term commences. If the appraisers' opinions do not vary by more than 10%, the prevailing rental rate will be the average of the two opinions. If the appraisers' opinions vary by more than 10%, the appraisers will jointly select a third appraiser whose fees will be

(TAR-2104) 5-26-06      Initialed for Identification by Tenant: _____, _____, and Landlord _____, _____      Page 1 of 2

AR 000057

shared equally by the parties. If a third appraiser is engaged, the prevailing rental rate will be the average of the two opinions that are closest in amount. If either party fails to employ or timely deliver an appraiser's opinion as required by this paragraph, the opinion rendered by the appraiser employed by the other party will determine the prevailing rental rate.

F. Special Provisions:

| NISAL CORPORATION | PROVIDIAN HOLDINGS, INC. |
|---|---|
| Tenant | Landlord |
| By _____ 2/26/09 | By _____ |
| Date | Date 2/26/09 |
| Tenant | Landlord |
| By _____ | By _____ |
| Date | Date |

AR 000058



**ADDENDUM TO THE COMMERCIAL LEASE BETWEEN THE UNDERSIGNED PARTIES CONCERNING THE LEASED PREMISES AT** <u>2918 San Jacinto Street, Houston, Texas Suite 200</u>

A. "Additional space" means all or part of the following areas along with all its improvements:

☐ (1) the following floors in the Property: _____.

☒ (2) the following suites in the Property, presently identified, as: <u>the first floor vacant office space</u>
_____.

☐ (3) _____
_____.

    The parties agree that the rentable area of the additional space may not equal the actual or useable area within the additional space and may include an allocation of common areas in the Property.

B. If Landlord receives an acceptable written offer from another person to lease the additional space at a time when the above-referenced lease is in effect, Landlord will notify Tenant of the offer. Not later than 7 days after Tenant receives Landlord's notice of the offer, Tenant may notify Landlord that Tenant will lease the additional space identified in the offer under the same terms and conditions in the offer. If Tenant notifies Landlord that Tenant will lease the additional space identified in the offer, Tenant must execute a written lease for the additional space identified in the offer or amend the above-referenced lease, as Landlord may require, not later than _____10_____ days after Tenant receives Landlord's notice. If Tenant fails to timely comply with this paragraph, Landlord may lease the additional space identified in the offer to the person who made the offer. If Tenant does not exercise its right to lease the additional space identified in the offer and Landlord does not lease the additional space identified in the offer to the person who made the offer, Tenant ☐ does ☐ does not retain the right of refusal under this addendum for any subsequent offers Landlord receives for the additional space identified in the offer.

C. An offer for part of the additional space affects the parties' rights and obligations only to the part of the additional space identified in the offer. Rights and obligations to parts of the additional space not identified in the offer are not affected. An offer to renew a lease for the additional space from a tenant occupying the additional space is not an offer to lease the additional space for the purposes of this addendum.

D. <u>Special Provisions</u>:

    Vacant space occupied or used by Landlord is excluded from the provisions of this Addendum.

NISAL CORPORATION                  PROVIDIAN HOLDINGS, INC.

| Tenant | | Landlord | |
|---|---|---|---|
| By _____ | Date | By _____ | Date |

                                                             2/26/09

| Tenant | | Landlord | |
|---|---|---|---|
| By _____ | Date | By _____ | Date |

**AR 000059**



**ADDENDUM TO THE COMMERCIAL LEASE BETWEEN THE UNDERSIGNED PARTIES CONCERNING THE LEASED PREMISES AT** <u>2918 San Jacinto Street, Houston, Texas, Suite 200</u>

A. <u>Execution and License to Enter</u>:

☐ (1) This addendum is executed after the above-referenced lease commenced. Landlord authorizes Tenant to construct the improvements described in this addendum provided that Tenant complies with all of the terms of this addendum

☒ (2) This addendum is executed before the above-referenced lease commences. Effective <u>February 20, 2009</u>, Landlord grants Tenant a license to enter into the Property and the leased premises for the purposes of preparing the leased premises for occupancy and constructing the improvements described under this addendum and in accordance with this addendum. This license is made under all the terms and provisions in the lease, except as to the covenant to pay rent.

B. <u>Construction Costs</u>: Tenant will pay the full cost to construct the improvements that Tenant is to construct under this addendum, including but not limited to the cost of material, engineering studies, environmental studies, contractors, permits, plans, architects, inspectors, subcontractors, and materialmen. Not later than 10 days after the construction is complete and Tenant has satisfied all of Tenant's obligations under this addendum, Landlord will reimburse Tenant the cost of the improvements in an amount that does not exceed _____

_____

_____.

C. <u>Approval of Plans</u>:

(1) Not later than _____,Tenant will submit to Landlord plans and specifications detailing the improvements Tenant desires to complete to the leased premises. The plans must detail all architectural, mechanical, electrical, and plumbing requirements for the improvements and must describe the proposed improvements along with the materials to be used and the interior floor plan of the leased premises. The plans must be drawn by a professional architect in accordance with generally accepted architectural standards and must be sufficient for a contractor to use to construct the desired improvements.

(2) Within _____ days after Landlord receives the plans in accordance with Paragraph C(1), Landlord will notify Tenant whether the plans are "approved" or "disapproved" by marking such on the plans and delivering the plans back to Tenant. Landlord will not unreasonably withhold approval of the plans. If Landlord does not notify Tenant of a disapproval within the time specified, the plans will be deemed approved.

(3) If the plans are disapproved, Landlord will detail the reasons for the disapproval either on the plans or in a separate notice to Tenant. If the plans are disapproved, Tenant will, within _____ days after receipt of the disapproval notice from Landlord, submit amended plans to Landlord that incorporate revisions necessary to satisfy Landlord's reasons for the disapproval. Landlord will not unreasonably withhold

**AR 000060**

approval of any amended plans. If Tenant is unable or unwilling to satisfy Landlord's reasons for disapproval by _____, and:

    (a) if this addendum is executed after the lease commenced, then Tenant will not construct the improvements and this Addendum will have no further effect; or

    (b) if this addendum is executed before the lease commences the lease will terminate and Landlord will refund any security deposit and advanced rent paid by Tenant.

    (4) "Final plans" means the plans that Landlord approves under this Paragraph C.

D. Change Orders: Tenant must obtain Landlord's advanced written approval of any proposed changes to the final plans. Landlord will approve or disapprove any proposed change within _____ days after Landlord receives a copy of the proposed change order from Tenant. Landlord will not unreasonably withhold approval of any proposed change order. If Landlord does not notify Tenant of a disapproval of a proposed change order within the time specified, the proposed change order is deemed approved.

E. Contractor: Before construction begins Tenant will enter into a written construction contract with a contractor(s) acceptable to Landlord to construct the improvements in accordance with the final plans. Any subcontractors employed by Tenant or Tenant's contractors must be acceptable to Landlord. Landlord will not unreasonably withhold approval of contractors and subcontractors.

F. Construction:

    (1) Tenant will diligently complete the improvements in accordance with the final plans and will satisfy any requirements of any governmental authorities having jurisdiction over the improvements. The construction of the improvements must be performed in a good workmanlike manner and must comply with all applicable laws, ordinances, rules, and governmental orders and regulations. Construction of the improvements may not:

        (a) damage the Property except as specifically permitted by the final plans, including but not limited to damage to or interference with any structural component, system, or part of the Property;

        (b) interfere with the rights or operations of any other tenant in the Property or with Landlord's management of the Property; and

        (c) not obstruct any common area, walk, or drive except as Landlord permits.

    (2) Landlord and Landlord's designees may inspect the construction of the improvements from time to time. If Landlord notifies Tenant of any construction defect or non-compliance with the final plans, Tenant must promptly correct the defect or non-compliance.

G. Completion:

    (1) Tenant must substantially complete the construction of the improvements to the leased premises in accordance with this addendum on or before _____. Except as provided in this paragraph, the failure to complete construction of the improvements by the date specified does not relieve Tenant of Tenant's obligations to pay rent or satisfy other terms and conditions of the lease. The time by which Tenant must complete construction may be extended only if: (a) Landlord causes the delay; (b) Landlord delays in granting any applicable license under Paragraph A(2); or (c) a construction delay is caused by strike, lock-out, shortage of material, governmental restriction, riot, flood, or a cause outside Tenant's control. Any extension under this paragraph may be exercised by Tenant only if Tenant promptly notifies Landlord in writing of the extension after Tenant knows or has reason to know of any applicable delay which is cause for an extension. Any extension under this paragraph may not exceed the lesser of: the number of days of the delay caused by the specified cause for the delay or _____ days. If Paragraph A(2) applies and a delay authorized by this Paragraph applies, the Commencement Date and Expiration Date of the lease shall likewise be extended along with an appropriate adjustment in the rent due dates. If a delay is caused by Landlord and the delay exceeds the time for which an extension is permitted under this paragraph, Tenant may exercise its remedies under the default provision of the lease.

AR 000061

(2) Construction is complete when all the improvements are constructed in accordance with the final plans and Tenant provides Landlord with: (a) a final certificate executed by the supervising architect; and (b) if required by a governmental body, a certificate of occupancy permitting Tenant to occupy the leased premises for the purposes set forth in the lease.

(3) _____ is the supervising architect. The certificate of the supervising architect is conclusive in any dispute involving the construction performed or required to be performed under this addendum.

H. <u>No Liens</u>:

(1) Tenant guarantees that Tenant will pay all costs of any liability related to the construction of the improvements described in this addendum and further guarantees the lien-free completion of the improvements against the leased premises and Property. Tenant may not create or place any lien or encumbrance, of any kind, upon the leased premises or Property that encumbers Landlord's interest in the leased premises or Property.

(2) Before Landlord reimburses Tenant for the cost of the improvements, Tenant must deliver to Landlord a waiver of liens in recordable form acceptable to Landlord from each contractor, subcontractor, and materialman. The waivers must specify that: (a) the contractor, subcontractor, or materialman waive any and all claims against Landlord and waive any and all lien rights against Landlord's interest in the leased premises and Property; and (b) the contractor or subcontractor agree to hold Landlord harmless from any and all claims arising from or in connection with its work or materials.

(3) If any lien is filed or asserted against any portion of the leased premises or Property as a result of the acts of Tenant or Tenant's contractors, subcontractors, or materialmen, Tenant must remove any such lien or lien claim within 20 days after receipt of notice from Landlord.

(4) <u>Tenant will indemnify and keep Landlord harmless from all damages, costs, expenses, and attorney's fees that may arise from any lien or claim that may be filed or threatened as a result of the improvements to be constructed under this addendum</u>.

I. <u>Bonds</u>: Before commencement of any construction, Tenant and Tenant's contractors, at no cost to Landlord, must post the following bonds in favor of the Landlord in the amounts specified: _____
_____
_____
_____.

J. <u>Insurance</u>:

(1) Before any construction commences, Tenant must deliver to Landlord evidence that the insurance required by Paragraph 8A of the lease will be in effect not later than the day construction begins.

(2) Before any construction commences, Tenant must deliver to Landlord certificates of insurance, from insurers acceptable to Landlord, evidencing that any contractor maintains insurance to protect Landlord, Tenant, and the contractor from:

❑ (a) workman compensation claims and other employee benefit acts in an amount not less than $_____ per occurrence;

❑ (b) claims for damages from bodily injury or death to employees and others in an amount not less than $_____ per person and $_____ per occurrence; and

❑ (c) property damage in an amount not less than $_____ per occurrence.

AR 000062

(3) The insurance required by this Paragraph J must cover any and all claims that may arise out of or as a result of the operations of the contractor or the contractor's subcontracor(s).

(4) The coverage required by this Paragraph J must be maintained by Tenant or Tenant's contractors, at Tenant's or the contractors' sole expense, during all times of any construction period. If Tenant fails or if any of Tenant's contractors fail to maintain the required insurance in full force and effect at all required times, Landlord may:
(a) purchase such insurance on behalf of Tenant or the contractor(s) and Tenant must immediately reimburse Landlord for such expense; or
(b) exercise Landlord's remedies for Tenant's default under the lease.

K. Tenant's Assumption of Liability: Tenant must promptly pay and discharge all costs, expenses, claims for damages, liens, lien claims, and any other liabilities which may arise from or in connection with the construction of the improvements described in this addendum. Tenant agrees to hold Landlord harmless from all costs, expenses, damages, liens, lien claims, and any other liabilities, which may arise from or in connection with the construction of the improvements described in this addendum.

L. Special Provisions: (If applicable, include any business details, factual statements, or any requirements the parties must satisfy [for example, Landlord's obligation to complete shell construction by a certain date or by the time the license under Paragraph A(2) commences].)

| NISAL CORPORATION | PROVIDIAN HOLDINGS, INC. |
|---|---|
| Tenant | Landlord |
| By _____ 2/26/09 | By _____ 2/26/09 |
| Date | Date |
| Tenant | Landlord |
| By _____ | By _____ |
| Date | Date |

(TAR-2112) 5-26-06

Page 4 of 4

**AR 000063**



---

**ADDENDUM TO THE COMMERCIAL LEASE BETWEEN THE UNDERSIGNED PARTIES CONCERNING THE LEASED PREMISES AT** 2918 San Jacinto Street, Houston, Texas Suite 200

A. <u>Parking Type</u>:

☐ (1) <u>Common Parking</u>: Tenant and Tenant's employees may park no more than _____ vehicles on the Property in the common parking areas located on the Property.

☐ (2) <u>Restricted Common Parking for Tenants</u>: Tenant and Tenant's employees may park no more than _____ vehicles on the Property in the areas restricted for use by tenants of the Property.

☐ (3) <u>Assigned Parking</u>: Tenant's assigned parking areas are identified as follows:

☐ (a) _____
_____
_____
_____
_____
_____

☐ (b) as shown on the attached Exhibit _____.

B. In addition to any other rent, Tenant will pay, on or before the first day of each month during the term of the above-referenced lease, $ NONE _____ as rent for the parking areas.

C. Tenant may not assign, sublet, or trade any parking space or parking area.

D. Tenant may not use any parking spaces or areas on the Property to store any vehicle, boats, trailers, or any other personal property.

E. Tenant's guests, patrons, or invitees may park only in those areas designated by Landlord for Tenant's guests, patrons, or invitees.

F. Landlord may, but is not obligated to, institute controlled-access systems to the parking areas, including but not limited to systems such as vehicle identification stickers, license numbers, or controlled-access devices. At the time the lease ends, Tenant must return all access devices to Landlord and pay the amounts in (2) and (3) below if Tenant fails to return an access device. If Landlord issues controlled-access devices to Tenant, Tenant will:
(1) promptly report any lost device to Landlord;
(2) reimburse Landlord its cost to replace the lost access device; and
(3) pay Landlord a service fee of $_____ for each lost access device.

**AR 000064**

G. If Tenant fails to timely pay the rent stated in Paragraph B, Landlord may: (i) exercise Landlord's remedies under the default provisions of the lease; or (ii) terminate Tenant's access to the restricted or assigned parking areas by providing Tenant with not less than 5 days written notice of Landlord's intent to terminate Tenant's access. If Landlord terminates Tenant's access to the parking areas under this paragraph, the parking areas will be deemed to be released by Tenant for all purposes and Landlord may assign or lease the parking areas to others.

H. Special Provisions:

1. Parking is currently on a first-come first-serve basis.

2. Employees of Landlord and Tenant are requested to park in the employee parking lot across Anita Street from the building.

3. Landlord reserves the right to establish parking rules to accommodate Landlord and Tenant and their customers and guests if the current first-come first-serve method is not working as deemed by Landlord.

| NISAL CORPORATION | PROVIDIAN HOLDINGS, INC. |
|---|---|
| Tenant | Landlord |
| By _____ 2/26/0_ | By _____ |
| Date | Date |
| | 2/26/0_ |
| Tenant | Landlord |
| By _____ | By _____ |
| Date | Date |

AR 000065



## TEXAS ASSOCIATION OF REALTORS
## COMMERCIAL LANDLORD'S RULES AND REGULATIONS

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2006

---

**REGARDING THE COMMERCIAL LEASE CONCERNING THE LEASED PREMISES AT** _____

_2918 San Jacinto Street, Houston, Texas, Suite 200_

**NOTICE:** These rules and regulations are adopted to maintain and enhance the safety and appearance of the Property. From time to time Landlord, at its discretion, may amend these rules and regulations for the purposes for which they were adopted. Under the above-referenced lease, Tenant agrees to comply with these rules and regulations as they may be amended. Exceptions or waivers must be authorized by Landlord in writing. "Property" means the building or complex in which the leased premises are located, inclusive of any common areas, drives, parking areas, and walks.

A. Goods, merchandise, equipment, or any personal property may not be stored on the Property, except for inventory within the leased premises necessary for Tenant's normal business operations.

B. Food is not permitted on the Property, except as inventory for sale and for a small amount of food for Tenant's personal consumption.

C. Other than those provided by Landlord or specifically authorized by Landlord, no vending machines are permitted on the Property.

D. The Property may not be used for lodging or sleeping quarters in any manner.

E. Unless authorized by law or the lease, no animals may be brought or kept on the Property.

F. No obstruction or interference that impedes use of the common areas, walks, drives, loading areas, parking areas, corridors, hallways, vestibules, and stairs is permitted on the Property.

G. Persons parking on the Property must comply with all posted signs and directions regulating the parking areas.

H. No flammable, toxic, noxious, or hazardous materials may be kept on the Property except for over-the-counter cleaning materials kept in enclosed storage closets or cabinets.

I. Tenants moving in or out of the Property must use only the service entrances and service elevators during the move. All moves must be made at times that do not cause inconvenience in the normal use of the Property.

J. Deliveries and shipping of goods and merchandise in or out of the Property must be made only through the service entrances, service elevators, loading docks, or other designated shipping and receiving areas. Shipments and deliveries must be made at times that do not cause inconvenience to tenants or patrons on the Property.

K. Leased premises must be kept clean and free of debris. Trash must be deposited into appropriate receptacles.

(TAR-2108) 5-26-06     Initialed for Identification by Tenant: _____, and Landlord: _____     Page 1 of 2

**AR 000066**

L.  Repair requests must be submitted to Landlord in writing in compliance with the lease.

M.  No modification to the Property and leased premises may be made unless authorized by Landlord, in writing, or permitted by the lease.

N.  No illegal or offensive activity is permitted on the Property nor is any activity that constitutes a nuisance or interferes with the rights of other tenants.

O.  Unless specifically authorized by Landlord, no solicitation or business operations are permitted in the common areas.

P.  Other:

**AR 000067**



**GUARANTY TO COMMERCIAL LEASE CONCERNING THE LEASED PREMISES AT** _____

2918 San Jacinto Street, Houston, Texas, Suite 200 _____ **between**

Providian Holdings, Inc. _____ **(Landlord) and**

_____ **(Tenant).**

A.  In consideration for Landlord leasing the leased premises to Tenant, the undersigned Guarantors guarantee Tenant's performance under the above-referenced lease.

B.  If Tenant fails to timely make any payment under the lease, Guarantors will promptly make such payment to Landlord at the place of payment specified in the lease. Guarantor is also responsible for any property damage to the leased premises or Property (as defined in the lease) for which Tenant is responsible under the lease. If Tenant breaches the lease, Guarantor will: (i) cure the breach as may be required of Tenant by the lease; or (ii) compensate Landlord for Landlord's loss resulting from the breach.

C.  Guarantors guarantee Tenant's obligations under the lease regardless of any modification, amendment, renewal, extension, or breach of the lease. Guarantors waive any rights to notices of acceptance, modification, amendment, extension, or breach of the lease. All Guarantors are jointly and severally liable for all provisions of this guaranty. Filing for bankruptcy by Tenant will not diminish Guarantors obligations under this guaranty.

D.  The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this guaranty. Any person who is a prevailing party in any legal proceeding brought under or related to this guaranty is entitled to recover attorney's fees from the nonprevailing party.

E.  Guarantors authorize Landlord to obtain a copy of any consumer or credit report of Guarantors from any consumer reporting agency and to verify relevant information related to Guarantors' creditworthiness from other persons such as banks, creditors, employers, existing and previous landlords, and other persons.

F.  Special Provisions:


_____  2/26/09
Guarantor's Signature          Date

Brett L. Garner
Guarantor's Name Printed

_____
Guarantor's Signature          Date

~~Barron H. Cheek~~
Guarantor's Name Printed


_____
Guarantor's Address

_____
Guarantor's Address

_____  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
Phone            SS # or Tax ID #

_____
Phone            SS # or Tax ID #

(TAR-2109) 5-26-06

Page 1 of 1

**AR 000068**

# RIGHT OF FIRST REFUSAL TO PURCHASE ADDENDUM

A.  Provided that both at the date of exercising the right of first refusal to purchase set out below and at the date of closing of the agreement of purchase and sale constituted by the exercise of such right, Tenant has duly and punctually performed each and every of its obligations under the Lease and has not made an assignment for the benefit of creditors and has not taken the benefit of any statute in force for bankrupt or insolvent debtors and if a receiving order has not been made against the Tenant, and if no receiver or other similar person has taken control of the assets or business of the Tenant or a substantial portion thereof, and if the Tenant has not assigned the lease or sublet or parted or shared possession of all or any substantial part of the premises, Tenant shall have a right of first refusal to purchase the Building including the premises in accordance with the following procedure. If at any time during the term or extended term of the lease Landlord receives a bona fide arm's length offer to purchase the Building (whether alone or together with the parking lot tract; but not the parking lot tract alone), which Landlord is willing to accept ("Third Party Offer") then Landlord shall give Tenant written notice ("Landlord's Notice") of receipt of such Third Party Offer accompanied by a true copy of same. Tenant shall thereupon have the right either:

1.  to elect to purchase the Building (together with the parking lot tract if included in the Third Party Offer in addition to the Building) for the purchase price, with the deposit and upon all of the exact other terms and conditions contained in the Third Party Offer. Such right must be exercised by Tenant within ten (10) days after receipt from Landlord of Landlord's Notice and copy of the Third Party Offer, by delivery to Landlord of written notice (the "First Right Acceptance Notice") electing to purchase the Building on the same such terms and conditions, together with a deposit in the amount set out in the Third Party Offer. If Tenant so elects to purchase the premises, such election shall constitute a binding agreement of purchase and sale between Landlord as vendor and Tenant as purchaser automatically substituting Tenant in place of the Third Party Offeror and the transaction of purchase and sale shall be completed in accordance with the said terms and conditions; or

2.  to elect not to purchase the Building by not responding within ten (10) days of receipt of Landlord's Notice, in which event Tenant's rights to purchase expire and Landlord may proceed without Tenant under the Third Party Offer.

B.  Provided however, that this right of first refusal to purchase shall not apply to any sale of the Building and parking lot tract by Landlord to any person, corporation or legal entity which is affiliated with, controlled by, or otherwise not at arm's length with, Landlord, Khyati Undavia, her husband, children,

**AR 000069**

father, mother, former spouse or any other family member, provided that any such purchaser shall be bound by the provisions of this right of first refusal in respect of any subsequent Third Party Offer received by it; and provided further, that this right of first refusal shall not apply to any deed in lieu of foreclosure or any foreclosure proceedings or trustees' deeds or other action by any creditor of Landlord; and provided further that, this right of first refusal shall not apply in the event that the owner of the Building or parking lot tract is acting pursuant to a court order or judgment. This right of first refusal to purchase shall not apply to the parking lot tract alone.

C.    If Tenant fails to exercise the aforesaid first right of refusal within the time and in the manner as set out above then Landlord shall be entitled to accept the Third Party Offer and complete the sale of the premises pursuant thereto, provided that if such sale is not completed, Tenant's first right of refusal shall continue to apply in respect of any subsequent Third Party Offer in accordance with the preceding provisions of this right of first refusal.

D.    The right of first refusal is a right of Tenant only during the time of the lease while not in default, bankruptcy or receivership and is not severable from the lease and it is not assignable.

NISAL CORPORATION                         PROVIDIAN HOLDING, INC.

By: _____            By: _____

AR 000070



# TEXAS ASSOCIATION OF REALTORS
## COMMERCIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2006

## Table of Contents

| No. | Paragraph Description | Pg. |
|-----|----------------------|-----|
| 1. | Parties | 2 |
| 2. | Leased Premises | 2 |
| 3. | Term | 2 |
| | A. Term | |
| | B. Delay of Occupancy | |
| 4. | Rent and Expenses | 3 |
| | A. Base Monthly Rent | |
| | B. First Full Month's Rent | |
| | C. Prorated Rent | |
| | D. Additional Rent | |
| | E. Place of Payment | |
| | F. Method of Payment | |
| | G. Late Charges | |
| | H. Returned Checks | |
| 5. | Security Deposit | 4 |
| 6. | Taxes | 4 |
| 7. | Utilities | 4 |
| 8. | Insurance | 5 |
| 9. | Use and Hours | 5 |
| 10. | Legal Compliance | 6 |
| 11. | Signs | 6 |
| 12. | Access By Landlord | 7 |
| 13. | Move-In Condition | 7 |
| 14. | Move-Out Condition | 7 |
| 15. | Maintenance and Repairs | 7 |
| | A. Cleaning | |
| | B. Conditions Caused by a Party | |
| | C. Repair & Maintenance Responsibility | |
| | D. Repair Persons | |
| | E. HVAC Service Contract | |
| | F. Common Areas | |
| | G. Notice of Repairs | |
| | H. Failure to Repair | |
| 16. | Alterations | 9 |
| 17. | Liens | 9 |
| 18. | Liability | 9 |
| 19. | Indemnity | 9 |
| 20. | Default | 9 |
| 21. | Abandonment, Interruption of Utilities, Removal of Property & Lockout | 10 |

| No. | Paragraph Description | Pg. |
|-----|----------------------|-----|
| 22. | Holdover | 10 |
| 23. | Landlord's Lien & Security Interest | 10 |
| 24. | Assignment and Subletting | 10 |
| 25. | Relocation | 11 |
| 26. | Subordination | 11 |
| 27. | Estoppel Certificates | 11 |
| 28. | Casualty Loss | 11 |
| 29. | Condemnation | 12 |
| 30. | Attorney's Fees | 12 |
| 31. | Representations | 12 |
| 32. | Brokers | 12 |
| 33. | Addenda | 13 |
| 34. | Notices | 13 |
| 35. | Special Provisions | 13 |
| 36. | Agreement of the Parties | 14 |

### ADDENDA & EXHIBITS (check all that apply)

☐ Exhibit _____
☐ Exhibit _____
☐ Commercial Lease Addendum for Broker's Fee
☐ Commercial Lease Expense Reimbursement Addendum
☐ Commercial Lease Addendum for Extension Option
☐ Commercial Lease Addendum for Percentage Rent
☐ Commercial Lease Parking Addendum
☐ Commercial Landlord's Rules and Regulations
☐ Commercial Lease Guaranty
☐ Commercial Lease Right of First Refusal Addendum
☐ Commercial Lease Addendum for Optional Space
☐ Commercial Leasehold Construction Addendum
☐ _____
☐ _____

**AR 000071**

**EXHIBIT B**


1. **PARTIES:** The parties to this lease are:

Tenant: Sterling Practice Management LLC

_____ ; and

Landlord: Providian Holdings, Inc.

2. **LEASED PREMISES:**

A. Landlord leases to Tenant the following described real property, known as the "leased premises," along with all its improvements *(Check only one box)*:

☒ (1) <u>Multiple-Tenant Property</u>: Suite or Unit Number _____ containing approximately _____ square feet of rentable area in _Memorial Compounding Pharmacy Building_ *(project name)* at _2918 San Jacinto Street_ *(address)* in _Houston_ _77024_ *(city),* _Harris_ *(county),* Texas, which is legally described on attached Exhibit _A_ or as follows: The premises are being leased "AS IS". Tenant has inspected the premises and accepts the premises "AS IS".

☐ (2) <u>Single-Tenant Property</u>: The real property at: _____ _____ *(address)* in _____ *(city),* _____ *(county),* Texas, which is legally described on attached Exhibit _____ or as follows: _____

B. If Paragraph 2A(1) applies:
   (1) "Property" means the building or complex in which the leased premises are located, inclusive of any common areas, drives, parking areas, and walks; and
   (2) the parties agree that the rentable area of the leased premises may not equal the actual or useable area within the leased premises and may include an allocation of common areas in the Property.

3. **TERM:**

A. <u>Term</u>: The term of this lease is _____7_____ months and __0__ days, commencing on:

June 1, 2009 _____ (Commencement Date) and ending on

January 31, 2010 _____ (Expiration Date).

**AR 000072**

B. <u>Delay of Occupancy</u>: If Tenant is unable to occupy the leased premises on the Commencement Date because of construction on the leased premises to be completed by Landlord that is not substantially complete or a prior tenant's holding over of the leased premises, Landlord will not be liable to Tenant for such delay and this lease will remain enforceable. In the event of such a delay, the Commencement Date will automatically be extended to the date Tenant is able to occupy the Property and the Expiration Date will also be extended by a like number of days, so that the length of this lease remains unchanged. If Tenant is unable to occupy the leased premises after the 90th day after the Commencement Date because of construction on the leased premises to be completed by Landlord that is not substantially complete or a prior tenant's holding over of the leased premises, Tenant may terminate this lease by giving written notice to Landlord before the leased premises become available to be occupied by Tenant and Landlord will refund to Tenant any amounts paid to Landlord by Tenant. This Paragraph 3B does not apply to any delay in occupancy caused by cleaning or repairs.

C. Unless the parties agree otherwise, Tenant is responsible for obtaining a certificate of occupancy for the leased premises if required by a governmental body.

## 4. RENT AND EXPENSES:

A. <u>Base Monthly Rent</u>: On or before the first day of each month during this lease, Tenant will pay Landlord base monthly rent as described on attached Exhibit _____ or as follows:

| | | | | |
|---|---|---|---|---|
| from | June 1, 2009 | to | June 30, 2009 : | $0.00 ; |
| from | July 1, 2009 | to | January 31, 2010 : | $2,000.00/month ; |
| from | | to | : | $ ; |
| from | | to | : | $ ; |
| from | | to | : | $ . |

B. <u>First Full Month's Rent</u>: The first full base monthly rent is due on or before July 1, 2009

C. <u>Prorated Rent</u>: If the Commencement Date is on a day other than the first day of a month, Tenant will pay Landlord as prorated rent, an amount equal to the base monthly rent multiplied by the following fraction: the number of days from the Commencement Date to the first day of the following month divided by the number of days in the month in which this lease commences. The prorated rent is due on or before the Commencement Date.

D. <u>Additional Rent</u>: In addition to the base monthly rent and prorated rent, Tenant will pay Landlord all other amounts, as provided by the attached *(Check all that apply.)*:
   ❑ (1) Commercial Expense Reimbursement Addendum
   ❑ (2) Commercial Percentage Rent Addendum
   ❑ (3) Commercial Parking Addendum
   ❑ (4) _____
   All amounts payable under the applicable addenda are deemed to be "rent" for the purposes of this lease.

E. <u>Place of Payment</u>: Tenant will remit all amounts due Landlord under this lease to the following person at the place stated or to such other person or place as Landlord may later designate in writing:

   Name: Providian Holdings, Inc.
   Address: 2918 San Jacinto Street, Suite 100
   Houston, Texas 77004

F. <u>Method of Payment</u>: Tenant must pay all rent timely without demand, deduction, or offset, except as permitted by law or this lease. If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is returned to Landlord by the institution on which it was drawn, Landlord after

AR 000073

providing written notice to Tenant may require Tenant to pay subsequent amounts that become due under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

G. Late Charges: If Landlord does not actually receive a rent payment at the designated place of payment within 5 days after the date it is due, Tenant will pay Landlord a late charge equal to 5% of the amount due. In this paragraph, the mailbox is not the agent for receipt for Landlord. The late charge is a cost associated with the collection of rent and Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 20.

H. Returned Checks: Tenant will pay $ 25.00 (not to exceed $25) for each check Tenant tenders to Landlord which is returned by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment.

5. SECURITY DEPOSIT:

A. Upon execution of this lease, Tenant will pay $_____ to Landlord as a security deposit.

B. Landlord may apply the security deposit to any amounts owed by Tenant under this lease. If Landlord applies any part of the security deposit during any time this lease is in effect to amounts owed by Tenant, Tenant must, within 10 days after receipt of notice from Landlord, restore the security deposit to the amount stated.

C. Within 60 days after Tenant surrenders the leased premises and provides Landlord written notice of Tenant's forwarding address, Landlord will refund the security deposit less any amounts applied toward amounts owed by Tenant or other charges authorized by this lease.

6. TAXES: Unless otherwise agreed by the parties, Landlord will pay all real property ad valorem taxes assessed against the leased premises.

7. UTILITIES:

A. The party designated below will pay for the following utility charges to the leased premises and any connection charges for the utilities. (Check all that apply.)

| | N/A | Landlord | Tenant |
|---|---|---|---|
| (1) Water | ☐ | ☒ | ☐ |
| (2) Sewer | ☐ | ☒ | ☐ |
| (3) Electric | ☐ | ☒ | ☐ |
| (4) Gas   For HVAC only | ☐ | ☒ | ☐ |
| (5) Telephone | ☐ | ☐ | ☒ |
| (6) Trash, Cleaning (including common area if desired) | ☐ | ☐ | ☒ |
| (7) Cable | ☐ | ☐ | ☒ |
| (8) _____ | ☐ | ☐ | ☐ |
| (9) All other utilities | ☐ | ☐ | ☒ |

B. The party responsible for the charges under Paragraph 7A will pay the charges directly to the utility service provider. The responsible party may select the utility service provider, except that if Tenant selects the provider, any access or alterations to the Property or leased premises necessary for the utilities may be made only with Landlord's prior consent, which Landlord will not unreasonably withhold. If Landlord incurs any liability for utility or connection charges for which Tenant is responsible to pay and Landlord pays such amount, Tenant will immediately upon written notice from Landlord reimburse Landlord such amount.

AR 000074

C. **Notice: Tenant should determine if all necessary utilities are available to the leased premises and are adequate for Tenant's intended use.**

D. <u>After-Hours HVAC Charges</u>: "HVAC services" mean heating, ventilating, and air conditioning of the leased premises. *(Check one box only.)*

☒ (1) Landlord is obligated to provide the HVAC services to the leased premises only during the Property's operating hours specified under Paragraph 9C.

☒ (2) Landlord will provide the HVAC services to the leased premises during the operating hours specified under Paragraph 9C for no additional charge and will, at Tenant's request, provide HVAC services to the leased premises during other hours for an additional charge of $ 20.00 per hour. Tenant will pay Landlord the charges under this paragraph immediately upon receipt of Landlord's invoice. Hourly charges are charged on a half-hour basis. Any partial hour will be rounded up to the next half hour. Tenant will comply with Landlord's procedures to make a request to provide the additional HVAC services under this paragraph.

☐ (3) Tenant will pay for the HVAC services under this lease.

8. **INSURANCE:**

A. During all times this lease is in effect, Tenant must, at Tenant's expense, maintain in full force and effect from an insurer authorized to operate in Texas:          $2,000,000.00
   (1) public liability insurance in an amount not less than $1,000,000.00 on an occurrence basis naming Landlord as an additional insured; and
   (2) personal property damage insurance for Tenant's business operations and contents on the leased premises in an amount sufficient to replace such contents after a casualty loss.

B. Before the Commencement Date, Tenant must provide Landlord with a copy of insurance certificates evidencing the required coverage. If the insurance coverage is renewed or changes in any manner or degree at any time this lease is in effect, Tenant must, not later than 10 days after the renewal or change, provide Landlord a copy of an insurance certificate evidencing the renewal or change.

C. If Tenant fails to maintain the required insurance in full force and effect at all times this lease is in effect, Landlord may:
   (1) purchase insurance that will provide Landlord the same coverage as the required insurance and Tenant must immediately reimburse Landlord for such expense; or
   (2) exercise Landlord's remedies under Paragraph 20.

D. Unless the parties agree otherwise, Landlord will maintain in full force and effect insurance for: (1) fire and extended coverage in an amount to cover the reasonable replacement cost of the improvements of the Property; and (2) any public liability insurance in an amount that Landlord determines reasonable and appropriate.

E. If there is an increase in Landlord's insurance premiums for the leased premises or Property or its contents that is caused by Tenant, Tenant's use of the leased premises, or any improvements made by or for Tenant, Tenant will, for each year this lease is in effect, pay Landlord the increase immediately after Landlord notifies Tenant of the increase. Any charge to Tenant under this Paragraph 8E will be equal to the actual amount of the increase in Landlord's insurance premium.

9. **USE AND HOURS:**

A. Tenant may use the leased premises for the following purpose and no other: general office use
_____
_____
_____

**AR 000075**

B. Unless otherwise specified in this lease, Tenant will operate and conduct its business in the leased premises during business hours that are typical of the industry in which Tenant represents it operates.

C. The Property maintains operating hours of *(specify hours, days of week, and if inclusive or exclusive of weekends and holidays):* 8:30am – 7:00pm, Monday thru Friday  exclusive of holidays which includes Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day and New Year's Day.  Also Saturday 8:30am–2:00pm except holidays.

## 10. LEGAL COMPLIANCE:

A. Tenant may not use or permit any part of the leased premises or the Property to be used for:
   (1) any activity which is a nuisance or is offensive, noisy, or dangerous;
   (2) any activity that interferes with any other tenant's normal business operations or Landlord's management of the Property;
   (3) any activity that violates any applicable law, regulation, zoning ordinance, restrictive covenant, governmental order, owners' association rules, tenants' association rules, Landlord's rules or regulations, or this lease;
   (4) any hazardous activity that would require any insurance premium on the Property or leased premises to increase or that would void any such insurance;
   (5) any activity that violates any applicable federal, state, or local law, including but not limited to those laws related to air quality, water quality, hazardous materials, wastewater, waste disposal, air emissions, or other environmental matters;
   (6) the permanent or temporary storage of any hazardous material; or
   (7) _____
   _____
   _____
   _____

B. "Hazardous material" means any pollutant, toxic substance, hazardous waste, hazardous material, hazardous substance, solvent, or oil as defined by any federal, state, or local environmental law, regulation, ordinance, or rule existing as of the date of this lease or later enacted.

C. Landlord does not represent or warrant that the leased premises or Property conform to applicable restrictions, zoning ordinances, setback lines, parking requirements, impervious ground cover ratio requirements, and other matters that may relate to Tenant's intended use. Tenant must satisfy itself that the leased premises may be used as Tenant intends by independently investigating all matters related to the use of the leased premises or Property. Tenant agrees that it is not relying on any warranty or representation made by Landlord, Landlord's agent, or any broker concerning the use of the leased premises or Property.

## 11. SIGNS:

A. Tenant may not post or paint any signs at, on, or about the leased premises or Property without Landlord's written consent. Landlord may remove any unauthorized sign, and Tenant will promptly reimburse Landlord for its cost to remove any unauthorized sign.

B. Any authorized sign must comply with all laws, restrictions, zoning ordinances, and any governmental order relating to signs on the leased premises or Property. Landlord may temporarily remove any authorized sign to complete repairs or alterations to the leased premises or the Property.

C. By providing written notice to Tenant before this lease ends, Landlord may require Tenant, upon move-out and at Tenant's expense, to remove, without damage to the Property or leased premises, any or all signs that were placed on the Property or leased premises by or at the request of Tenant. Any signs that Landlord does not require Tenant to remove and that are fixtures, become the property of the Landlord and must be surrendered to Landlord at the time this lease ends.

AR 000076

## 12. ACCESS BY LANDLORD:

A. During Tenant's normal business hours Landlord may enter the leased premises for any reasonable purpose, including but not limited to purposes for repairs, maintenance, alterations, and showing the leased premises to prospective tenants or purchasers. Landlord may access the leased premises after Tenant's normal business hours if: (1) entry is made with Tenant's permission; or (2) entry is necessary to complete emergency repairs. Landlord will not unreasonably interfere with Tenant's business operations when accessing the leased premises.

B. During the last __90__ days of this lease, Landlord may place a "For Lease" or similarly worded sign in the leased premises.

## 13. MOVE-IN CONDITION:
Tenant has inspected the leased premises and accepts it in its present (as-is) condition unless expressly noted otherwise in this lease. Landlord and any agent have made no express or implied warranties as to the condition or permitted use of the leased premises or Property.

## 14. MOVE-OUT CONDITION AND FORFEITURE OF TENANT'S PERSONAL PROPERTY:

A. At the time this lease ends, Tenant will surrender the leased premises in the same condition as when received, except for normal wear and tear. Tenant will leave the leased premises in a clean condition free of all trash, debris, personal property, hazardous materials, and environmental contaminants.

B. If Tenant leaves any personal property in the leased premises after Tenant surrenders possession of the leased premises, Landlord may: (1) require Tenant, at Tenant's expense, to remove the personal property by providing written notice to Tenant; or (2) retain such personal property as forfeited property to Landlord.

C. "Surrender" means vacating the leased premises and returning all keys and access devices to Landlord. "Normal wear and tear" means deterioration that occurs without negligence, carelessness, accident, or abuse.

D. By providing written notice to Tenant before this lease ends, Landlord may require Tenant, upon move-out and at Tenant's expense, to remove, without damage to the Property or leased premises, any or all fixtures that were placed on the Property or leased premises by or at the request of Tenant. Any fixtures that Landlord does not require Tenant to remove become the property of the Landlord and must be surrendered to Landlord at the time this lease ends.

## 15. MAINTENANCE AND REPAIRS:

A. Cleaning: Tenant must keep the leased premises clean and sanitary and promptly dispose of all garbage in appropriate receptacles. ☐ Landlord ☐ Tenant will provide, at its expense, janitorial services to the leased premises that are customary and ordinary for the property type. Tenant will maintain any grease trap on the Property which Tenant uses, including but not limited to periodic emptying and cleaning, as well as making any modification to the grease trap that may be necessary to comply with any applicable law. Tenant shall be responsible for all cleaning and janitorial work in the premises. Landlord is not responsible for any cleaning of any part of the building or property.

B. Repairs of Conditions Caused by a Party: Each party must promptly repair a condition in need of repair that is caused, either intentionally or negligently, by that party or that party's guests, patrons, invitees, contractors or permitted subtenants.

C. Repair and Maintenance Responsibility: Except as otherwise provided by this Paragraph 15, the party designated below, at its expense, is responsible to maintain and repair the following specified items in the leased premises (if any). The specified items must be maintained in clean and good operable condition. If a governmental regulation or order requires a modification to any of the specified items, the party designated to maintain the item must complete and pay the expense of the modification. The

AR 000077

specified items include and relate only to real property in the leased premises. Tenant is responsible for the repair and maintenance of its personal property. *(Check all that apply.)*

| | | N/A | Landlord | Tenant |
|---|---|:---:|:---:|:---:|
| (1) | Foundation, exterior walls, roof, and other structural components | ☐ | ☒ | ☐ |
| (2) | Glass and windows | ☐ | ☐ | ☒ |
| (3) | Fire protection equipment and fire sprinkler systems | ☒ | ☐ | ☐ |
| (4) | Exterior & overhead doors, including closure devices, molding, locks, and hardware | ☒ | ☐ | ☐ |
| (5) | Grounds maintenance, including landscaping and irrigation systems | ☒ | ☐ | ☐ |
| (6) | Interior doors, including closure devices, frames, molding, locks, and hardware | ☐ | ☐ | ☒ |
| (7) | Parking areas and walks | ☒ | ☐ | ☐ |
| (8) | Plumbing systems, drainage systems, electrical systems, and mechanical systems, except systems or items specifically designated otherwise | ☒ | ☐ | ☐ |
| (9) | Ballast and lamp replacement | ☐ | ☐ | ☒ |
| (10) | Heating, Ventilation and Air Conditioning (HVAC) systems | ☐ | ☒ | ☐ |
| (11) | Signs and lighting: | | | |
| | (a) Pylon | ☒ | ☐ | ☐ |
| | (b) Facia | ☒ | ☐ | ☐ |
| | (c) Monument | ☒ | ☐ | ☐ |
| | (d) Door/Suite | ☒ | ☐ | ☐ |
| (12) | Extermination and pest control, excluding wood-destroying insects | ☒ | ☐ | ☐ |
| (13) | Fences and Gates | ☒ | ☐ | ☐ |
| (14) | Storage yards and storage buildings | ☒ | ☐ | ☐ |
| (15) | Wood-destroying insect treatment and repairs | ☒ | ☐ | ☐ |
| (16) | Cranes and related systems | ☒ | ☐ | ☐ |
| (17) | _____ | ☐ | ☐ | ☐ |
| (18) | _____ | ☐ | ☐ | ☐ |
| (19) | All other items and systems | | ☐ | ☐ |

D. Repair Persons: Repairs must be completed by trained, qualified, and insured repair persons.

E. ~~HVAC Service Contract:~~ ~~If Tenant maintains the HVAC system under Paragraph 15C(10), Tenant~~ ☐ is ☐ is not required to maintain, at its expense, a regularly scheduled maintenance and service contract for the HVAC system. The maintenance and service contract must be purchased from a HVAC maintenance company that regularly provides such contracts to similar properties. If Tenant fails to maintain a required HVAC maintenance and service contract in effect at all times during this lease, Landlord may do so and charge Tenant the expense of such a maintenance and service contract or ~~exercise Landlord's remedies under Paragraph 20.~~

F. Common Areas: Landlord will maintain any common areas in the Property in a manner as Landlord determines to be in the best interest of the Property. Landlord will maintain any elevator and signs in the common area. Landlord may change the size, dimension, and location of any common areas, provided that such change does not materially impair Tenant's use and access to the leased premises. Tenant has the non-exclusive license to use the common areas in compliance with Landlord's rules and restrictions. Tenant may not solicit any business in the common areas or interfere with any other person's right to use the common areas. This paragraph does not apply if Paragraph 2A(2) applies.

AR 000078

G. <u>Notice of Repairs</u>: Tenant must promptly notify Landlord of any item that is in need of repair and that is Landlord's responsibility to repair. All requests for repairs to Landlord must be in writing.

H. <u>Failure to Repair</u>: Landlord must make a repair for which Landlord is responsible within a reasonable period of time after Tenant provides Landlord written notice of the needed repair. If Tenant fails to repair or maintain an item for which Tenant is responsible within 10 days after Landlord provides Tenant written notice of the needed repair or maintenance, Landlord may: (1) repair or maintain the item, without liability for any damage or loss to Tenant, and Tenant must immediately reimburse Landlord for the cost to repair or maintain; or (2) exercise Landlord's remedies under Paragraph 20.

## 16. ALTERATIONS:

A. Tenant may not alter, improve, or add to the Property or the leased premises without Landlord's written consent. Landlord will not unreasonably withhold consent for the Tenant to make reasonable non-structural alterations, modifications, or improvements to the leased premises.

B. Tenant may not alter any locks or any security devices on the Property or the leased premises without Landlord's consent. If Landlord authorizes the changing, addition, or rekeying of any locks or other security devices, Tenant must immediately deliver the new keys and access devices to Landlord.

C. If a governmental order requires alteration or modification to the leased premises, the party obligated to maintain and repair the item to be modified or altered as designated in Paragraph 15 will, at its expense, modify or alter the item in compliance with the order and in compliance with Paragraphs 16A and 17. Tenant must obtain at its expense all permits required for any improvements.

D. Any alterations, improvements, fixtures or additions to the Property or leased premises installed by either party during the term of this lease will become Landlord's property and must be surrendered to Landlord at the time this lease ends, except for those fixtures Landlord requires Tenant to remove under Paragraph 11 or 14 or if the parties agree otherwise in writing.

17. LIENS: Tenant may not do anything that will cause the title of the Property or leased premises to be encumbered in any way. If Tenant causes a lien to be filed against the Property or leased premises, Tenant will within 20 days after receipt of Landlord's demand: (1) pay the lien and have the lien released of record; or (2) take action to discharge the lien. Tenant will provide Landlord a copy of any release Tenant obtains pursuant to this paragraph.

18. LIABILITY: At all times ~~to the extent~~ permitted by law, Landlord is NOT responsible to Tenant or Tenant's employees, patrons, guests, or invitees for any damages, injuries, or losses to person or property caused by:
A. an act, omission, or neglect of: Tenant; Tenant's agent; Tenant's guest; Tenant's employees; Tenant's patrons; Tenant's invitees; or any other tenant on the Property;
B. fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, riot, strike, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, environmental contaminants, or other occurrences or casualty losses.

19. INDEMNITY: Each party will indemnify and hold the other party harmless from any property damage, personal injury, suits, actions, liabilities, damages, cost of repairs or service to the leased premises or Property, or any other loss caused, negligently or otherwise, by that party or that party's employees, patrons, guests, or invitees.

## 20. DEFAULT:

A. If Landlord fails to comply with this lease within 30 days after Tenant notifies Landlord of Landlord's failure to comply, Landlord will be in default and Tenant may seek any remedy provided by law. If, however, Landlord's non-compliance reasonably requires more than 30 days to cure, Landlord will not be in default if the cure is commenced within the 30-day period and is diligently pursued.

**AR 000079**

B. If Landlord does not actually receive at the place designated for payment any rent due under this lease within 5 days after it is due, Tenant will be in default. If Tenant fails to comply with this lease for any other reason within 10 days after Landlord notifies Tenant of its failure to comply, Tenant will be in default.

C. If Tenant is in default, Landlord may: (i) terminate Tenant's right to occupy the leased premises by providing Tenant with at least 3 days written notice; and (ii) accelerate all rents which are payable during the remainder of this lease or any renewal period without notice or demand. Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by using commercially reasonable means. If Tenant is in default, Tenant will be liable for:

   (1) any lost rent;
   (2) Landlord's cost of reletting the leased premises, including brokerage fees, advertising fees, and other fees necessary to relet the leased premises;
   (3) repairs to the leased premises for use beyond normal wear and tear;
   (4) all Landlord's costs associated with eviction of Tenant, such as attorney's fees, court costs, and prejudgment interest;
   (5) all Landlord's costs associated with collection of rent such as collection fees, late charges, and returned check charges;
   (6) cost of removing any of Tenant's equipment or fixtures left on the leased premises or Property;
   (7) cost to remove any trash, debris, personal property, hazardous materials, or environmental contaminants left by Tenant or Tenant's employees, patrons, guests, or invitees in the leased premises or Property;
   (9) cost to replace any unreturned keys or access devices to the leased premises, parking areas, or Property;
   (10) any other recovery to which Landlord may be entitled under this lease or under law.

21. **ABANDONMENT, INTERRUPTION OF UTILTIES, REMOVAL OF PROPERTY, AND LOCKOUT:** Chapter 93 of the Texas Property Code governs the rights and obligations of the parties with regard to: (a) abandonment of the leased premises; (b) interruption of utilities; (c) removal of Tenant's property; and (d) "lock-out" of Tenant.

22. **HOLDOVER:** If Tenant fails to vacate the leased premises at the time this lease ends, Tenant will become a tenant-at-will and must vacate the leased premises immediately upon receipt of demand from Landlord. No holding over by Tenant, with or without the consent of Landlord, will extend this lease. Tenant will indemnify Landlord and any prospective tenants for any and all damages caused by the holdover. Rent for any holdover period will be 2 times the base monthly rent plus any additional rent calculated on a daily basis and will be immediately due and payable daily without notice or demand.

23. **LANDLORD'S LIEN AND SECURITY INTEREST:** To secure Tenant's performance under this lease, Tenant grants to Landlord a lien and security interest against all of Tenant's nonexempt personal property that is in the leased premises or Property. This lease is a security agreement for the purposes of the Uniform Commercial Code. Landlord may file a copy of this lease as a financing statement.

24. **ASSIGNMENT AND SUBLETTING:** Landlord may assign this lease to any subsequent owner of the Property. Tenant may not assign this lease or sublet any part of the leased premises without Landlord's written consent. An assignment of this lease or subletting of the leased premises without Landlord's written consent is voidable by Landlord. If Tenant assigns this lease or sublets any part of the leased premises, Tenant will remain liable for all of Tenant's obligations under this lease regardless if the assignment or sublease is made with or without the consent of Landlord. Tenant may not sublease or assign this lease without the consent of Landlord which consent may be subject to terms and conditions imposed by Landlord regarding any such sublease or assignment and the payment of rent thereunder.

AR 000080

## 25. RELOCATION:

☐ A. ~~By providing Tenant with not less than 90 days advanced written notice, Landlord may require Tenant~~ to relocate to another location in the Property, provided that the other location is equal in size or larger than the leased premises then occupied by Tenant and contains similar leasehold improvements. Landlord will pay Tenant's reasonable out-of-pocket moving expenses for moving to the other location. "Moving expenses" means reasonable expenses payable to professional movers, utility companies for connection and disconnection fees, wiring companies for connecting and disconnecting Tenant's office equipment required by the relocation, and printing companies for reprinting Tenant's stationary and business cards. A relocation of Tenant will not change or affect any other provision of this lease that is then in effect, including rent and reimbursement amounts, except that the description of the suite or unit number will automatically be amended.

x☑ B. Landlord may not require Tenant to relocate to another location in the Property without Tenant's prior consent.

## 26. SUBORDINATION:

A. This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to:
   (1) any lien, encumbrance, or ground lease now or hereafter placed on the leased premises or the Property that Landlord authorizes;
   (2) all advances made under any such lien, encumbrance, or ground lease;
   (3) the interest payable on any such lien or encumbrance;
   (4) any and all renewals and extensions of any such lien, encumbrance, or ground lease;
   (5) any restrictive covenant affecting the leased premises or the Property; and
   (6) the rights of any owners' association affecting the leased premises or Property.

B. Tenant must, on demand, execute a subordination, attornment, and non-disturbance agreement that Landlord may request that Tenant execute, provided that such agreement is made on the condition that this lease and Tenant's rights under this lease are recognized by the lien-holder.

## 27. ESTOPPEL CERTIFICATES:
Within 10 days after receipt of a written request from Landlord, Tenant will execute and deliver to Landlord an estoppel certificate that identifies the terms and conditions of this lease.

## 28. CASUALTY LOSS:

A. Tenant must immediately notify Landlord of any casualty loss in the leased premises. Within 20 days after receipt of Tenant's notice of a casualty loss, Landlord will notify Tenant if the leased premises are less than or more than 50% unusable, on a per square foot basis, and if Landlord can substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty loss.

B. If the leased premises are less than 50% unusable and Landlord can substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty, Landlord will restore the leased premises to substantially the same condition as before the casualty. If Landlord fails to substantially restore within the time required, Tenant may terminate this lease.

C. If the leased premises are more than 50% unusable and Landlord can substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty, Landlord may: (1) terminate this lease; or (2) restore the leased premises to substantially the same condition as before the casualty. If Landlord chooses to restore and does not substantially restore the leased premises within the time required, Tenant may terminate this lease.

D. If Landlord notifies Tenant that Landlord cannot substantially restore the leased premises within 120 days after Tenant notifies Landlord of the casualty loss, Landlord may: (1) choose not to restore and terminate this lease; or (2) choose to restore, notify Tenant of the estimated time to restore, and give Tenant the option to terminate this lease by notifying Landlord within 10 days.

AR 000081

E. If this lease does not terminate because of a casualty loss, rent will be reduced from the date Tenant notifies Landlord of the casualty loss to the date the leased premises are substantially restored by an amount proportionate to the extent the leased premises are unusable.

29. **CONDEMNATION:** If after a condemnation or purchase in lieu of condemnation the leased premises are totally unusable for the purposes stated in this lease, this lease will terminate. If after a condemnation or purchase in lieu of condemnation the leased premises or Property are partially unusable for the purposes of this lease, this lease will continue and rent will be reduced in an amount proportionate to the extent the leased premises are unusable. Any condemnation award or proceeds in lieu of condemnation are the property of Landlord and Tenant has no claim to such proceeds or award. Tenant may seek compensation from the condemning authority for its moving expenses and damages to Tenant's personal property.

30. **ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, reasonable attorney's fees, and all other costs of litigation from the nonprevailing party.

31. **REPRESENTATIONS:**

A. Tenant's statements in this lease and any application for rental are material representations relied upon by Landlord. Each party signing this lease represents that he or she is of legal age to enter into a binding contract and is authorized to sign the lease. If Tenant makes any misrepresentation in this lease or in any application for rental, Tenant is in default.

B. Landlord is not aware of any material defect on the Property that would affect the health and safety of an ordinary person or any environmental hazard on or affecting the Property that would affect the health or safety of an ordinary person, except: _____

_____

_____

_____

C. Each party and each signatory to this lease represents that: (1) it is not a person named as a Specially Designated National and Blocked Person as defined in Presidential Executive Order 13224; (2) it is not acting, directly or indirectly, for or on behalf of a Specially Designated and Blocked Person; and (3) is not arranging or facilitating this lease or any transaction related to this lease for a Specially Designated and Blocked Person. Any party or any signatory to this lease who is a Specially Designated and Blocked person will indemnify and hold harmless any other person who relies on this representation and who suffers any claim, damage, loss, liability or expense as a result of this representation.

32. **BROKERS:**

A. The brokers to this lease are:    NONE

| Cooperating Broker | License No. | Principal Broker | License No |
|---|---|---|---|
| Address | | Address | |
| Phone | Fax | Phone | Fax |
| E-mail | | E-mail | |

Cooperating Broker represents Tenant.

Principal Broker: *(Check only one box)*
❑ represents Landlord only.
❑ represents Tenant only.
❑ is an intermediary between Landlord and Tenant.

AR 000082

B. <u>Fees</u>:

❑ (1) Principal Broker's fee will be paid according to: *(Check only one box)*.
    ❑ (a) a separate written commission agreement between Principal Broker and:
        ❑ Landlord ❑ Tenant.
    ❑ (b) the attached Addendum for Broker's Fee.

❑ (2) Cooperating Broker's fee will be paid according to: *(Check only one box)*.
    ❑ (a) a separate written commission agreement between Cooperating Broker and:
        ❑ Principal Broker ❑ Landlord ❑ Tenant.
    ❑ (b) the attached Addendum for Broker's Fee.

33. **ADDENDA:** Incorporated into this lease are the addenda, exhibits and other information marked in the Addenda and Exhibit section of the Table of Contents. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at its discretion, amend from time to time.

34. **NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by facsimile transmission to:

<u>Tenant</u> at the leased premises,
and a copy to:   Sterling Practice Management LLC
                Address: 5718 Bellaire Blvd., Houston, Texas 77081
                Phone: _____ Fax: _____
☒ Tenant also consents to receive notices by e-mail at: bgarner5@aol.com

<u>Landlord</u> at:   Providian Holdings, Inc.
                Address: 2918 San Jacinto Street, Suite 100, Houston, Texas 77004
                Phone: 713 523-7847 Fax: _____
and a copy to: _____
                Address: _____
                Phone: _____ Fax: _____
☒ Landlord also consents to receive notices by e-mail at: khyati_undavia@sbcglobal.net

35. **SPECIAL PROVISIONS:**

A. Landlord shall not be obligated to install any facilities at the Property or in the premises, including any ADA (American With Disabilities) or related facilities required by federal, state and city laws, regulations or ordinances.

B. Tenant will turn off the lights in the premises and lock the doors to the building when premises are vacated each evening.

C. Landlord shall have access at all times to the utility closet in the premises.

D. Landlord may but shall not be obligated to perform any cleaning for Tenant in the premises, common area, interior or exterior of the building.

AR 000083

## 36. AGREEMENT OF PARTIES:

A. <u>Entire Agreement</u>: This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. <u>Binding Effect</u>: This lease is binding upon and inures to the benefit of the parties and their respective heirs, executors, administrators, successors, and permitted assigns.

C. <u>Joint and Several</u>: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, or refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its renewal, or its termination is binding on all Tenants.

D. <u>Controlling Law</u>: The laws of the State of Texas govern the interpretation, performance, and enforcement of this lease.

E. <u>Severable Clauses</u>: If any clause in this lease is found invalid or unenforceable by a court of law, the remainder of this lease will not be affected and all other provisions of this lease will remain valid and enforceable.

F. <u>Waiver</u>: Landlord's delay, waiver, or non-enforcement of acceleration, contractual or statutory lien, rental due date, or any other right will not be deemed a waiver of any other or subsequent breach by Tenant or any other term in this lease.

G. <u>Quiet Enjoyment</u>: Provided that Tenant is not in default of this lease, Landlord covenants that Tenant will enjoy possession and use of the leased premises free from material interference.

H. <u>Force Majeure</u>: If Landlord's performance of a term in this lease is delayed by strike, lock-out, shortage of material, governmental restriction, riot, flood, or any cause outside Landlord's control, the time for Landlord's performance will be abated until after the delay.

I. <u>Time</u>: Time is of the essence. The parties require strict compliance with the times for performance.

**Brokers are not qualified to render legal advice, property inspections, surveys, engineering studies, environmental assessments, tax advice, or compliance inspections. The parties should seek experts to render such services. READ THIS LEASE CAREFULLY. If you do not understand the effect of this Lease, consult your attorney BEFORE signing.**

| STERLING PRACTICE MANAGEMENT LLC | PROVIDIAN HOLDINGS, INC. |
|---|---|
| Tenant | Landlord |
| By_____ | By_____ |
| Date | Date |
| Printed Name_Brett Garner_ | Printed Name_Khyati Undavia_ |
| Title_____ | Title_____ |

| | |
|---|---|
| Tenant | Landlord |
| By_____ | By_____ |
| Date | Date |
| Printed Name_William Hicks_ | Printed Name_____ |
| Title_____ | Title_____ |

**AR 000084**

Exhibit A

**The contiguous vacant space on the ground floor of the building, identified by and agreed to between Landlord and Tenant.**

AR 000085

## <u>MUTUAL RELEASE</u>

THE STATE OF TEXAS

. COUNTY OF HARRIS

**WHEREAS,** certain disputes, claims and causes of action existed by and between STERLING PRACTICE MANAGEMENT, LLC, its officers, directors, shareholders, partners, successors, agents, assigns, employees, servants and attorneys (hereinafter STERLING) and PROVIDIAN HOLDINGS, INC., its officers, directors, shareholders, partners, successors, agents, assigns, heirs, employees, servants and attorneys (hereinafter PROVIDIAN), arising from a commercial lease; and

**WHEREAS,** certain disputes, claims and causes of action existed by and between NISAL CORPORATION, its officers, directors, shareholders, partners, successors, agents, assigns, employees, servants and attorneys (hereinafter NISAL) and PROVIDIAN HOLDINGS, INC., its officers, directors, shareholders, partners, successors, agents, assigns, heirs, employees, servants and attorneys (hereinafter PROVIDIAN), arising from a commercial lease; and

**WHEREAS,** STERLING and NISAL filed suit against PROVIDIAN, No. 1036848, County Civil Court at Law No. 4, Harris County, Texas; and

**WHEREAS,** the parties desire to compromise, settle and provide for the full and final termination of all of the said claims, demands, causes of action and disputes between them arising out of or related to such claims which either party may now have or have had against each other, all without admitting any of the allegations set forth;

**NOW, THEREFORE,** for and in consideration of a check written by PROVIDIAN to STERLING AND NISAL and Phillip Brantley and Associates, PC in the amount of $7600.00, the mutual releases contained herein, and other good and valuable consideration, the receipt and

**AR 000086**

**EXHIBIT C**

sufficiency of which is hereby acknowledged, STERLING AND NISAL, their officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs and attorneys hereby **RELEASE, ACQUIT** and **FOREVER DISCHARGE** PROVIDIAN, its officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs and attorneys from any and all liabilities, claims, demands, causes of action, judgments, liens, liabilities or potential claims or causes of action which STERLING AND NISAL have ever had or could have had, whether now known or unknown, which have arisen or may arise from the beginning of time to the date of this release, including, without limitation;

NOW, **THEREFORE,** for and in consideration of the acceptance of the aforesaid check written by PROVIDIAN to STERLING AND NISAL and Phillip Brantley and Associates, PC in the amount of $7600.00, the mutual releases contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, PROVIDIAN, its officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs and attorneys hereby **RELEASE, ACQUIT** and **FOREVER DISCHARGE** STERLING AND NISAL, their officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs and attorneys from any and all liabilities, claims, demands, causes of action, judgments, liens, liabilities or potential claims or causes of action which PROVIDAN has ever had or could have had, whether now known or unknown, which have arisen or may arise from the beginning of time to the date of this release, including, without limitation.

Upon signature of all parties, STERLING AND NISAL shall file a nonsuit with prejudice.

The parties hereto represent and warrant that the persons executing this Mutual Release on their behalf as shown on this instrument is authorized to bind same.

**AR 000087**

It is understood and agreed that this is a final Mutual Release, that no further consideration is to be paid by any of the parties, and that this settlement is in compromise of disputed claims and is not to be construed as an admission of liability.

STERLING PRACTICE MANAGEMENT, LLC

BY: _____
NAME: _____
TITLE: _____

THE STATE OF TEXAS
COUNTY OF HARRIS'

BEFORE ME, on this day personally appeared, _William Hicks,_ of STERLING PRACTICE MANAGEMENT, LLC, whose name is subscribed to the foregoing Mutual Release, and who, acknowledged to me that he/she executed the Mutual Release as the act and deed of said entity, for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN under my hand and seal of office, this _3rd_ day of _October_, 2013.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS



MARIA PATRICIA MUNIZ
My Commission Expires
May 14, 2016

AR 000088

NISAL CORPORATION

BY: _____

NAME: _____

TITLE: _____

THE STATE OF TEXAS
COUNTY OF HARRIS

　　　BEFORE ME, on this day personally appeared, _William Hicks_, of NISAL CORPORATION, whose name is subscribed to the foregoing Mutual Release, and who, acknowledged to me that he/she executed the Mutual Release as the act and deed of said entity, for the purposes and consideration therein expressed, and in the capacity therein stated.

　　　GIVEN under my hand and seal of office, this _3rd_ day of September, 2013.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS



MARIA PATRICIA MUNIZ
My Commission Expires
May 14, 2016

AR 000089

## PROVIDIAN HOLDINGS, INC.

BY:  *Khyati Undavia*
NAME: KHYATI UNDAVIA
TITLE: Owner

THE STATE OF TEXAS
COUNTY OF HARRIS

BEFORE ME, on this day personally appeared, KHYATI UNDAVIA, PRESIDENT, of PROVIDIAN HOLDINGS, INC., whose name is subscribed to the foregoing Mutual Release, and who, acknowledged to me that he/she executed the Mutual Release as the act and deed of said entity, for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN under my hand and seal of office, this 2nd day of October, 2013.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

KEITH CHUNN, JR.
MY COMMISSION EXPIRES
November 14, 2016

AR 000090

"CLOSED"

NO. 1036848

| | |
|---|---|
| STERLING PRACTICE MANAGEMENT, LLC | IN COUNTY COURT AT LAW |
| NISAL CORPORATION | |
| Plaintiff | |
| | |
| vs. | NO. 4 |
| | |
| PROVIDIAN HOLDINGS, INC. | |
| Defendant | HARRIS COUNTY, TEXAS |

## PLAINTIFFS' NONSUIT

Sterling Practice Management, LLC and Nisal Corporation appear and file Plaintiffs'

Nonsuit, requesting that the Court dismiss this case with prejudice.

Respectfully submitted,

PHILLIP BRANTLEY AND ASSOC., P.C.

Phillip Brantley
SBN 02899727
Arena Tower II
7324 Southwest Freeway, Suite 1020
Houston, Texas 77074
(713) 270-4053 phone
(713) 270-0682 facsimile
ATTORNEY FOR PLAINTIFF

2013 OCT -7 PM 12: 4

CERTIFICATE OF SERVICE

I certify that this pleading was served on Keith Chunn, Jr., attorney for Defendant, by facsimile transmission on October 3, 2013.

Phillip Brantley

AR 000091

EXHIBIT D

NO. 1036848

STERLING PRACTICE MANAGEMENT, LLC    IN COUNTY COURT AT LAW
NISAL CORPORATION
    Plaintiff

vs.    NO. 4

PROVIDIAN HOLDINGS, INC.
    Defendant    HARRIS COUNTY, TEXAS

## ORDER

Pending before the Court is Plaintiffs' Nonsuit. This case is dismissed with prejudice.

Signed this ____ day of _____, 2013.

JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE
AND ENTRY URGED:

PHILLIP BRANTLEY AND ASSOCIATES, P.C.

_____

Phillip Brantley
SBN 02899727
Arena Tower II
7324 Southwest Freeway, Suite 1020
Houston, Texas 77074
(713) 270-4053 phone
(713) 270-0682 facsimile
ATTORNEY FOR PLAINTIFFS

AR 000092

CAUSE NO. 2014-22186

| | | |
|---|---|---|
| AVANT MEDICAL GROUP, P.A. | § | IN THE DISTRICT COURT OF |
| d/b/a ALLIED MEDICAL CENTERS | § | |
| and INTERVENTIONAL SPINE | § | |
| ASSOCIATES, | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| KHYATI UNDAVIA, MINU RX, LTD., | § | |
| and MINU GP, L.L.C. | § | |
| *Defendants* | § | 152ND JUDICIAL DISTRICT |

---

## DECLARATION OF KHYATI UNDAVIA

1. My name is Khyati Undavia. My date of birth is October 4, 1965, and my address is 2918 San Jacinto, Houston, Texas 77004. I swear under penalty of perjury that the below facts are within my personal knowledge and are true and correct.

2. Providian Holdings, Inc. ("Providian") is a holding company. Its only asset is 2918 San Jacinto St., Houston, Texas 77004 (the "Building"). Providian has no employees, and it has no operations aside from leasing out the building to tenants. I am the owner and president of Providian.

3. I am also the owner and president of Minu Rx, Ltd. d/b/a Memorial Compounding Pharmacy ("Minu"). Minu is a pharmacy that operates on the first floor of the Building. Minu has an approximately 12-person staff that includes pharmacists, pharmacy technicians, clerks, and bookkeepers.

4. Because Minu has a physical presence in the building, and because Minu has a turn-key staff available, Providian has used Minu as its property manager since 2004. In this role, Minu provides Providian with operational management, risk management, and administrative services.

5. Regarding operational management, Minu manages and maintains the Building. It

1

AR 000093

**EXHIBIT E**

interviews and hires security, janitorial, and facilities maintenance personnel. It also pays for items like elevator maintenance, repairs for the Building, and security equipment.

6. Regarding risk management, Minu procures and maintains insurance policies on Providian's behalf.

7. Regarding administrative services, Minu collects rent from the Building's tenants, pays for the Building's utilities and common area maintenance, and oversees Providian's compliance with accounting standards, as well as federal and state reporting requirements.

8. Attached as Exhibit G to Defendants' motion for summary judgment is a true and correct copy of a portion of Minu's Quickbooks for the time period of 2012 through 2013. These records demonstrate that Minu paid numerous expenses on Providian's behalf.

9. For example, in April 2012, a break-in occurred overnight at the Building, causing significant damage to the Building. Minu paid a total of $17,524.89 to repair the damage caused to the Building. These payments were made on April 18, 2012, June 8, 2012, and July 25, 2012, as indicated on the Quickbooks statement.

10. Similarly, Minu made periodic payments to "ABC Pest Pool & Lawn" throughout 2012 and 2013. These charges represented compensation that Minu paid to ABC Pest Pool & Lawn for the Building's grounds maintenance.

11. Among other things, these Quickbooks records also demonstrate the Minu paid for the Buildings' elevator maintenance (via payments dated July 31, 2012 and December 15, 2013) and for repairs to the Building's front door (via a payment dated March 27, 2012). Also attached as Exhibit F to Defendants' Motion for Summary Judgment are true and correct copies of invoices received by Minu that demonstrate that Minu d/b/a Memorial Compounding Pharmacy was billed directly for these expenses by the service provider.

12. In additional the above, Minu also paid for the Building's security systems and personnel. In 2012 alone, Minu paid $49,415.73 to provide security personnel,

2

AR 000094

alarm systems, and security cameras to the Building.

13. With regard to Providian's leases with Nisal Corp. and Sterling Practice Management, those entities did not have any actual operations in the office space they leased. Instead, Allied Medical Centers and Avant Medical Group were the entities that had operations in the leased space. Brett Garner is a doctor of chiropractic and was a chiropractor for both entities. For all matters concerning the lease, I communicated with Brett Garner in his capacity has a representative of not only Sterling and Nisal, but also Avant and Allied.

14. In fact, as a condition of leasing office space to Nisal and Sterling, I required those entities to provide me with proof that they had obtained CGL insurance policies. Garner provided a proof-of-coverage document naming "Avant Medical Group, P.A. d/b/a Allied Medical Centers" as the insured. Exhibit J to Defendants' Motion for Summary Judgment is a true and correct copy of the proof-of-coverage document Avant provided to me.

15. Additionally, Avant paid for Sterling's rent out of its own bank account. Attached as Exhibit K to Defendants' Motion for Summary Judgment is a true and correct copy of a rental check that Avant sent Providian with respect to Providian's lease with Sterling.

16. The Commercial Leases attached as Exhibits A and B to Defendants' Motion for Summary Judgment are true and correct copies of the leases that Providian entered into with Nisal Corp. and Sterling Practice Management.

17. I am the person in charge of records for Providian and Minu. Exhibits A, B, F, G, J, and K to Defendants' Motion for Summary Judgment are kept by me in the regular course of business, and it was in the regular course of business of Providian and Minu that the information contained in this exhibits was transmitted to me by an employee or agent of Providian or Minu who had knowledge of the act, event, condition, opinion, or diagnosis recorded to make the records or to transmit information thereof to be included in such records; and the records were made at or near the time or reasonably soon after the time that the service was provided. The records are the original or an exact duplicate of the original.

3

AR 000095

Executed in Harris County, Texas, on this the 29th day of January, 2015.

KHYATI UNDAVIA

4

AR 000096

 Elevator Services
1289 N Post Oak Ste 160
Houston TX 77055

| CUSTOMER NO. | DATE | INVOICE NO. |
|---|---|---|
| 553362 | 08/22/11 | DTH06202911 |

## INVOICE
## DUPLICATE

AMOUNT DUE ON SERVICE CONTRACT

1,047.30

Mail payment to:

PLEASE SEND
CORRESPONDENCE
TO YOUR
LOCAL OFFICE AS
SHOWN BELOW

AMTECH ELEVATOR SERVICES
P.O. BOX 730437
DALLAS TX
75373-0437

MEMORIAL COMPOUNDING PHARMACY
2919 SAN JACINTO ST
HOUSTON TX
77004

Enclose This Coupon With Your Payment.
Make Check Payable To: AMTECH ELEVATOR SERVICES

· · · · · · DETACH RETURN DOCUMENT ALONG PERFORATION · · · · · ·

## AMTECH ELEVATOR SERVICES
## "" SERVICE CONTRACT CHARGES ""

## INVOICE
## DUPLICATE

| CUSTOMER NO. | DATE | INVOICE NO. |
|---|---|---|
| 553362 | 08/22/11 | DTH06202911 |

MEMORIAL COMPOUNDING PHAR
CONTRACT DTH06203

| | | |
|---|---|---|
| SERVICE FROM 09/01/11 TO 02/29/12 | | 1,047.30 |
| TOTAL CURRENT CHARGES DUE | | 1,047.30 |

| | | |
|---|---|---|
| September service credit | | (174.55) |
| October service credit | | (174.55) |
| August service credit | | (174.55) |

REVISED INVOICE AMOUNT NOW DUE: $523.65

B       FOR ANY QUESTIONS CONCERNING THIS INVOICE, CONTACT COMPANY AT: 1-713-923-7251
OR WRITE AMTECH ELEVATOR   1289 N POST OAK STE 100   HOUSTON   TX 77055
PAYMENT DUE UPON RECEIPT

WE CERTIFY THAT GOODS WERE PRODUCED IN COMPLIANCE WITH ALL APPLICABLE REQUIREMENTS OF SECTIONS 6, 7 AND 12 OF THE FAIR LABOR STANDARDS ACT, AS AMENDED, AND OF REGULATIONS AND ORDERS OF THE UNITED STATES DEPARTMENT OF LABOR ISSUED UNDER SECTION 14 HEREOF.

OVERDUE PAYMENTS SHALL BEAR AN INTEREST CHARGE OF THE OVERDUE AMOUNT CALCULATED FROM THE PAYMENT DUE DATE OF THIS INVOICE AT THE RATE OF ONE AND ONE HALF PERCENT (1.5%) PER MONTH OR THE MAXIMUM RATE ALLOWED BY APPLICABLE LAW, WHICHEVER IS LESS.

NAEBNV.FRM

AR 000097

**EXHIBIT F**

**AMTECH ELEVATOR SERVICES**
1 Farm Springs Rd
Farmington, CT 06032

| Customer No. | Statement Date | Amount Due |
|---|---|---|
| 553362 | 2/7/2012 | 1,047.30 |

# STATEMENT

Mail payment to:

Amtech Elevator Services
PO Box 730437
Dallas, TX 75373-0437

Memorial Compounding Pharmacy
2918 San Jacinto St
HOUSTON, TX 77004

Please provide your name, phone number and/or email address
should we have any questions on how to apply your payment:

---

## STATEMENT

For any questions concerning this statement, please contact:
404-605-8421 or dana.marvin@otis.com

Page 1 of 1

Building Reference: 2918 San Jacinto St

| | Customer No. | Statement Date | Amount Due |
|---|---|---|---|
| | 553362 | 2/7/2012 | 1,047.30 |

| Invoice Number | Document Type | Invoice Date | Gross Amount | Open Amount |
|---|---|---|---|---|
| DTH06202 911 | Invoice | 8/22/2011 | 1,047.30 | 1,047.30 |

*reviewed approved*

Above, please find your latest statement of account. This statement does not include invoices turned over to a third party for collection.
Chargebacks are disputes under investigation. Please remit payment to the address above. If you have already paid, thank you.
Collection data is reported to Dun & Bradstreet.

**AR 000098**

**AMTECH** *Elevator Services*

1289 N Post Oak Ste 100
Houston TX 77055

| CUSTOMER NO. | DATE | INVOICE NO. |
|---|---|---|
| 553362 | 02/20/12 | DTH06202312 |

# INVOICE

AMOUNT DUE ON SERVICE CONTRACT:
1,099.74

Enclose This Coupon With Your Payment.
Make Check Payable To:
AMTECH ELEVATOR SERVICES

Mail payment to:

AMTECH ELEVATOR SERVICES
P.O. BOX 730437
DALLAS          TX
75373-0437

AT 01 006604 340578 26 A**3DGT

MEMORIAL COMPOUNDING PHARMACY
2918 SAN JACINTO ST
HOUSTON          TX   77004-2708

PLEASE SEND CORRESPONDENCE TO YOUR LOCAL OFFICE AS SHOWN BELOW

ODTH06202312 0000109974 1

--- DETACH RETURN DOCUMENT ALONG PERFORATION ---

# INVOICE

## AMTECH ELEVATOR SERVICES
## ** SERVICE CONTRACT CHARGES **

| CUSTOMER NO. | DATE | INVOICE NO. |
|---|---|---|
| 553362 | 02/20/12 | DTH06202312 |

BUILDING   DTH800681   MEMORIAL COMPOUNDING PHAR
CONTRACT   DTH06202

SERVICE FROM   03/01/12 TO 08/31/12          1,099.74
TOTAL CURRENT CHARGES DUE                         1,099.74

- - - PRICE ADJUSTMENT - - -

IN ACCORDANCE WITH THE PROVISION FOR THE ADJUSTMENT OF PRICE AS SET FORTH IN THE CONTRACT
ENTERED INTO BETWEEN US FOR THE SERVICE OF ELEVATOR EQUIPMENT:
THE FORMER PRICE OF          174.55 HAS BEEN ADJUSTED AS INDICATED BELOW BASED UPON THE CHANGES
THAT HAVE OCCURED IN THE ELEVATOR EXAMINERS' COST AND IN MATERIAL INDEX BETWEEN   JANUARY,2011
AND   JANUARY,2012.   THE ADJUSTED PRICE BECOMES EFFECTIVE   MARCH 01, 2012   AND SHALL REMAIN
IN EFFECT UNTIL   FEBRUARY 28, 2013   WHEN IT WILL BE SUBJECT TO ADJUSTMENT.
CLAUSE 1 - BASED ON CHANGES IN PRODUCER METALS AND METAL PRODUCTS COMMODITY INDEX:

| (A) FORMER INDEX | (B) CURRENT INDEX | (C)=B/A RATIO OF CHANGE | (D) FORMER MATERIAL | (E)=C*D CURRENT MATERIAL |
|---|---|---|---|---|
| 215.0000 | 223.7000 | 103.58140 | | |

CLAUSE 2 - BASED ON CHANGES IN ELEVATOR EXAMINERS' HOURLY COST:

| (A) FORMER EXAMINERS' COST | (B) CURRENT EXAMINERS' COST | (C)=B/A RATIO OF CHANGE | (D) FORMER LABOR | (E)=C*D CURRENT LABOR | |
|---|---|---|---|---|---|
| 62.8059 | 65.9524 | 105.00988 | 174.55 | 183.29 | 183.29 PER MO |

YOUR NEW INVOICE AMT                         1,099.74   TOTAL

FOR ANY QUESTIONS CONCERNING THIS INVOICE, PLEASE TELEPHONE 1-713-923-7251
OR WRITE AMTECH ELEVATOR      1289 N POST OAK STE 100   HOUSTON      TX 77055
PAYMENT DUE UPON RECEIPT-PLEASE PAY PROMPTLY

WE CERTIFY THAT THE GOODS WERE PRODUCED IN COMPLIANCE WITH ALL APPLICABLE REQUIREMENTS OF SECTIONS  6, 7 AND 12 OF THE FAIR LABOR
STANDARDS ACT, AS AMENDED, AND OF REGULATIONS AND ORDERS OF THE UNITED STATES DEPARTMENT OF LABOR ISSUED UNDER SECTION 14 HEREOF.
OVERDUE PAYMENTS SHALL BEAR AN INTEREST CHARGE ON THE OVERDUE AMOUNT CALCULATED FROM THE PAYMENT DUE DATE OF THE INVOICE AT THE
RATE OF ONE AND ONE HALF PERCENT (1.5%) PER MONTH OR THE MAXIMUM RATE ALLOWED BY APPLICABLE LAW, WHICHEVER IS LESS.

AR 000099

0066047 DI

Page 1 of 1


**BILL TO**

MEMORIAL COMPOUNDING PHARMACY
2918 SAN JACINTO ST

HOUSTON                    TX
                  77004

**SHIP TO**

MEMORIAL COMPOUNDING PHAR
2918 SAN JACINTO

HOUSTON                    TX
                  77004

---

IF PAYING BY CREDIT CARD, PLEASE COMPLETE THE FOLLOWING AND MAIL TO THE ADDRESS BELOW OR FAX TO TREASURY SERVICES AT (860) 676-6450.
PLEASE CHARGE MY:
(  ) AMERICAN EXPRESS        (  ) MASTER CARD        (  ) VISA

CARD NUMBER _____  EXPIRATION DATE _____

SIGNATURE _____  PHONE # _____

FURNISH LABOR AND MATERIALS TO MAKE CODE
REMEDIATION REPAIRS IN ACCORDANCE WITH QUOTE
DATED OCTOBER 4, 2010.
ANY QUESTIONS REGARDING THIS INVOICE, PLEASE
CONTACT YOUR ACCOUNT REPRESENTATIVE, NELSON F.
BELLESHEIM, JR. AT 713-923-7251.

| | |
|---|---|
| PRICE AS QUOTED | $5,812.26 |
| LESS 10% DISCOUNT | 581.23 |
| | |
| ADJUSTED AMOUNT INCLUDING TAX | $5,231.03 |
| LESS PREVIOUSLY BILLED | 2,615.52 |

PAGE    1

WE CERTIFY THAT THE GOODS WERE PRODUCED IN COMPLIANCE WITH ALL APPLICABLE REQUIREMENTS OF SECTIONS 6, 7 AND 12 OF THE FAIR STANDARDS ACT, AS AMENDED, AND OF REGULATIONS AND ORDERS OF THE UNITED STATES DEPARTMENT OF LABOR ISSUED UNDER SECTION 14 HEREOF. PAYMENTS NOT RECEIVED WITHIN THIRTY (30) DAYS OF THE DATE OF INVOICE SHALL BE DEEMED OVERDUE AND SHALL BEAR AN INTEREST CHARGE O OVERDUE AMOUNT, CALCULATED FROM THE DATE OF INVOICE, AT THE RATE OF ONE AND ONE HALF PERCENT (1.5%) PER MONTH OR THE MAXIMUM ALLOWED BY APPLICABLE LAW, WHICHEVER IS LESS. SHOULD IT BE NECESSARY TO COMMENCE COLLECTION PROCEEDINGS AGAINST YOU FOR ANY OV PAYMENTS, WE SHALL ALSO BE ENTITLED TO REIMBURSEMENT FROM YOU FOR THE COST OF SUCH PROCEEDINGS, INCLUDING ATTORNEY'S FEES.

QUESTIONS CONCERNING THIS INVOICE, CONTACT AMTECH ELEVATOR AT:    (713-923-

AMTECH ELEVATOR SERVICES
P.O. BOX 730437
DALLAS, TX. 75373-0437

**TERMS**—NET CASH UPON PRESENTATIO
MAKE ALL CHECKS PAYABLE TO
AMTECH ELEVATOR SERVICES

**AR 000100**

FORM 4224-AMT

PLEASE FOLD AND FORWARD THE REMITTANCE COPY WITH PAYMENT TO THE ADDRESS ABOVE


**Elevator Services**

1289 N Post Oak Ste 100
Houston TX 77055

# INVOICE

| CUSTOMER NO. | DATE | INVOICE NO. |
|---|---|---|
| 553362 | 02/21/11 | DTH0620231I |

**AMOUNT DUE ON SERVICE CONTRACT:**
**1,047.30**

Enclose This Coupon With Your Payment.
Make Check Payable To:
AMTECH ELEVATOR SERVICES

Mail payment to:

AMTECH ELEVATOR SERVICES
P.O. BOX 730437
DALLAS          TX
75373-0437

AT 01 006201 79623B 26 A**3DGT

MEMORIAL COMPOUNDING PHARMACY
2918 SAN JACINTO ST
HOUSTON              TX  77004-2708

PLEASE SEND CORRESPONDENCE TO YOUR LOCAL OFFICE AS SHOWN BELOW

ODTH06202311 0000104730 5

-------------------------------------------------------------

DETACH RETURN DOCUMENT ALONG PERFORATION

## AMTECH ELEVATOR SERVICES
## ** SERVICE CONTRACT CHARGES **

# INVOICE

| CUSTOMER NO. | DATE | INVOICE NO. |
|---|---|---|
| 553362 | 02/21/11 | DTH0620231I |

BUILDING   DTH800681   MEMORIAL COMPOUNDING PHAR
CONTRACT   DTH06202

| | | |
|---|---|---|
| SERVICE FROM  03/01/11 TO 08/31/11 | 1,047.30 | |
| TOTAL CURRENT CHARGES DUE | | 1,047.30 |

- - - PRICE ADJUSTMENT - - -

IN ACCORDANCE WITH THE PROVISION FOR THE ADJUSTMENT OF PRICE AS SET FORTH IN THE CONTRACT
ENTERED INTO BETWEEN US FOR THE SERVICE OF ELEVATOR EQUIPMENT:
THE FORMER PRICE OF      165.77 HAS BEEN ADJUSTED AS INDICATED BELOW BASED UPON THE CHANGES
THAT HAVE OCCURED IN THE ELEVATOR EXAMINERS' COST AND IN MATERIAL INDEX BETWEEN   JANUARY,2010
AND   JANUARY,2011.   THE ADJUSTED PRICE BECOMES EFFECTIVE   MARCH 01, 2011   AND SHALL REMAIN
IN EFFECT UNTIL   FEBRUARY 28, 2012   WHEN IT WILL BE SUBJECT TO ADJUSTMENT.

CLAUSE 1 - BASED ON CHANGES IN PRODUCER METALS AND METAL PRODUCTS COMMODITY INDEX:

| (A) | (B) | (C)=B/A | (D) | (E)=C*D |
|---|---|---|---|---|
| FORMER INDEX | CURRENT INDEX | RATIO OF CHANGE | FORMER MATERIAL | CURRENT MATERIAL |
| 196.0000 | 215.0000 | 109.69388 | | |

CLAUSE 2 - BASED ON CHANGES IN ELEVATOR EXAMINERS' HOURLY COST:

| (A) | (B) | (C)=B/A | (D) | (E)=C*D | |
|---|---|---|---|---|---|
| FORMER EXAMINERS' COST | CURRENT EXAMINERS' COST | RATIO OF CHANGE | FORMER LABOR | CURRENT LABOR | |
| 59.6479 | 62.8059 | 105.29440 | 165.77 | 174.55 | 174.55 PER MO |

| | | |
|---|---|---|
| YOUR NEW INVOICE AMT | 1,047.30   TOTAL | |

FOR ANY QUESTIONS CONCERNING THIS INVOICE, PLEASE TELEPHONE 1-713-923-7251
OR WRITE AMTECH ELEVATOR     1289 N POST OAK STE 100    HOUSTON        TX 77055
**PAYMENT DUE UPON RECEIPT-PLEASE PAY PROMPTLY**

WE CERTIFY THAT THE GOODS WERE PRODUCED IN COMPLIANCE WITH ALL APPLICABLE REQUIREMENTS OF SECTIONS  6, 7 AND 12 OF THE FAIR LABOR
STANDARDS ACT, AS AMENDED, AND OF REGULATIONS AND ORDERS OF THE UNITED STATES DEPARTMENT OF LABOR ISSUED UNDER SECTION 14 HEREOF.
OVERDUE PAYMENTS SHALL BEAR AN INTEREST CHARGE ON  THE OVERDUE AMOUNT CALCULATED FROM THE PAYMENT DUE DATE OF THE INVOICE AT THE
RATE OF ONE AND ONE HALF PERCENT (1.5%) PER MONTH OR THE MAXIMUM RATE ALLOWED BY APPLICABLE LAW, WHICHEVER IS LESS.

**AR 000101**

Page 1 of 1

0062017 1/1                    6

## MINU RX LTD
## Account QuickReport
### January through December 2012

| Type | Date | Num | Name | Memo | Split | Amount |
|------|------|-----|------|------|-------|--------|
| **Security Services** | | | | | | |
| Check | 01/31/12 | 7214 | Armadillo Security Service | 99425 | A0 COMPASS... | 1,606.20 |
| Check | 01/31/12 | 7217 | Security Nationwide Inc | 1015 | A0 COMPASS... | 1,510.09 |
| Check | 02/15/12 | 7245 | Armadillo Security Service | 99445 | A0 COMPASS... | 1,314.90 |
| Check | 02/15/12 | 7254 | Security Nationwide Inc | 1016 | A0 COMPASS... | 1,510.09 |
| Check | 03/01/12 | 7279 | Security Nationwide Inc | 1017 | A0 COMPASS... | 1,510.09 |
| Check | 03/15/12 | 7305 | Armadillo Security Service | 99465 | A0 COMPASS... | 1,606.20 |
| Check | 03/15/12 | 7309 | Security Nationwide Inc | 1018 | A0 COMPASS... | 1,812.11 |
| Check | 03/29/12 | 1021 | Security Nationwide Inc | 1019 | A1 COMPASS... | 1,661.10 |
| Credit Card Charge | 04/02/12 | 041012 | Digital Alarm Systems | | AMEX 76008 | 188.36 |
| Check | 04/15/12 | 1047 | Armadillo Security Service | 99526 | A1 COMPASS... | 1,602.15 |
| Check | 04/15/12 | 1050 | Digital Alarm Systems | 176860 | A1 COMPASS... | 138.02 |
| Check | 04/15/12 | 1054 | Security Nationwide Inc | 1020 | A1 COMPASS... | 1,929.56 |
| Check | 05/15/12 | 1126 | Security Nationwide Inc | 1021 - 1022 | A1 COMPASS... | 3,171.19 |
| Check | 05/15/12 | 1123 | Armadillo Security Service | | A1 COMPASS... | 1,468.64 |
| Check | 05/31/12 | 1011 | Security Nationwide Inc | 1023 | A1 COMPASS... | 1,661.10 |
| Credit Card Charge | 06/04/12 | 060812 | Digital Alarm Systems | | AMEX 61001 | 321.51 |
| Check | 06/15/12 | 1041 | Armadillo Security Service | 99524 | A1 COMPASS... | 1,768.04 |
| Check | 06/15/12 | 1045 | Security Nationwide Inc | 1024 | A1 COMPASS... | 1,661.10 |
| Credit Card Charge | 07/02/12 | 071112 | Digital Alarm Systems | | AMEX 76008 | 188.36 |
| Check | 07/17/12 | 1108 | Security Nationwide Inc | 1025 & 1026 | A1 COMPASS... | 3,171.19 |
| Credit Card Charge | 07/26/12 | 081012 | Digital Alarm Systems | | AMEX 76008 | 238.16 |
| Check | 08/15/12 | 1167 | Security Nationwide Inc | 1027 - 1028 | A1 COMPASS... | 3,322.20 |
| Credit Card Charge | 10/01/12 | 101112 | Digital Alarm Systems | | AMEX 76008 | 188.36 |
| Check | 10/02/12 | 1267 | Security Nationwide Inc | 1029 & 1030 | A1 COMPASS... | 3,473.21 |
| Check | 10/02/12 | 1271 | Security Nationwide Inc | 1031 | A1 COMPASS... | 1,510.09 |
| Check | 10/15/12 | 1301 | Security Nationwide Inc | 1032 | A1 COMPASS... | 1,510.09 |
| Check | 11/01/12 | 1346 | Security Nationwide Inc | 1033 | A1 COMPASS... | 1,661.10 |
| Check | 11/21/12 | 1388 | Security Nationwide Inc | 1034 & 1035 | A1 COMPASS... | 3,473.21 |
| Check | 12/12/12 | 1468 | Security Nationwide Inc | 1036 | A1 COMPASS... | 1,370.14 |
| Check | 12/29/12 | 1486 | Security Nationwide Inc | 12/03-12/14 ... | A1 COMPASS... | 2,869.17 |
| **Total Security Services** | | | | | | 49,415.73 |
| **TOTAL** | | | | | | 49,415.73 |

AR 000102

EXHIBIT G

# MINU RX LTD
## Account QuickReport
### January through December 2013

| Type | Date | Num | Name | Memo | Split | Amount |
|------|------|-----|------|------|-------|--------|
| **Security Services** | | | | | | |
| Credit Card Charge | 01/01/13 | 011113 | Digital Alarm Systems | | AMEX 76008 | 188.36 |
| Check | 02/15/13 | 1583 | Security Nationwide Inc | 1036,1038,1... | A1 COMPASS... | 3,160.13 |
| Check | 03/01/13 | 1615 | Security Nationwide Inc | 1041 | A1 COMPASS... | 1,661.10 |
| Check | 03/19/13 | 1665 | Security Nationwide Inc | 1042 | A1 COMPASS... | 1,359.08 |
| Check | 04/01/13 | 1707 | Security Nationwide Inc | 1043 | A1 COMPASS... | 1,661.10 |
| Credit Card Charge | 04/01/13 | 041013 | Digital Alarm Systems | | AMEX 76008 | 188.36 |
| Check | 04/15/13 | 1744 | Security Nationwide Inc | Inv 1044 | A1 COMPASS... | 1,510.09 |
| Check | 04/30/13 | 1771 | Security Nationwide Inc | Inv. 1045 | A1 COMPASS... | 1,661.10 |
| Check | 05/20/13 | 1806 | Security Nationwide Inc | 1046 | A1 COMPASS... | 1,661.10 |
| Check | 05/30/13 | 1820 | Security Nationwide Inc | 1047 | A1 COMPASS... | 1,661.40 |
| Check | 06/15/13 | 1853 | Security Nationwide Inc | 1048 | A1 COMPASS... | 1,661.10 |
| Credit Card Charge | 07/01/13 | 071113 | Digital Alarm Systems | | AMEX 76008 | 188.36 |
| Check | 07/15/13 | 1883 | Security Nationwide Inc | 1049, 1050 | A1 COMPASS... | 3,020.18 |
| Credit Card Charge | 07/22/13 | 080913 | Digital Alarm Systems | | AMEX 61001 | 92.01 |
| Check | 07/31/13 | 1904 | Security Nationwide Inc | Inv 1051 | A1 COMPASS... | 1,661.10 |
| Check | 08/15/13 | 1937 | Security Nationwide Inc | Inv 1052 | A1 COMPASS... | 1,812.11 |
| Check | 08/31/13 | 1955 | Security Nationwide Inc | Inv 1053 | A1 COMPASS... | 1,661.10 |
| Check | 09/15/13 | 1976 | Security Nationwide Inc | Inv 1054 | A1 COMPASS... | 1,661.10 |
| Credit Card Charge | 09/30/13 | 100913 | Digital Alarm Systems | | AMEX 61001 | 188.36 |
| Check | 10/01/13 | 1989 | Security Nationwide Inc | Inv 1055 | A1 COMPASS... | 1,510.09 |
| Check | 10/15/13 | 2012 | Security Nationwide Inc | Inv. 1056 | A1 COMPASS... | 1,661.10 |
| Check | 10/31/13 | 2037 | Security Nationwide Inc | Inv 1057 | A1 COMPASS... | 1,812.11 |
| Check | 11/17/13 | 2058 | Security Nationwide Inc | Inv. 1058 | A1 COMPASS... | 1,627.54 |
| Check | 11/30/13 | 2080 | Security Nationwide Inc | Inv. 1059 | A1 COMPASS... | 1,661.10 |
| Check | 12/15/13 | 2116 | Security Nationwide Inc | 1060, 1061 | A1 COMPASS... | 2,718.16 |
| **Total Security Services** | | | | | | 37,647.34 |
| **TOTAL** | | | | | | 37,647.34 |

**AR 000103**

**MINU RX LTD**
# Account QuickReport
### January through December 2012

| Type | Date | Num | Name | Memo | Split | Amount |
|------|------|-----|------|------|-------|--------|
| **Maint & Repairs/Bldg & Grounds** | | | | | | |
| Credit Card Charge | 01/15/12 | 020512 | Bering Home Center | | AMEX 34006/... | 202.89 |
| Check | 01/26/12 | 7213 | Sam's Club | supplies | A0 COMPASS... | 204.87 |
| Check | 01/27/12 | WD | | | A0 COMPASS... | 1,500.00 |
| Credit Card Charge | 02/05/12 | 030712 | Home Depot | | AMEX 34006/... | 228.12 |
| Credit Card Charge | 02/15/12 | 031112 | OEC*NAESAQUISITIONC | | AMEX 76008 | 523.65 |
| Check | 02/29/12 | WD | | | A0 COMPASS... | 1,000.00 |
| Credit Card Charge | 02/29/12 | 031112 | ABC Pest Pool & Lawn | | AMEX 76008 | 146.35 |
| Credit Card Charge | 02/29/12 | 031112 | ABC Pest Pool & Lawn | | AMEX 76008 | 77.93 |
| Check | 03/01/12 | 7283 | Sam's Club | maint supps | A0 COMPASS... | 189.34 |
| Credit Card Charge | 03/10/12 | 040612 | Wal-Mart | | AMEX 34006/... | 173.45 |
| Check | 03/14/12 | 7304 | Cash | | A0 COMPASS... | 1,000.00 |
| Credit Card Charge | 03/27/12 | 041012 | Crown Overhead Door | building door repair | AMEX 76008 | 1,036.00 |
| Credit Card Charge | 03/30/12 | 041012 | OEC*NAESAQUISITIONC | Maint | AMEX 76008 | 1,099.74 |
| Check | 04/04/12 | WD | | | A1 COMPASS... | 2,000.00 |
| Check | 04/15/12 | 1051 | Robbie's Lock & Key Shop | | A1 COMPASS... | 234.36 |
| Check | 04/15/12 | 1053 | Willowbrook AC | 3323 | A1 COMPASS... | 1,627.00 |
| Check | 04/18/12 | 1070 | Zeva Home Construction | Break-in repairs | A1 COMPASS... | 1,681.31 |
| Check | 04/18/12 | 1071 | Zeva Home Construction | break-in repairs | A1 COMPASS... | 2,844.56 |
| Check | 04/25/12 | 1080 | Sam's Club | | A1 COMPASS... | 199.43 |
| Credit Card Charge | 04/26/12 | 050712 | Parata Systems LLC | | AMEX 34006/... | 1,338.71 |
| Credit Card Charge | 04/30/12 | 051112 | ABC Pest Pool & Lawn | | AMEX 76008 | 77.93 |
| Check | 05/05/12 | 1106 | Cash | | A1 COMPASS... | 2,000.00 |
| Credit Card Charge | 05/28/12 | 060612 | Parata Systems LLC | | AMEX 34006/... | 1,338.71 |
| Credit Card Charge | 05/28/12 | 060812 | Bering Home Center | | AMEX 61001 | 44.83 |
| Check | 05/31/12 | 1012 | Willowbrook AC | | A1 COMPASS... | 349.50 |
| Credit Card Charge | 05/31/12 | 061012 | ABC Pest Pool & Lawn | | AMEX 76008 | 146.35 |
| Check | 06/08/12 | 1023 | Zeva Home Construction | Repairs due to Rob... | A1 COMPASS... | 9,321.22 |
| Credit Card Charge | 06/29/12 | 071112 | ABC Pest Pool & Lawn | | AMEX 76008 | 77.93 |
| Check | 07/02/12 | WD | | | A1 COMPASS... | 1,500.00 |
| Check | 07/10/12 | 1097 | Willowbrook AC | 4067 | A1 COMPASS... | 2,920.00 |
| Check | 07/17/12 | 1109 | Rueben Alejandro | | A1 COMPASS... | 495.00 |
| Check | 07/25/12 | 1128 | Zeva Home Construction | Robbery Repairs | A1 COMPASS... | 3,677.80 |
| Check | 07/31/12 | 1143 | Elevator Technical Service | | A1 COMPASS... | 145.00 |
| Credit Card Charge | 08/30/12 | 091012 | ABC Pest Pool & Lawn | | AMEX 76008 | 146.35 |
| Credit Card Charge | 08/30/12 | 091012 | ABC Pest Pool & Lawn | | AMEX 76008 | 77.93 |
| Check | 09/15/12 | 1225 | Cash | | A1 COMPASS... | 1,000.00 |
| Deposit | 09/30/12 | DEP | | SEPT. 2012 DEPO... | A1 COMPASS... | -321.51 |
| Credit Card Charge | 11/20/12 | 120912 | Crown Door LTD | specialty retail | AMEX 61001 | 175.00 |
| Check | 12/12/12 | 1466 | Robbie's Lock & Key Shop | 097518 | A1 COMPASS... | 125.74 |
| Check | 12/12/12 | 1467 | Rueben Alejandro | 07/09/12-12/10/12 | A1 COMPASS... | 540.00 |
| Total Maint & Repairs/Bldg & Grounds | | | | | | 41,145.49 |
| **TOTAL** | | | | | | **41,145.49** |

AR 000104

## MINU RX LTD
# Account QuickReport
### January through December 2013

| Type | Date | Num | Name | Memo | Split | Amount |
|------|------|-----|------|------|-------|--------|
| **Maint & Repairs/Bldg & Grounds** | | | | | | |
| Credit Card Charge | 01/18/13 | 020913 | | | AMEX 61001 | 2,155.26 |
| Check | 01/31/13 | 1550 | Robbie's Lock & Key Shop | 098090 | A1 COMPASS... | 233.45 |
| Credit Card Charge | 02/28/13 | 031113 | ABC Pest Pool & Lawn | | AMEX 76008 | 150.75 |
| Credit Card Charge | 03/25/13 | 040813 | Air Clean Systems | | AMEX 61001 | 1,380.00 |
| Credit Card Charge | 04/20/13 | 050913 | Wal-Mart | SUPLLIES | AMEX 61001 | 208.04 |
| Credit Card Charge | 05/03/13 | 051013 | ABC Pest Pool & Lawn | | AMEX 76008 | 150.75 |
| Check | 05/15/13 | 1795 | Lighting Inc Plumbing & H... | Repairs | A1 COMPASS... | 152.63 |
| Check | 05/20/13 | 1807 | United Helping Hand | Flourescent Light T... | A1 COMPASS... | 518.96 |
| Credit Card Charge | 05/22/13 | 060713 | Crown Door LTD | | AMEX 61001 | 195.00 |
| Check | 07/15/13 | WD | | | A1 COMPASS... | 1,500.00 |
| Check | 08/06/13 | 1913 | Strutton Plumbing co., Inc. | Inv 36977, 37094 | A1 COMPASS... | 350.00 |
| Check | 08/13/13 | 1925 | Rueben Alejandro | | A1 COMPASS... | 830.00 |
| Check | 08/23/13 | 1941 | Cash | | A1 COMPASS... | 1,500.00 |
| Credit Card Charge | 08/29/13 | 091013 | ABC Pest Pool & Lawn | | AMEX 76008 | 150.75 |
| Check | 08/30/13 | WD | | | A1 COMPASS... | 1,500.00 |
| Check | 08/31/13 | 1956 | Willowbrook AC | Inv 4570 | A1 COMPASS... | 362.00 |
| Credit Card Charge | 10/01/13 | 100913 | Home Depot | | AMEX 61001 | 52.39 |
| Check | 10/14/13 | 2005 | Nelson Suarez, Sr. - Exp. | Light Bulbs | A1 COMPASS... | 18.34 |
| Check | 10/15/13 | 2013 | Rueben Alejandro | | A1 COMPASS... | 265.00 |
| Check | 11/01/13 | 2028 | Willowbrook AC | Inv 4483 | A1 COMPASS... | 330.00 |
| Credit Card Charge | 11/24/13 | 120913 | Bering Home Center | | AMEX 61001 | 526.95 |
| Check | 11/25/13 | 2072 | Mauncio Vega | Contract Yardman | A1 COMPASS... | 40.00 |
| Credit Card Charge | 11/27/13 | 121113 | ABC Home & Commercial | | AMEX 76008 | 150.75 |
| Check | 12/15/13 | 2112 | Elevator Technical Service | 23510 | A1 COMPASS... | 250.00 |
| Check | 12/15/13 | 2114 | Willowbrook AC | Inv 4715 | A1 COMPASS... | 1,090.00 |
| Credit Card Charge | 12/19/13 | 010914 | Crown Door LTD | | AMEX 76008 | 145.00 |
| Credit Card Charge | 12/19/13 | 010914 | Crown Door LTD | | AMEX 61001 | 2,400.00 |
| Check | 12/20/13 | WD | | | A1 COMPASS... | 1,213.47 |
| Total Maint & Repairs/Bldg & Grounds | | | | | | 17,819.49 |
| **TOTAL** | | | | | | 17,819.49 |

AR 000105

 Window on State Government     **Glenn Hegar** Texas Comptroller of Public Accounts

<u>Taxable Entity Search Results</u>
<u>Taxable Entity Search</u>

# Officers and Directors

NISAL CORPORATION
Report Year: 2014

<u>Return to: Taxable Entity Search Results</u>

Officer and director information on this site is obtained from the most recent Public Information Report (PIR) processed by the Secretary of State (SOS). PIRs filed with annual franchise tax reports are forwarded to the SOS. After processing, the SOS sends the Comptroller an electronic copy of the information, which is displayed on this web site. The information will be updated as changes are received from the SOS.

You may order a copy of a Public Information Report from open.records@cpa.state.tx.us or Comptroller of Public Accounts, Open Government Division, PO Box 13528, Austin, Texas 78711.

| Title | Name and Address |
|---|---|
| *PRESIDENT* | **BRETT L GARNER** <br> 5718 BELLAIRE BLVD <br> HOUSTON , TX 77081 |
| *DIRECTOR* | **BRETT L GARNER** <br> 5718 BELLAIRE BLVD <br> HOUSTON , TX 77081 |
| *CHIEF OPER* | **WILLIAM H HICKS** <br> 5718 BELLAIRE BLVD <br> HOUSTON , TX 77081 |
| *DIRECTOR* | **WILLIAM H HICKS** <br> 5718 BELLAIRE BLVD <br> HOUSTON , TX 77081 |

texas.gov | Statewide Search from the Texas State Library | State Link Policy | Texas Homeland Security

**Glenn Hegar**, Texas Comptroller • Window on State Government • Contact Us
Privacy and Security Policy | Accessibility Policy | Link Policy | Public Information Act | Compact with Texans

**AR 000106**

 **Window on State Government**      **Glenn Hegar** Texas Comptroller of Public Accounts



<u>Taxable Entity Search Results</u>
<u>Taxable Entity Search</u>

# Officers and Directors

## PROVIDIAN HOLDINGS, INC.
### Report Year: 2014

<u>Return to: Taxable Entity Search Results</u>

Officer and director information on this site is obtained from the most recent Public Information Report (PIR) processed by the Secretary of State (SOS). PIRs filed with annual franchise tax reports are forwarded to the SOS. After processing, the SOS sends the Comptroller an electronic copy of the information, which is displayed on this web site. The information will be updated as changes are received from the SOS.

You may order a copy of a Public Information Report from <u>open.records@cpa.state.tx.us</u> or Comptroller of Public Accounts, Open Government Division, PO Box 13528, Austin, Texas 78711.

| Title | Name and Address |
|-------|------------------|
| *PRESIDENT* | **KHYATI UNDAVIA**<br>2918 SAN JACINTO<br>HOUSTON , TX 77004 |

texas.gov | Statewide Search from the Texas State Library | State Link Policy | Texas Homeland Security

**Glenn Hegar**, Texas Comptroller • Window on State Government • Contact Us
Privacy and Security Policy | Accessibility Policy | Link Policy | Public Information Act | Compact with Texans

**AR 000107**

The ACORD name and logo are registered marks of ACORD

# CERTIFICATE OF LIABILITY INSURANCE

**ACORD**

| DATE (MM/DD/YYYY) |
| --- |
| 08/06/2009 |

| PRODUCER 713.528.1616    FAX 713.529.4957 | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | |
| --- | --- | --- |
| John S. Dunn & Son Inc<br>2200 W Alabama #200<br>P O Box 980608<br>Houston, TX 77098 | | |
| | INSURERS AFFORDING COVERAGE | NAIC # |
| INSURED Avant Medical Group, PA<br>dba Allied Medical Centers<br>5718 Bellaire Blvd.<br>Houston, TX 77081 | INSURER A: Assurance Company of America | |
| | INSURER B: | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | LIMITS | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| A | | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS MADE [X] OCCUR | PPS40825276 | 07/08/2009 | 07/08/2010 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER<br>POLICY [ ] PROJECT [ ] LOC | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | **AUTOMOBILE LIABILITY**<br>ANY AUTO<br>ALL OWNED AUTOS<br>SCHEDULED AUTOS<br>HIRED AUTOS<br>NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY**<br>ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN AUTO ONLY: EA ACC | $ |
| | | | | | | AGG | $ |
| | | **EXCESS / UMBRELLA LIABILITY**<br>OCCUR [ ] CLAIMS MADE<br>DEDUCTIBLE<br>RETENTION $ | | | | EACH OCCURRENCE | $ |
| | | | | | | AGGREGATE | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? Y/N<br>(Mandatory in NH)<br>If yes, describe under SPECIAL PROVISIONS below | | | | WC STATU-TORY LIMITS [ ] OTHER | |
| | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | | OTHER | | | | | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS
Sterling Practice Management Inc. is Named Additional Insured as respects General Liability.

| CERTIFICATE HOLDER | CANCELLATION |
| --- | --- |
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __10__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. |
| Sterling Practice Management Inc.<br>5718 Bellaire Blvd., Suite 100<br>Houston, TX 77004 | AUTHORIZED REPRESENTATIVE<br>20-JB/SUSANA    *Gerald F. Bubba* |

ACORD 25 (2009/01)

© 1988-2009 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

**AR 000108**

**EXHIBIT J**

3496

**AVANT MEDICAL GROUP, P.A.**
11430 I-10 EAST FREEWAY
HOUSTON, TX 77029

WHITNEY NATIONAL BANK
HOUSTON, TEXAS
35-96-1130

8/3/09

PAY TO THE
ORDER OF _Providian Holdings, Inc._____ $2,000.00

_two thousand dollars + no/100 ——_____ DOLLARS

MEMO _Medspa Rent_

Brett L. Gar
AUTHORIZED SIGNATURE

⑈003496⑈ ⑉113000968⑈ 750348895⑈

NO. _____

| | |
|---|---|
| STERLING PRACTICE MANAGEMENT, LLC | IN COUNTY COURT AT LAW |
| NISAL CORPORATION | |
| Plaintiff | |

vs.                                                    NO. _____

PROVIDIAN HOLDINGS, INC.
                Defendant                    HARRIS COUNTY, TEXAS

RECEIVED 2013 SEP -5 AM 11:19

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE:

Sterling Practice Management, LLC (hereinafter Sterling) and Nisal Corporation

(hereinafter Nisal) appear and file Plaintiffs' Original Petition against Defendant Providian

Holdings, Inc., and in support would show the court the following:

1. This is a Level One Discovery Control Plan case.

2. Plaintiffs are entities doing business in the State of Texas. Defendant Providian

   Holdings, Inc. is a corporation doing business in the State of Texas and can be served

   through its agent for service of process, Khyati Undavia, 2918 San Jacinto, Houston,

   Texas 77004. Plaintiffs seek damages within the jurisdictional limits of the Court. The

   Court has subject matter jurisdiction and venue is proper.

### FACTUAL BACKGROUND

3. Sterling entered into a lease agreement with Defendant. Pursuant to the terms of the

   lease, Sterling made a security deposit in the amount of $2000.00. Upon termination of

   the lease and sixty days after Sterling provided a forwarding address, Defendant has

   refused to refund the security deposit to Sterling. Defendant has acted in bad faith.

   Defendant is liable to Sterling for the full security deposit of $2000.00, plus a statutory

**AR 000110**

**EXHIBIT L**

penalty of $100.00, plus an additional statutory penalty of $4000.00, plus reasonable attorney's fees. Defendant has acted in bad faith by not providing a written description and itemized list of damages and charges, if any, and thus has forfeited its right to withhold a portion of the security deposit for such damages and charges.

4. Nisal entered into a lease agreement with Defendant. Pursuant to the terms of the lease, Sterling made a security deposit in the amount of $3600.00. Upon termination of the lease and sixty days after Nisal provided a forwarding address, Defendant has refused to refund the security deposit to Nisal. Defendant has acted in bad faith. Defendant is liable to Sterling for the full security deposit of $3600.00, plus a statutory penalty of $100.00, plus an additional statutory penalty of $7200.00, plus reasonable attorney's fees. Defendant has acted in bad faith by not providing a written description and itemized list of damages and charges, if any, and thus has forfeited its right to withhold a portion of the security deposit for such damages and charges.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendant Providian Holdings, Inc. be cited to appear and that judgment be taken against it for all damages suffered by Sterling in the amount of $6100.00 (consisting of the security deposit due and owing and all statutory penalties), plus reasonable attorney's fees, and that judgment be taken against it for all damages suffered by Nisal in the amount of $10,900.00 (consisting of the security deposit due and owing and all statutory penalties), plus reasonable attorney's fees, plus all costs of court, plus and any all further relief Plaintiffs may be entitled to.

**AR 000111**

Respectfully submitted,

PHILLIP BRANTLEY AND ASSOC., P.C.

Phillip Brantley
SBN 02899727
Arena Tower II
7324 Southwest Freeway, Suite 1020
Houston, Texas 77074
(713) 270-4053 phone
(713) 270-0682 facsimile
ATTORNEY FOR PLAINTIFF

AR 000112

 Window on State Government     **Glenn Hegar** Texas Comptroller of Public Accounts

# Officers and Directors

### STERLING PRACTICE MANAGEMENT, L.L.C.
### Report Year: 2014

Return to: Taxable Entity Search Results

Officer and director information on this site is obtained from the most recent Public Information Report (PIR) processed by the Secretary of State (SOS). PIRs filed with annual franchise tax reports are forwarded to the SOS. After processing, the SOS sends the Comptroller an electronic copy of the information, which is displayed on this web site. The information will be updated as changes are received from the SOS.

You may order a copy of a Public Information Report from open.records@cpa.state.tx.us or Comptroller of Public Accounts, Open Government Division, PO Box 13528, Austin, Texas 78711.

| Title | Name and Address |
|---|---|
| *MANAGER* | **BRETT L GARNER** <br> 5903 SOLAR POINT LN <br> HOUSTON , TX 77041 |
| *MEMBER* | **SHAHID H SYED** <br><br> , |
| *MANAGER* | **WILLIAM H HICKS** <br> 5718 BELLAIRE BLVD <br> HOUSTON , TX 77081 |

texas.gov | Statewide Search from the Texas State Library | State Link Policy | Texas Homeland Security

**Glenn Hegar**, Texas Comptroller • Window on State Government • Contact Us
Privacy and Security Policy | Accessibility Policy | Link Policy | Public Information Act | Compact with Texans

**AR 000113**

**KEITH CHUNN, JR.**
Attorney at Law
1535 West Loop South, Suite 365
Houston, Texas 77027
Tel: 713-621-6616
Fax: 713-621-5553
Cell: 713-824-6860
Email: kchunn@msn.com

SENT CERTIFIED MAIL RETURN RECEIPT REQUESTED

February 25, 2013

Nisal Corporation
2918 San Jacinto St., Suite 200
Houston, Texas 77004

Attention: Brett Garner: bgarner5@aol.com

RE: Lease of Suite 200 containing 4,700 rentable square feet in the building as 2918
San Jacinto Street in Houston, Texas, which expired February 29, 2012; and Lease
of Suite 200A containing 2,154 rentable square feet in the building at 2918 San Jacinto
Street in Houston, Texas, which expired January 31, 2012

Gentlemen:

Your lease of Suite 200 referred to above expired on February 29, 2012 and your lease of Suite 200A referred to above expired on January 31, 2012. Since the leases expired, the rental of the spaces known as "Suite 200" and "Suite 200A" have been on a month to month basis and cancelable by you or the landlord on thirty (30) days notice.

NOTICE is hereby given that Providian Holdings, Inc., your landlord, and Lessor of both Suite 200 and Suite 200A in the building at 2918 San Jacinto Street in Houston, Texas, has elected to terminate both the lease of Suite 200 and the lease of Suite 200A effective March 31, 2013.

DEMAND is hereby made that, on or before midnight March 31, 2013, you **vacate the premises** known as Suite 200 and Suite 200A in the building at 2918 San Jacinto Street, Houston, Texas, and also all other parts of the building and parking lot where you may have stored property or used on an occasional basis. The Landlord wants the premises for its own use and benefit.

Sincerely,

Keith Chunn, Jr.

**AR 000114**

**EXHIBIT N**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Brett Garner
Nisal Corporation
2918 San Jacinto,
Suite 200
Houston, TX 77004

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7099 3400 0009 3287 5127

PS Form 3811, February 2004    Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Brett L. Garner,
Registered Agent
Nisal Corporation
5718 Bellaire Blvd
Houston, TX 77081

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7007 3020 0003 3177 1164

102595-02-M-

**EXHIBIT "N"**

Domestic Return Receipt

AR 000115

| AVANT MEDICAL GROUP, P.A. | § | IN THE DISTRICT COURT OF |
| d/b/a ALLIED MEDICAL CENTERS | § | |
| and INTERVENTIONAL SPINE | § | |
| ASSOCIATES, | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| KHYATI MOHAMED UNDAVIA  and | § | |
| MINU RX, LTD., | § | |
| | § | |
| *Defendants* | § | 152ND JUDICIAL DISTRICT |

---

**DECLARATION OF ASHISH MAHENDRU
IN SUPPORT OF ATTORNEY'S FEES**

---

1. I, Ashish Mahendru, am of sound mind and am over the age of twenty-one. My date of birth is September 1, 1971, and my address is 639 Heights Blvd., Houston, Texas. I declare under penalty of perjury that the foregoing is within my personal knowledge and is true and correct.

2. I am one of the attorneys of record for Defendants and Counter-Plaintiffs.

3. I am licensed to practice in the State of Texas and Commonwealth of Massachusetts. I am admitted to practice before the Western District of Texas, Southern District of Texas, and the United States District Court for the District of Massachusetts along with the state courts of Texas and Massachusetts.

4. I am a 1996 graduate from the University of Texas School of Law. I am 1993 graduate from the University of Texas at Austin with a major in Plan II, the Honors Liberal Arts Program.

5. I currently practice law in Houston, Texas where I founded my firm in 2001. Prior to the establishment of Mahendru, PC, I was an associate trial attorney in Boston, Massachusetts with the law firm of Lucash, Gesmer & Updegrove. Prior to my time in Boston, I was an associate trial attorney

1

AR 000116

with the firms of Thompson, Coe, Cousins & Irons and Davis & Wilkerson (1996-2000), which are both located in Austin, Texas.

6. I have previously been qualified as an attorney's fees expert and have testified on the subject in jury trial multiple times.

7. My opinions on the fees incurred by Defendants and Counter-Plaintiffs by the work performed by members of my firm is based on the relevant case law and on the eight factors courts look to in determining the appropriate amount of fee:

    a. the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

    b. the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

    c. the fee customarily charged in the locality for similar legal services;

    d. the amount involved and the results obtained;

    e. the time limitations imposed by the client or by the circumstances;

    f. the nature and length of the professional relationship with the client;

    g. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

    h. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

8. Members of my firm and I have performed legal services in preparing a Motion for Summary Judgment on Plaintiffs' affirmative claims and Counter-Plaintiffs Counter-Claims. This includes researching, drafting, conferring with the client, and time to attend the hearing on the motion.

9. The billing rate for members of my firm is as follows:

2

AR 000117

|   | a. Ashish Mahendru | $450/hr |
|---|---|---|
|   | b. Darren Braun | $225/hr |
|   | c. Susan Farer | $175/hr |

Based on the education, experience, and background of these individuals and my experience and knowledge of the rates charged by professionals in the Houston, Harris County, Texas geographic region, the rates charged by members of my firm are reasonable and customary in the Houston, Harris County, Texas region.

10. Darren Braun received his bachelor of arts degree from Pennsylvania State University in 2008. In 2010, he began law school at South Texas College of Law where he attained a ranking within the top 5% of the class. In 2011, he transferred to University of Houston Law School, where he finished with a 3.73 GPA (top 4%) and received the Houston Real Estate Bar Scholarship award for outstanding academic achievement in real estate law coursework. He received dean's list honors every semester of law school. He has been a licensed attorney in Texas since 2013. His practice includes, but it not limited to, commercial litigation matters, temporary restraining orders, injunctions, trade secrets, breach of contract, fraud, fiduciary duty, and related practice areas.

11. Susan Farber is a legal assistant that worked on this matter for my firm. She is an experienced legal assistant with over seventeen years of practice in her field of commercial litigation matters.

12. The following is time associated with each attorney and legal assistant working on this matter in preparing the motion for summary judgment:

|   | a. Ashish Mahendru | 6.70 hours | $3,015.00 |
|---|---|---|---|
|   | b. Darren Braun | 32.90 hours | $7,402.50 |
|   | c. Susan Farber | 4.80 hours | $840.00 |

13. The total attorney's fees incurred in responding, therefore, are $11,257.50.

14. Based on the factors courts consider in awarding fees, my experience litigating similar cases, and my knowledge of the usual and customary rates charged by other attorneys and legal professionals in Houston, Harris County, Texas, it is my opinion that my firm's attorney's fees in the amount of **$11,257.50** are reasonable and necessary.

3

**AR 000118**

Signed on this 30th day of January, 2015, in Harris County, Texas.

 

 

Ashish Mahendru

4

AR 000119



# Franchise Tax Account Status

### As of: 01/30/2015 04:20:01 PM

## This Page is Not Sufficient for Filings with the Secretary of State

### AVANT MEDICAL GROUP, P.A.

| | |
|---|---|
| Texas Taxpayer Number | 32037616516 |
| Mailing Address | 1120 DENNIS ST<br>HOUSTON, TX 77004-1102 |
| Right to Transact Business in Texas | ACTIVE |
| State of Formation | TX |
| Effective SOS Registration Date | 07/14/2006 |
| Texas SOS File Number | 0800680964 |
| Registered Agent Name | STERLING PRACTICE MANAGEMENT, L.L.C. |
| Registered Office Street Address | 1120 DENNIS ST<br>HOUSTON, TX 77004 |

**EXHIBIT P**            **AR 000120**

| | | |
|---|---|---|
| AVANT MEDICAL GROUP, P.A. d/b/a | § | IN THE DISTRICT COURT OF |
| ALLIED MEDICAL CENTERS and | § | |
| INTERVENTIONAL SPINE | § | |
| ASSOCIATES, | § | |
| | § | |
| **Plaintiffs** | § | HARRIS COUNTY, TEXAS |
| | § | |
| VS. | § | |
| | § | |
| KHYATI MOHAMED UNDAVIA and | § | |
| MINU RX, LTD. | § | 152nd JUDICIAL DISTRICT |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, AVANT MEDICAL GROUP, P.A. d/b/a INTERVENTIONAL SPINE ASSOCIATES, BRETT L. GARNER d/b/a ALLIED MEDICAL CENTERS, and NISAL CORP. d/b/a QUALCARE REHABILITATION ("Plaintiffs"), and file this Response to Defendant's Motion for Summary Judgment, and in support thereof would respectfully show the Court as follows:

### I. PARTIES

Plaintiffs are AVANT MEDICAL GROUP, P.A. d/b/a INTERVENTIONAL SPINE ASSOCIATES, BRETT L. GARNER d/b/a ALLIED MEDICAL CENTERS, and NISAL CORP. d/b/a QUALCARE REHABILITATIO.

1. Defendants are KHYATI MOHAMED UNDAVIA, MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY, MINU GP, LLC, and COMPASS BANK.

## II. FACTUAL BACKGROUND

2. Plaintiff Nisal Corp. ("Nisal") entered into a commercial lease agreement with Providian Holdings, LLC (Providian) to rent the top floor of a building owned by Providian. The commercial lease was in effect from 2009 through March 2013. *See Exhibit 1.*

3. While Plaintiffs were occupants of the Building, all mail was delivered to the Building's main address, where it would be collected by Defendant KHYATI MOHAMED UNDAVIA ("Undavia") and distributed by her to the other tenants. *See Exhibit 1.* Defendant Undavia prohibited the Plaintiffs from keeping their own mailboxes at the building. *See Exhibit 1.* Because the checks were delivered to Plaintiffs' mailing address, Plaintiffs were in possession of the checks and have a possessory interest in them. *See Exhibit 1.*

4. In 2013, Providian Holdings, LLC terminated the lease with Nisal. Nisal and Sterling then sued Providian for failing to return a security deposit in Cause No. 1036848, *Sterling Practice Management, LLC and Nisal Corporation v. Providian Holdings, Inc.*, in the County Civil Court at Law No. 4, Harris County, Texas (the "Prior Lawsuit"), filed on September 5, 2013. *See Exhibit 4.* That lawsuit ended in a settlement release pertaining to the claims asserted in the Prior Lawsuit by Nisal and Sterling (the "Release"). *See Exhibit 5.* The only parties to the settlement agreement were Nisal, Sterling, and Providian. *See Exhibit 5.*

5. Plaintiffs recently discovered that during their occupancy at the building, Defendant Undavia would frequently open the Plaintiffs' mail, take checks made payable to the Plaintiffs, endorse the checks with the name and Compass Bank account information for MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY, (Minu RX) and deposit them into at least two bank accounts at Compass Bank belonging to Minu RX. *See Exhibits 1 & 3.* Plaintiffs were only able to discover this in July 2012 because Plaintiffs frequently provide medical services to

personal injury victims and often have agreements to suspend collection efforts for extended periods of time while the patients attempt to obtain compensation for the third parties responsible for their injuries. *See Exhibit 1.* Thus far, Plaintiffs have identified over $40,000.00 in checks that were stolen by the Defendants in the above-described manner, and expects to discover more as investigation and discovery in this case progresses. *See Exhibit 3.* It is uncertain at this time if additional checks were endorsed and deposited or cashed by other entities.

## III. OBJECTION TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE

6. Plaintiffs object to Exhibit B to Defendants' Motion for Summary Judgment on the basis that the lease agreement is unsigned, and is therefore not relevant and is not evidence that Sterling actually entered into the agreement. Alternatively, Plaintiffs object on the basis that the lease is not the best evidence of any lease agreement that may have existed between Providian and Sterling.

7. Plaintiffs object to Exhibits F, J, and K to Defendants' Motion for Summary Judgment because they contain hearsay. Although Defendant Undavia attempts to lay the predicate for these documents under the business records exception, these documents are clearly not created by Defendant Undavia or her employees or representatives, and are therefore not based on the employees or representatives' knowledge of the statements contained therein. *See In re EAK,* 192 S.W.3d 133, 142 (Tex. App.—Houston[14th Dist.] 2006). Under Texas law, a document authored or created by a third party may be admissible as business records of a different business if: (a) the document is incorporated and kept in the course of the testifying witness's business; (b) that business typically relies upon the accuracy of the contents of the document; and (c) the circumstances otherwise indicate the trustworthiness of the document. *Simien v. Unifund CCR Partners,* 321 S.W.3d 235, 240-41 (Tex. App.—Houston[1st Dist.] 2010, no pet.) (citing *Bell v.*

*State*, 176 S.W.3d 90, 92 (Tex. App.—Houston[1st Dist.] 2004, no pet.)). Defendant Undavia failed to include such testimony, and as such Defendant Undavia's predicate with respect to Exhibits F, J, and K to Defendants' Motion for Summary Judgment in defective and not sufficient to prove the documents fall under the business records exception of Tex. R. Evid. 803(6). For this reason, Exhibits F, J, and K to Defendants' Motion for Summary Judgment should be struck.

8. Plaintiffs object to Exhibit E to Defendants' Motion for Summary Judgment. The court should deny Defendants' Motion for Summary Judgment because the Declaration of Khayati Undavia attached as Exhibit E to Defendants' Motion is defective and does not present competent summary judgment evidence. Tex. R. Civ. P. 166a(f). More specifically, Plaintiffs object to the Declaration of Khayati Undavia on the following bases:

9. **The Declaration of Khayati Undavia contains statements that are not based on personal knowledge.** Tex. R. Civ. P. 166a(f); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *see Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 761-62 (Tex. 1988); *Rizkallah v. Conner*, 952 S.W.2d 580, 584-85 (Tex. App. —Houston[1st Dist.] 1997, no writ). In paragraph 13 of the Declaration of Khayati Undavia, she states that Plaintiffs Nisal Corp. and Sterling Practice Management, LLC "did not have any actual operations in the office space," and that "Allied Medical Centers and Avant Medical Group were the entities that had operations in the leased space." She does not any factual bases for this conclusion. Defendant Undavia does not claim that she was involved in the operation of or has any familiarity with the operations of those entities. Because Defendant Undavia does not offer any support for these statements, they are **merely factual conclusions with no underlying facts to support the conclusions and unsubstantiated opinions of the affiant.** *Haynes v. City of Beaumont*, 35 S.W.3d 166, 178

(Tex. App. —Texarkana 2000, no pet.); *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App. —Houston[1st Dist.] 1997, no writ); *Harley-Davidson Motor Co. v. Young*, 720 S.W.2d 211, 216 (Tex. App. —Houston[14th Dist.] 1986, no writ). Because those statements are not competent summary judgment evidence, paragraph 13 of the Declaration of Khayati Undavia should be struck.

10. **The Declaration of Khayati Undavia contains statements that are merely legal conclusions.** *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App. —Houston[1st Dist.] 1997, no writ). Defendant Undavia states in paragraph 14 of her Declaration that "[f]or all matters concerning the lease, I communicated with Brett Garner in his capacity has [sic] a representative of not only Sterling and Nisal, but also Avant and Allied." The capacity in which Dr. Garner was acting at any specific time is a legal conclusion, and Defendant Undavia does not state any facts which would support this conclusion. Because Defendant Undavia does not offer any facts to support these conclusions, **the statements are also merely unsubstantiated opinions of the affiant.** *See Rizkallah v. Conner*, 952 S.W.2d 580, 586 (Tex. App. —Houston[1st Dist.] 1997, no writ); *Harley-Davidson Motor Co. v. Young*, 720 S.W.2d 211, 216 (Tex. App. —Houston[14th Dist.] 1986, no writ). Because those statements are not competent summary judgment evidence, paragraph 14 of the Declaration of Khayati Undavia should be struck.

11. **The Declaration of Khayati Undavia contains statements that are based on hearsay.** *Fidelity & Cas. Co. v. Burts Bros.*, 744 S.W.2d 219, 224 (Tex. App.—Houston[1st Dist.] 1987, writ denied); see *In re J.A.M.*, 945 S.W.2d 320, 322 (Tex. App.—San Antonio 1997, no writ). Paragraphs 11 and 14 contain statements about the contents of documents which are inadmissible hearsay because Defendant Undavia has failed to prove the documents fall under the business

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE
PAGE 5

AR 000125

records exception of Tex. R. Evid. 803(6). Because those statements are not competent summary judgment evidence, paragraphs 11 and 14 of the Declaration of Khayati Undavia should be struck.

## IV. SUMMARY JUDGMENT EVIDENCE

12. Plaintiffs provide all parties with the notice to use and attach the following summary judgment evidence and incorporate all such evidence herein for all purposes in accordance with Tex. R. Civ. P. 166a(d):

    a. Affidavit of Brett Garner, attached hereto as Exhibit 1;

    b. Affidavit of Carmen Manzo, attached hereto as Exhibit 2;

    c. Cancelled Checks, attached hereto as Exhibit 3;

    d. Original Petition from Cause No. 1036848, *Sterling Practice Management, LLC and Nisal Corporation v. Providian Holdings, Inc.*, in the County Civil Court at Law No. 4, Harris County, Texas, attached hereto as Exhibit 4;

    e. Mutual Release, attached hereto as Exhibit 5;

    f. Assumed name filing for Allied Medical Centers, attached hereto as Exhibit 6; and

    g. Public Information Report for Avant Medical group, P.A., attached hereto as Exhibit 7.

## V. STANDARD OF REVIEW

13. Defendants have asserted a motion for summary judgment under Tex. R. Civ. P. 166a. Under Tex. R. Civ. P. 166a, a summary judgment is only proper for a defendant if its summary judgment proof establishes, as a matter of law, there is no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *SeeGoldberg v. United States Shoe Corp.*, 775 S.W.2d 751, 752 (Tex. App.–Houston [1st Dist.] 1989, writ denied). A defendant is entitled to summary judgment on a plaintiff's cause of action only if the defendant can disprove at least one element of the cause of action as a matter of law. *Sw. Elec.*

*Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *seeTello v. Bank One, N.A.*, 218 S.W.3d 109, 113 (Tex. App.—Houston [14th Dist.] 2007, no pet.). In reviewing the granting of a motion for summary judgment, the court should consider that all proof which is favorable to the non-movant is true. *SeeMMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); see also *Goldberg*, 775 S.W.2d at 752.

## VI. SUMMARY OF THE ARGUMENT

14. Defendants are not entitled to summary judgment for the following reasons:

    a. The Release cited by Defendants does not concern the subject matter or claims asserted in this lawsuit and therefore does not serve to bar Plaintiffs' claims (see pgs. 8-10);

    b. The parties to the Release are not the same as the parties to this action, and Defendants' "agency" theory lacks legal basis and factual support (see pgs. 11-16);

    c. As the claims and parties to this lawsuit are different than in the previous lawsuit, the doctrine of res judicata does not apply and does not bar Plaintiffs' claims (see pgs. 16-17);

    d. Plaintiffs have pled a viable cause of action for conversion (see pg. 18);

    e. Plaintiffs' claims are not barred by the applicable statutes of limitations or, alternatively, Plaintiffs' inability to discover the Defendants' wrongful actions tolls any applicable statute of limitations and because Defendants' fraudulent actions concealed the wrongful actions from the Plaintiffs (see pgs. 18-20);

    f. Defendants are not entitled to an award of attorney's fees (see pgs. 20-21).

15. For the above reasons, the Court must deny Defendants' Motion for Summary Judgment.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE
PAGE 7

AR 000127

# VII. ARGUMENTS & AUTHORITIES

## A. THE PLAINTIFFS' CLAIMS ARE NOT WITHIN THE SUBJECT MATTER OF THE RELEASE

16. Because the scope of the claims covered by the Release is a threshold issue- i.e. if the claims in the present case were not subject to the Release then the identity of the parties is irrelevant- Plaintiffs address this issue first.

### i. Texas law requires narrow construction of the Release.

17. "In order to effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be released. Even if the claims exist when the release is executed, **any claims not clearly within the subject matter of the release are not discharged.**" *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931 (Tex. 1991) (emphasis added); *see also Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 697-98 (Tex. 2000); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 850 n.7 (Tex. App.--Houston [14th Dist.] 2001, pet. denied). Further, the Texas Supreme Court has explicitly stated that "**general categorical release clauses are narrowly construed.**" *Brady*, 811 S.W.2d at 938; *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984).

### ii. The Release does not mention Plaintiffs' claims.

18. The Release which Defendants seek protection under reads, in relevant part:

> **WHEREAS, STERLING and NISAL** filed suit against PROVIDIAN, No. 1036848, County Civil Court at Law No. 4, Harris County, Texas; and
>
> **WHEREAS, the parties** desire to compromise, settle and provide for the full and final termination of all of the said claims, demands, causes of action and disputes between them arising out of or related to such claims which either party may now have or have had against each other, all without admitting any of the allegations set forth;

19. The Release clearly states that its subject matter is the Prior Lawsuit, and that the parties to the Release intended to discharge "said claims"—the claims asserted in the Prior Lawsuit, which pertained only to the security deposit under the commercial lease. *See Exhibit 5*. This unquestionably shows that when the parties entered into the Release, they were contemplating discharge of the claims asserted in the Prior Lawsuit. The Release has no mention of tort claims, conversion, fraud, or any of the other claims asserted in the present lawsuit. *See Exhibit 5*. The Release, therefore, does not "mention" the claims in the present lawsuit, and therefore the Release did not discharge the Plaintiffs' claims.

20. The Texas Supreme Court has held that releases are to be construes in light of the facts and circumstances surrounding the release. *Brady*, 811 S.W.2d at 939. The Prior Lawsuit did not depend on the same set of facts as the present lawsuit, which was an action solely for the return of a security deposit. Narrowly construing the Release, as Texas law requires, demands that the claims in the present lawsuit not be held within the scope of the Release.

### iii. Defendants have failed to meet their burden on summary judgment.

21. Defendants, for their part, claim that the Release "specifically mentions each claim in this lawsuit." Negation of this claim requires no more than a quick look at any dictionary. "Specific" denotes something that is "precise; definite; [or] explicit." WEBSTER'S NEW WORLD COLLEGE DICTIONARY, 4TH ED. 1376 (2001). Again, the release makes no reference to any claim based on tort, fraud, conversion, theft, breach of fiduciary duty, or any other claim contained in Plaintiffs' live pleading. *See Exhibit 5*. The pleadings in the Prior Lawsuit, which gave rise to the Release, do not contain any mention or reference to any of the factual or legal disputes which for the basis of the present lawsuit. *See Exhibit 4*. Even the case law quoted by the Defendants themselves states that for a claim to be discharged it must be mentioned, and that mentioning

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE
PAGE 9

AR 000129

requires "that the claim being released come within the **express** contemplation of the release provision **when viewed in context of the contract in which the release provision is contained.**" *Stinnett v. Colo. Interstate Gas Co.*, 227 F.3d 247, 254 (5th Cir. 2000) (emphasis added); *Mem'l Med. Ctr. Of E. Tex. v. Keszler*, 943 S.W.2d 433, 435 (Tex. 1997).

22. Defendants further attempt to support their argument by claiming that the commercial leases form the basis of all of the claims in the present lawsuit. This assertion seems to be based on nothing more than the fact that leases existed. None of the Defendants to this action were signatories to the lease. Additionally, and most importantly, none of Plaintiffs' claims require proof of the existence of a lease contract, of a landlord-tenant relationship between the parties, of a breach of the terms of any lease, or any other fact germane to the claims in the Prior Lawsuit. The subject matter of the present lawsuit and the Prior Lawsuit are wholly detached from one another. Plaintiffs' claims would require the same pleading and proof whether or not a landlord-tenant relationship existed. Because the Plaintiffs' claims in the present lawsuit do not concern the same subject matter as the Prior lawsuit, they are not encompassed by the Release and summary judgment must be denied.

### iv. Defendants have failed to meet their burden for summary judgment.

23. Defendants' assertions that the parties "no doubt contemplated the claims in the present lawsuit" is not supported either by a plain reading of the Release or any evidence presented in Defendants' Motion. Because the Release does not mention any of the claims in the present lawsuit, and because the Court must narrowly construe the Release, the Court must find that the Release is not binding on any of the parties with respect to the present lawsuit and summary judgment must be denied.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE.

**AR 000130**

## B. PLAINTIFFS WHO ARE NOT SIGNATORIES
## TO THE RELEASE ARE NOT BOUND BY IT

24. Defendants' arguments as to why all parties to the present action are included in the release are somewhat convoluted. It seems, however, that the gist of the argument is as follows: 1) the Release includes a provision mutually discharging agents of the signatories; 2) various agency relationships exist between the parties; and therefore 3) all Plaintiffs have released all Defendants with respect to all claims in this lawsuit. Of course, as shown above, the claims in this lawsuit are not within the scope of the Release, so the question of what parties are bound by the Release does is effectively meaningless. However, even if this were not the case Defendants have failed to show as a matter of law that the parties to this action are all bound by the Release.

25. The only party to this action that was also a party to the Release is Nisal Corp. d/b/a Qualcare Rehabilitation. *See Exhibit 5.* However, because the claims in this action are not within the scope of the Release, and because the Defendants are not protected by the Release, Nisal is a proper party to this lawsuit and is not barred from asserting its claims. Even if any of Nisal's claims were within the scope of the Release, however, Defendants' wrongful concealment of material facts fraudulently induced Nisal into signing the Release. Defendants' only legal theories as to why the other parties to this action should be bound are based on agency, and based on these theories Defendants' Motion must fail.

### i. Agents are not individually bound by the Release.

26. The first issue is to what extent agents of the signatories to the release are bound. The general rule in Texas is that "signing a contract in a representative capacity does not bind the agent personally to the contract." *Elgohary v. Herrera*, 405 S.W.3d 785, 790-91 (Tex. App.—Houston[1st Dist.] 2013); *see* RESTATEMENT (SECOND) OF AGENCY § 320 ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed

principal does not become a party to the contract."). Assuming an agency relationship exists, Plaintiffs would assert that agents of the signatories to the Release are only bound to its terms to the extent that 1) the claims asserted are within the scope of the release and 2) the claims are the signatory's claims asserted on behalf of the signatory. Defendants cite no authority to support their implicit position that the signatories to the Release had the authority to settle claims belonging to their alleged agents on their behalf. Undersigned counsel can find no authority in Texas law to suggest that a principal may release an agent's independent claims without being granted the authority to do so. Therefore, to the extent the claims in the present lawsuit 1) are not within the scope of the Release, and 2) do not belong to the signatories of the Release, the claims are not barred by the Release.

### ii. Plaintiffs have not asserted claims against Defendants in their capacity as agents of Providian.

27. Similarly, Defendants claim they are protected by the Release because they are agents of Providian Holdings, LLC. However, the only claims against Defendants that could have possibly been released are those against the Defendants in their capacity as agents for Providian. Defendants seem to assert that by virtue of their supposed roles as agents for Providian, they should be free from all liability for of their wrongful actions, whether or not those actions are taken in their individual capacity or their capacity as an agent. In other words, under Defendants' theory the Release encompasses all claims any agent of a signatory may have had against any other agent of any other signatory, irrespective of whether the claims are connected to their duties as agents or the subject matter of the Release. This is contrary to the general rule in Texas that an agent is liable for his own torts. *See, e.g., Williams v. Olivo*, 912 S.W.2d 319 (Tex. App.—San Antonio 1995). Therefore, the Release cannot be said to offer protection to agents of the signatories for wrongful acts performed outside of their capacity as an agent.

### iii. Defendants have failed to prove all parties are bound by the Release.

28. Even the case law cited by Defendants betrays their own argument. Defendants concede that "unless a party is named in a release, he is not released." *McMillen v. Klingensmith*, 467 S.W.2d 193, 197 (Tex. 1971). Defendants further concede that "a tortfeasor can claim the protection of a release **if he is referred to with such descriptive particularity that his connection with the tortious event is not in doubt.**" *Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111, 113-14 (Tex. App.—Houston[14th Dist.] 1991, writ denied). In spite of this, however, Defendants argue that the release applies to all parties to the present case, only one of which is actually named in the Release. *See Exhibit 5*. Again, Defendant tries to claim that all parties to the present lawsuit are "specifically named" in the Release, even though a plain reading of the release shows that this is not the case. *See Exhibit 5*. Thus, the Defendants are not "named with specific particularity," as is required before they can claim protection under the Release. Further, the Release concerns claims entirely different than the claims in the present lawsuit. *See Exhibit2 4 & 5*. For this reason, the Defendants fail the second prong of the test as well even if they have a connection to the conduct which formed the basis of the Prior Lawsuit, this lawsuit alleges claims based on wholly different conduct. Similarly, Defendants cannot claim protection under the Release based on their allegation that all of the parties are "intimately connected" to the lease agreements (a legal standard for which Defendants offer no authority). As previously shown, the existence of a landlord-tenant relationship is not a prerequisite to any of Plaintiffs' claims in this lawsuit, and therefore not relevant to this analysis. For these reasons, Defendants may not claim protection under the Release.

### iv. Defendants have failed to prove that all of the alleged agency relationships exist.

29. The second hurdle Defendants have to clear is proving that the agency relationships they claim actually exist. Under Texas law, **agency will not be presumed**. *Schultz v. Rural/Metro Corp.*, 956 S.W.2d 757, 760 (Tex. App.—Houston [14th Dist.] 1997, no writ). An agent is one authorized by another to transact some business for the principal; the relationship is a consensual one between two parties, by which one party acts on behalf of the other, subject to the other's control. *Jamison v. Nat'l Loan Investors, L.P.*, 4 S.W.3d 465, 468 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Authorization to act and control of the action are the two essential elements of agency. *Gonzales v. Am. Title Co.*, 104 S.W.3d 588, 593 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). **A question of agency is one of fact.** *See Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194 (Tex. App.—Corpus Christi 1984, no writ). Therefore, Defendants have the burden to show as a matter of law that the claimed relationships exist. As will be shown, Defendants have failed to meet that burden.

30. With respect to the Plaintiffs, Defendants allege multiple, and sometimes conflicting, agency relationships. Defendants allege that Dr. Garner is an agent of Nisal, Avant, and Sterling. Plaintiffs would remind the Court that, as previously shown, although an agent may bind the principal, the reverse is not necessarily true, and Defendants have failed to show that this has occurred as a matter of law in this case.

31. Next, Defendants allege that Avant is an agent of both Nisal and Sterling. Defendants base this assertion on what can only be described as a staggering feat of mental gymnastics. Defendants allege that Allied is a fictitious business name of Avant, Allied is also a fictitious business name of Dr. Garner, so therefore Avant is a fictitious business name of Both Allied and Dr. Garner, and is bound by the Release. Undersigned counsel is at a loss to understand how this conclusion is reached. Avant Medical Group, P.A. is a professional organization organized

under the laws of the state of Texas a legal entity independent from the other parties to this lawsuit. *See Exhibit 7.* It cannot be a fictitious business name of its own fictitious business name. Dr. Garner owns the assumed name Allied Medical Centers, which he licenses to Avant Medical Group, P.A. *See Exhibits 1 & 6.* Further, even if Both Dr. Garner and Avant have done business under the name Allied Medical Centers, it does not follow that there is any kind of unity between the two entities. Defendants further allege that Avant paid Sterling's rent, that Avant procured an insurance policy for Avant. The offer no evidence for this other than a single check from 2009 and insurance certificate from 2009 as the basis for this theory. Whether or not these allegations are true, they do not address the two prongs of the agency test—whether Avant had authority to act on behalf of Sterling, and whether Sterling had the right to control Avant's actions. *Gonzales*, 104 S.W.3d at 593. Defendants do not cite any evidence to support their claim that Avant is an agent of Nisal—the claim appears only in a section heading of their Motion. In fact, Defendants also allege the opposite—that Sterling is the registered agent for Avant. Therefore, Defendants have failed to prove that Avant was an agent for either Sterling or Nisal.

### iv. Whether Defendants are agents of Providian is not relevant.

32. Finally, the claim is made that Defendants Undavia and Minu RX, Ltd. are both agents of Providian. So committed are the Defendants to this assertion that they admit that Providian is a sham corporation and nothing more than the alter-ego of Minu RX, Ltd. However, Plaintiffs cannot identify a reason why the existence of such a relationship is in any way relevant. Plaintiffs have not sued Defendants for their actions as agents of Providian. Similarly, Defendants have not pled or otherwise claimed that the wrongful acts at issue in this case were performed in the course of their duties as an agent for Providian. The checks were taken by

Defendant Undavia, at Minu's place of business, and deposited into accounts owned by Minu. *See Exhibit 3.* Therefore, even if Defendants are agents for Providian, they are not protected by the Release because the claims in this lawsuit are based on Defendants' independent conduct and not on the subject matter of the Release.

33. For the above reasons, Defendants have failed to show as a matter of law that all parties to this lawsuit are bound by the terms of the Release, and have failed to show that the claims in this lawsuit were discharged by the Release. Therefore, summary judgment must be denied.

## C. PLAINTIFFS' CLAIMS ARE NOT BARRED BY RES JUDICATA

### i. The present lawsuit does not include the same issues as the Prior Lawsuit.

34. Defendants also ask the Court to grant summary judgment on the basis that the Plaintiffs' claims are barred by the doctrine of res judicata. The Texas Supreme Court has adopted a "transactional" approach to res judicata, under which a subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit. *Barr v. Resolution trust Corp.*, 837 S.W.2d 627 (Tex. 1992). In *Barr*, the Supreme Court stated that this transactional test "is substantially similar to the [transaction or occurrence] rule of compulsory counterclaims." *Id.* The main concern in the transactional test is whether the cases share the same nucleus of operative facts. *Samuel v. Federal Home Loan Mortg. Corp.*, 434 SW 3d 230 (Tex. App.—Houston[1st Dist.] 2014). To determine whether a prior suit and one under review involve the same basic subject matter, we focus on the factual basis of the complaint. *Espeche v. Ritzell*, 123 SW 3d 657 (Tex. App.—Houston[14th Dist.] 2003). In determining whether the facts arose out of a single transaction, courts consider whether the facts are related in time, space, origin, or motivation, and whether they form a convenient unit for trial. *Federal Home Loan Mortg. Corp.*, 434 SW 3d at 230.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE.

AR 000136

That test is not satisfied here. The prior lawsuit concerned itself with one set of facts—the termination of the lease agreements and whether security deposits were improperly withheld. None of the facts necessary to prove the claims in the Prior Lawsuit are necessary to prove the claims in the present lawsuit. *See Exhibit 4.* The wrongful acts forming the basis of this suit occurred on multiple occasions, as opposed to the single event (refusal to return a security deposit) that formed the basis of the Prior lawsuit. *See Exhibit 4.* Therefore the two lawsuits do not share the same operative facts and res judicata does not apply. For this reason, summary judgment must be denied.

### ii. The present lawsuit does not involve the same parties as the Prior Lawsuit.

35. The doctrine of res judicata also requires identity between the parties of the prior and subsequent lawsuits. *Espeche v. Ritzell*, 123 SW 3d at 665. A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity. *Lesikar v. Moon*, No. 14-05-01246-CV, 2014 Tex. App. LEXIS 10041 (Tex. App.—Houston[1st Dist.] Sept. 4, 2014). The only party to this action from the Prior lawsuit is Nisal Corp. All of the other parties, including the Defendants, were not named in the Prior Lawsuit. Further, Plaintiffs have not pleaded any claims which could have been brought against Providian in the Prior Lawsuit, and the Defendants cannot claim that the legal rights being asserted are the same between the two lawsuits. This lawsuit is clearly a different set of claims brought against a different set of Defendants, and res judicata cannot apply. Therefore, Defendants' Motion must be denied.

## D. PLAINTIFFS ARE ENTITLED TO BRING A CLAIM FOR CONVERSION

36. In the present case, various persons and entities wrote checks payable to Plaintiffs, sent the checks by mail to Plaintiffs, and the checks were actually delivered to Plaintiffs' mailing address. *See Exhibit 1.* Because the Defendants obtained the checks at the same location where they were mailed to Plaintiffs, the checks were stolen by the Defendants only after they had been delivered to Plaintiffs' business address by the US Postal Service. *See Exhibit 3.* Therefore, Plaintiffs received delivery of the checks and had, at the very least, constructive possession of the checks and were holders of the checks. Under Texas law, even constructive possession is sufficient to allow the Plaintiffs to prosecute their claim for conversion. *See McAllen Hosp. v. State Farm Mut. Ins. Co.*, 433 S.W.2d 535 (Tex. 2014). Therefore, Plaintiffs are entitled to bring a claim for conversion of the checks.

37. Alternatively, because Plaintiffs were not allowed a separate mailbox, Defendant Undavia agreed to accept the mail and deliver it to the Plaintiffs. *See Exhibit 1.* This is not, as Defendant claims, a modification of the commercial lease, which is silent on the issue of mail collection. This was a separate agreement with Undavia individually and as a representative of Minu RX, which occupied the lower level of the building and received delivery of the mail on behalf of all of the occupants. *See Exhibit 1.* For this reason, Defendant Undavia acted as an agent of the Plaintiffs for the purpose of accepting the mail on their behalf. Thus, Defendants have failed to show that they are entitled to summary judgment as a matter of law, and a fact issue remains to be decided by the jury.

## E. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

38. Under Texas law, an action for conversion does not accrue, and the statute does not begin to run, until 1) the return of the property has been demanded and refused, or 2) facts supporting

the cause of action are discovered. *E.g. Burns v. Rochon,* 190 S.W. 3d 263, 271 (Tex. App.—Houston[1ˢᵗ Dist.] 2006, no pet.). This is because, as shown above, Defendants' possession was initially lawful; Defendants were charged with collecting the mail and delivering it to the Plaintiffs. Because Plaintiffs did not discover the facts supporting their cause of action until shortly before suit was filed, the statute did not begin to run until that time. Thus, summary judgment with respect to Plaintiffs' conversion claim must be denied.

39. Additionally, Plaintiffs frequently provide medical services to personal injury victims and often have agreements to suspend collection efforts for extended periods of time while the patients attempt to obtain compensation for the third parties responsible for their injuries. Plaintiffs are diligent in requesting status updates from their patients and patients' attorneys, however many such requests go unanswered. Therefore, despite their diligence Plaintiffs were not able to discover Defendants' theft until shortly before suit was filed in this case. Under the discovery rule, a plaintiff's cause of action is deferred until it knows, or by exercise of diligence should know, that of facts giving rise to the claim. *See Barker v. Eckman,* 213 S.W.3d 306, 311-312 (Tex. 2006). Because Plaintiff exercised diligence and was not able to discover Defendants' wrongful acts until recently, the statute of limitations on Plaintiffs' claims is tolled and summary judgment should be denied.

40. Finally, the accrual of Plaintiffs' causes of action is deferred by the fact that Defendants fraudulently concealed their theft. Fraudulent concealment occurs when 1) the defendant has knowledge of the wrong, 2) the defendant conceals the wrong through misrepresentation or silence when there is a duty to speak, 3) the defendant has a fixed purpose to conceal the wrong, and 4) the plaintiff reasonably relied on the misrepresentation or silence. *See Shah v. Moss,* 67 S.W.3d 836, 841 (Tex. 2001). In the present case there is an obvious fact issue on all four of

these elements. The evidence clearly shows that Defendants received, stole, and deposited the checks into Minu RX bank accounts. Therefore Defendants had knowledge of the wrongful acts and their purpose was to conceal the theft. Defendants had a duty to speak based on their obligation to deliver all of Plaintiffs' mail to the Plaintiffs, yet the Defendants remained silent. Lastly, Plaintiffs relied on the silence because they were still receiving some checks and because their business practice often includes delayed payment for services. Thus, the statute of limitations is tolled by Defendants fraudulent concealment and summary judgment must be denied.

## F. DEFENDANTS ARE NOT ENTITLED TO ATTORNEY'S FEES

41. Defendants have requested attorney's fees under Tex. Civ. Prac. & Rem. Code §§ 37.009 & 38.001. First, Texas law is clear that Chapter 38 does not provide for the recovery of attorney's fees by a defendant who only defends against a plaintiff's contract claim and presents no contract claim of its own. *American Airlines, Inc. v. Swest, Inc.*, 707 S.W.2d 545, 547 (Tex. 1986) (holding defendant could not recover attorney's fees under predecessor to section 38.001 when defendant presented no contract claim of its own); *Garcia v. National Eligibility Exp., Inc.*, 4 S.W.3d 887, 889 (Tex. App. Houston [1st Dist.] 1999, no pet.). ; *Energen res. MAQ, Inc. v. Dalbosco*, 23 S.W.3d 551, 558 (Tex. App.—Houston[1st Dist.] 2000). Therefore Defendants are not entitled to attorney's fees under Chapter 38.

42. Defendants are also not entitled to attorney's fees on their Chapter 37 claim. First and foremost, Defendants have not sought affirmative summary judgment on their declaratory claim. Further, because they have not pleaded a valid declaratory judgment claim. Release is an affirmative defense under the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 94; *Henry v. Mason* 333 S.W.2d 825 (Tex. App.—Houston[1st Dist.] 2010). This amounts simply to a defense

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE                    PAGE 20

AR 000140

to Plaintiffs' allegations, and are therefore already properly before the Court. When a counterclaim for declaratory relief presents issues that are already before the court as part of the plaintiff's case, the declaratory judgment claim is not properly brought and the plaintiff has an absolute right to a nonsuit. See BHP Petrol. Co., 800 S.W.2d at 838; *General Land Office v. Oxy U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex.1990) (quoting *Weaver v. Jock*, 717 S.W.2d 654, 657 (Tex. App.-Waco 1986, writ ref'd n.r.e.); *Newman Oil Co. v. Alkek*, 614 S.W.2d 653, 655 (Tex.App.-Corpus Christi 1981, writ ref'd n.r.e.). Because Defendant's claim for declaratory relief merely resists Plaintiffs' claims, Plaintiffs have an absolute right to nonsuit of this claim and Defendants are not entitled to an award of attorney's fees. For these reasons, the Court should deny Defendants' request for attorneys' fees.

## VIII. CONCLUSION & PRAYER

Defendants have not and cannot show that they are entitled to judgment as a matter of law. Further, Plaintiffs have easily shown that there is a genuine issue of material fact as to all of Plaintiffs' claims and Defendants' affirmative defenses. For these reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment, and grant Plaintiffs such other and further relief as the Court deems appropriate.

Respectfully submitted,

**MATÍAS J. ADROGUÉ**
PROFESSIONAL LIMITED LIABILITY COMPANY

By: _____
Matías J. Adrogué
Attorney at Law
State Bar No. 24012192
Robert Stephan Kaase
State Bar No. 24083287
1629 West Alabama St.
Houston, Texas 77006
713-425-7270 *Telephone*
713-425-7271 *Facsimile*
service@mjalawyer.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served to all counsel of record in accordance with the Texas Rules of Civil Procedure, on this the 13th day of February, 2015.

_____
Matías J. Adrogué

| | | |
|---|---|---|
| AVANT MEDICAL GROUP, P.A. d/b/a | § | IN THE DISTRICT COURT OF |
| ALLIED MEDICAL CENTERS and | § | |
| INTERVENTIONAL SPINE | § | |
| ASSOCIATES, | § | |
| | § | |
| Plaintiffs | § | HARRIS COUNTY, TEXAS |
| | § | |
| VS. | § | |
| | § | |
| KHYATI MOHAMED UNDAVIA and | § | |
| MINU RX, LTD. | § | 152nd JUDICIAL DISTRICT |

## AFFIDAVIT OF BRETT L. GARNER

BEFORE ME, the undersigned authority, personally appeared Brett L. Garner, known to me to be the person whose name is subscribed herein, and acknowledged to me that:

1. "My name is Brett L. Garner. I am over 18 years of age, of sound mind, and capable of making this affidavit. I have never been convicted of a felony or crime involving moral turpitude. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. "I am a chiropractor licensed to practice in the State of Texas since 1997. I primarily practice as a chiropractor with Nisal Corp. d/b/a Qualcare Rehabilitation, a Texas Corporation which does business as Qualcare Rehabilitation. In 2006, I filed an assumed business name with the Harris County Clerk's office for Allied Medical Centers. The Allied Medical Centers name is licensed by me to Avant Medical Group, P.A. Avant Medical Group, P.A., is a Texas professional association which does business as Allied Medical Centers and Interventional Spine Associates. I am also one of the owners of Sterling Practice Management, LLC, a management service organization which manages the non-medical business dealings of Avant Medical Group, P.A. Avant Medical Group, P.A., d/b/a Allied Medical Centers and d/b/a Interventional Spine Associates provides medical doctor services and is separate from Nisal Corp. d/b/a Qualcare Rehabilitation, which provides chiropractic and rehabilitation services.

EXHIBIT
1

1

**AR 000143**

3. "Avant Medical Group, P.A. was not a party to any lease agreement with Providian Holdings, LLC, was not a party to Cause No. 1036848, *Sterling Practice Management, LLC and Nisal Corporation v. Providian Holdings, Inc.*, in the County Civil Court at Law No. 4, Harris County, Texas, and was not involved in the negotiation or execution of any settlement agreement in that case.

4. "From 2009 through March of 2013, Nisal Corp. maintained its primary business location in a building owned by Providian Holdings, LLC and located at 2918 San Jacinto Street, Houston, Texas 77004 ("the Building"). Nisal Corp. occupied the upper level of the Building and Avant Medical Group, P.A. regularly provided medical services at the location. Sterling Practice Management, LLC performed the billing and collection functions for and Avant Medical Group, P.A. from its location at the Building. Memorial Compounding Pharmacy occupied the lower level. Khyati Undavia was the person with whom I interacted for matters concerning the space leased in the Building.

5. While the Nisal Corp. and Avant Medical Group, P.A. occupied the Building, Ms. Undavia informed me that Nisal Corp. and Avant Medical Group, P.A. were not permitted to have a separate mailbox in the Building. Instead, Ms. Undavia accepted all of the mail for all occupants of the building, separate Nisal Corp. and Avant Medical Group, P.A.'s mail from mail addressed to others in the Building, and deliver Nisal Corp. and Avant Medical Group, P.A.'s mail to the upper level. Nisal Corp. and Avant Medical Group, P.A. permitted Ms. Undavia to perform this function and allowed Ms. Undavia to receive and deliver the mail. Ms. Undavia expressly agreed to properly separate and deliver all of the mail.

6. "As part of my practice, I frequently treat patients who have been injured in accidents and who do not have health insurance. When treating these types of patients, I will often defer collection efforts until the patient is able to recover payment from the person or entity responsible for their injuries. For this reason, my practice will often receive payment from the patient or the patient's attorney several months or years after the patient has completed treatment and been discharged. When treating these types of patients, I send regular requests for status of payment to the patient or the patient's attorney.

2

**AR 000144**

7. "I was first informed that checks addressed and made payable to Avant Medical Group, P.A. d/b/a Allied Medical Centers and d/b/a Interventional Spine Associates had been mailed to the Building and gone missing in July 2012 when I requested status from patients' attorneys and learned that payment had been issued but not received. The copies of checks attached as Exhibit 3 to Plaintiffs' Response to Defendants' Motion for Summary Judgment were received from the attorneys for patients on Nisal Corp. and Avant Medical Group, P.A."

Further affiant sayeth not.

_____
Brett L. Garner

SUBSCRIBED AND SWORN to before me on this the 13th day of February, 2015, to certify which witness my hand and seal of office.

<table>
<tr><td>JENNIFER RODRIGUEZ<br>Notary Public, State of Texas<br>My Commission Expires<br>June 15, 2016</td></tr>
</table>

_____
Notary Public, State of Texas
My Commission expires: 06|15|16

3

AR 000145

## CAUSE NO. 2014-22186

| | | |
|---|---|---|
| AVANT MEDICAL GROUP, P.A. d/b/a<br>ALLIED MEDICAL CENTERS and<br>INTERVENTIONAL SPINE<br>ASSOCIATES, | §<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| Plaintiffs | §<br>§ | HARRIS COUNTY, TEXAS |
| VS. | §<br>§<br>§ | |
| KHYATI MOHAMED UNDAVIA and<br>MINU RX, LTD. | §<br>§ | 152nd JUDICIAL DISTRICT |

### AFFIDAVIT OF CARMEN MANZO

BEFORE ME, the undersigned authority, personally appeared Carmen Manzo, known to me to be the person whose name is subscribed herein, and acknowledged to me that:

1. "My name is Carmen Manzo. I am over 18 years of age, of sound mind, and capable of making this affidavit. I have never been convicted of a felony or crime involving moral turpitude. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am the person in charge of maintaining billing and collection records for Sterling Practice Management, LLC. As part of my duties with Sterling Practice Management, LLC, I am the person in charge of maintaining billing and collection records for Avant Medical Group, P.A. d/b/a Allied Medical Centers and d/b/a Interventional Spine Associates. Exhibit 3 to Plaintiffs' Response to Defendants' Motion for Summary Judgment are checks payable to Avant Medical Group, P.A. or to its assumed business names Allied Medical Centers and Interventional Spine Associates. Checks received from patients and their attorneys are incorporated into the records of Avant Medical Group, P.A. and kept in the course of Avant Medical Group, P.A.'s business, Avant Medical Group, P.A. typically relies upon the accuracy of the contents of such documents, and the documents were placed into Avant Medical Group, P.A.'s business records at or near the time or reasonably soon after the time that they were received. The checks attached as Exhibit 3 to Plaintiffs' Response to Defendants' Motion for Summary Judgment are the originals or exact duplicates of the originals."

**PLAINTIFF'S EXHIBIT**
**2**

**AR 000146**

Further affiant sayeth not.

_Carmen Manzo_
Carmen Manzo

SUBSCRIBED AND SWORN to before me on this the 13th day of February, 2015, to certify which witness my hand and seal of office.

JENNIFER RODRIGUEZ
Notary Public, State of Texas
My Commission Expires
June 15, 2016

_Jennifer Rodriguez_
Notary Public, State of Texas

My Commission expires: 06/15/2016

AR 000147

# ☰ CADENCE
**B A N K**

Account:

Name:  THE DUNK LAW FIRM PLLC
IOLTA
4505 CAROLINE

Address:  4505 CAROLINE
HOUSTON, TX 78701

The image shown below represents an official copy of the original document as processed by our institution



THE DUNK LAW FIRM, PLLC
IOLTA ACCOUNT
4505 CAROLINE ST.
HOUSTON, TX 77004

4970

9/25/2013

PAY TO THE ORDER OF __ Allied Medical Center __ $ ***162.50

One Hundred Sixty-Two and 50/100*************************************** DOLLARS

Allied Medical Center

MEMO

AUTHORIZED SIGNATURE

⑈004970⑈ ⑆113093849⑆

004970    10/17/13    91061040    162.50



20131016008593156221500

20131016008593156221500

PAY TO THE ORDER OF
CADENCE BANK
HOUSTON, TX 77006-6403
1110242
FOR DEPOSIT ONLY
MANDELL LAW
IOLTA ACCOUNT

**EXHIBIT**

**3**

ALL-STATE LEGAL®

AR 000148

# ☰ CADENCE
**BANK**

04/08/14

Account:

Name:     THE DUNK LAW FIRM PLLC
          IOLTA
          4505 CAROLINE
Address:  4505 CAROLINE
          HOUSTON, TX 78701

The image shown below represents an official copy of the original document as processed by our institution



CADENCE BANK                                    **4973**
1-800-XXX-XXXX

THE DUNK LAW FIRM, PLLC
IOLTA ACCOUNT
4505 CAROLINE ST.
HOUSTON, TX 77004                               9/25/2013

PAY TO THE   Interventional Spine Assoc          $ **5,260.75
ORDER OF

Five Thousand Two Hundred Sixty and 75/100***************************************** DOLLARS

Interventional Spine Assoc.

MEMO                                   AUTHORIZED SIGNATURE

⑈004973⑈ ⑈113093845⑈

004973    10/17/13    91061070    5260.75



20131016008593156521500

20131016008593156521500

PAY TO THE ORDER OF
COMPASS BANK
HOUSTON, TX 77056-4303
1130XXXXX
FOR DEPOSIT ONLY
MHU FIELD
LSP ACCOUNT

AR 000149

# ☰ CADENCE

## BANK

04/08/14

Account:

Name:        THE DUNK LAW FIRM PLLC
             IOLTA
             4505 CAROLINE
Address:     4505 CAROLINE
             HOUSTON, TX 78701

The image shown below represents an official copy of the original document as processed by our institution



004981    10/17/13    91061030    125.00



AR 000150

# ☰ CADENCE
## BANK

04/08/14

Account:

Name: THE DUNK LAW FIRM PLLC
IOLTA
4505 CAROLINE

Address: 4505 CAROLINE
HOUSTON, TX 78701

The image shown below represents an official copy of the original document as processed by our institution



THE DUNK LAW FIRM, PLLC
IOLTA ACCOUNT
4505 CAROLINE ST.
HOUSTON, TX 77004

CADENCE BANK

4984

9/26/2013

PAY TO THE ORDER OF Interventional Spine Assoc. $ ***5,816.89

Five Thousand Eight Hundred Sixteen and 89/100******************************************** DOLLARS

Interventional Spine Assoc.

MEMO

AUTHORIZED SIGNATURE

⑈004984⑈ ⑆113093849⑆

004984    10/17/13    91061080    5816.89



20131016008593156621500

20131016008593156621500

PAY TO THE ORDER OF
COMPASS BANK
HOUSTON, TX 77005-4203
1130 10647
FOR DEPOSIT ONLY
MMH RX LTD
LOP ACCOUNT

4AR000151


ReadyImage

**BRIAN LONCAR, P.C.**
**ATTORNEY AT LAW**
P.I. TRUST ACCOUNT
424 SOUTH CESAR CHAVEZ BOULEVARD
DALLAS, TEXAS 75201
(214) 747-0422

✦ Frost National Bank
Member Cullen/Frost Bankers, Inc.
www.frostbank.com

**914006**

8/30/2011

PAY TO THE   Allied Medical Center
ORDER OF

**783.33
$

Seven Hundred Eighty-Three and 33/100****************************************************************************************

**DOLLARS**

Allied Medical Center
2918 San Jacinto
Ste #200
Houston, Tx 77004

VOID AFTER 180 DAYS

MEMO

AUTHORIZED SIGNATURE

⑆914006⑆ ⑈114923222⑈

SECURITY FEATURES · MICRO-PRINT TOP & BOTTOM BORDERS · COLORED PATTERN · MICRO-PRINT SIGNATURE LINE · BLEED THROUGH NUMBERING · MISSING FEATURE INDICATES A COPY

CHECKAMT: 783.33
TRANSCODE:364
ACCOUNTNUM:.
TRROUTNUM:11400009
SERIALNUM:914006
ITEMSEQNUM:91420607
CAPTURDATE:09/21/2011
ITEMID1:808fe1c2
SETID:0000000007104041d4ce0000
ITEMVIEWID:808fe1c4

20110920215000200061

20110920215000200061

PAY TO THE ORDER OF
COMPASS BANK
FOR DEPOSIT ONLY
Mi JR LTD
DBA MEMORIAL CONVENIENT DRUG LTD
DBA MEMORIAL COMPOUNDING PHARMACY
RESERVED
FOR FINANCIAL INSTITUTION USE
FULL AND FINAL PAYMENT

CHECKAMT: 783.33
TRANSCODE:364
ACCOUNTNUM
TRROUTNUM:11400009
SERIALNUM:914006
ITEMSEQNUM:91420607
CAPTURDATE:09/21/2011
ITEMID1:808fe1c2
SETID:0000000007104041d4ce0000
ITEMVIEWID:808fe1c4

AR 000152

ReadyImage

913801

**BRIAN LONCAR, P.C.**
**ATTORNEY AT LAW**
P.I. TRUST ACCOUNT
424 SOUTH CESAR CHAVEZ BOULEVARD
DALLAS, TEXAS 75201
(214) 747-0422

Frost National Bank

8/30/2011

PAY TO THE
ORDER OF     Allied Medical Center

$   **1,781.73

One Thousand Seven Hundred Eighty-One and 73/100************************************************************************************

DOLLARS

Allied Medical Center
2070 FM 1960 W
Houston, Tx 77090

VOID AFTER 180 DAYS

MEMO

AUTHORIZED SIGNATURE

⑈913801⑈ ⑆114923222⑆

SECURITY FEATURES MICRO PRINT TOP & BOTTOM BORDERS COLORED PATTERN · MICRO-PRINT SIGNATURE LINE · BLEED THROUGH NUMBERING · MISSING FEATURE INDICATES A COPY

CHECKAMT: 1781.73
TRANSCODE:364
ACCOUNTNUM
TRROUTNUM:11400009
SERIALNUM:913801
ITEMSEQNUM:91420610
CAPTURDATE:09/21/2011
ITEMID1:808fe2af
SETID:0000000007104041d4ce0000
ITEMVIEWID:808fe2b1

20110920215000200064

20110920215000200064

PAY TO THE ORDER OF
COMPASS BANK
FOR DEPOSIT ONLY
MEMORIAL MRI LTD
DBA MEMORIAL CC IMAGING PHARMACY

AREA BELOW THIS LINE IS RESERVED
FOR FINANCIAL INSTITUTION USE

FULL AND FINAL PAYMENT

CHECKAMT: 1781.73
TRANSCODE:364
ACCOUNTNUM
TRROUTNUM:11400009
SERIALNUM:913801
ITEMSEQNUM:91420610
CAPTURDATE:09/21/2011
ITEMID1:808fe2af
SETID:0000000007104041d4ce0000
ITEMVIEWID:808fe2b1

AR 000153

ReadyImage

**BRIAN LONCAR, P.C.**
**ATTORNEY AT LAW**
P.I. TRUST ACCOUNT
424 SOUTH CESAR CHAVEZ BOULEVARD
DALLAS, TEXAS 75201
(214) 747-0422

**Frost National Bank**

913797

8/30/2011

PAY TO THE
ORDER OF    Allied Medical Center                                          $ **821.75

Eight Hundred Twenty-One and 75/100************************************************************************************    DOLLARS

Allied Medical Center
2918 San Jacinto
Ste 200
Houston, Tx 77004

VOID AFTER 180 DAYS

MEMO

AUTHORIZED SIGNATURE

⑈913797⑈ ⑆114923222⑆

CHECKAMT: 821.75
TRANSCODE:364
ACCOUNTNUM:
TRROUTNUM:11400009
SERIALNUM:913797
ITEMSEQNUM:91420608
CAPTURDATE:09/21/2011
ITEMID1:808fe1c5
SETID:0000000007104041d4ce0000
ITEMVIEWID:808fe1c7

## 20110920215000200062

20110920215000200062

PAY TO THE ORDER OF
COMPASS K
FORT LY
Inc. JF LTD
DBA MEMORIAL CE  JING PHARMACY

AREA BELOW THIS LINE IS RESERVED
FOR FINANCIAL INSTITUTION USE

FULL AND FINAL PAYMENT

CHECKAMT: 821.75
TRANSCODE:364
ACCOUNTNUM:
TRROUTNUM:11400009
SERIALNUM:913797
ITEMSEQNUM:91420608
CAPTURDATE:09/21/2011
ITEMID1:808fe1c5
SETID:0000000007104041d4ce0000
ITEMVIEWID:808fe1c7

AR 000154

ReadyImage

**913766**

**BRIAN LONCAR, P.C.**
**ATTORNEY AT LAW**
P.I. TRUST ACCOUNT
424 SOUTH CESAR CHAVEZ BOULEVARD
DALLAS, TEXAS 75201
(214) 747-0422

Frost National Bank

8/30/2011

PAY TO THE
ORDER OF    Allied Medical Centers

$ **982.50

Nine Hundred Eighty-Two and 50/100************************************************************************************

DOLLARS

Allied Medical Centers
5718 Bellaire Blvd.
Houston, Tx 77081

VOID AFTER 180 DAYS

MEMO

AUTHORIZED SIGNATURE

⑈913766⑈ ⑆114923222⑆

CHECKAMT: 982.50
TRANSCODE:364
ACCOUNTNUM:
TRROUTNUM:11400009
SERIALNUM:913766
ITEMSEQNUM:91420609
CAPTURDATE:09/21/2011
ITEMID1:808fe2ac
SETID:0000000007104041d4ce0000
ITEMVIEWID:808fe2ae

**20110920215000200063**

20110920215000200063

PAY TO THE ORDER OF
COMPASS BANK
FOR ... ONLY
DBA MEMORIAL CC ... ING PHARMACY

AREA BELOW THIS LINE IS RESERVED
FOR FINANCIAL INSTITUTION USE

FULL AND FINAL PAYMENT

CHECKAMT: 982.50
TRANSCODE:364
ACCOUNTNUM:
TRROUTNUM:11400009
SERIALNUM:913766
ITEMSEQNUM:91420609
CAPTURDATE:09/21/2011
ITEMID1:808fe2ac
SETID:0000000007104041d4ce0000
ITEMVIEWID:808fe2ae

**AR 000155**

**1036848    C.C.C.L. # 4**

NO. _____

| | |
|---|---|
| STERLING PRACTICE MANAGEMENT, LLC | IN COUNTY COURT AT LAW |
| NISAL CORPORATION | |
|    Plaintiff | |
| | |
| vs. | NO. _____ |
| | |
| PROVIDIAN HOLDINGS, INC. | |
|    Defendant | HARRIS COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE:

Sterling Practice Management, LLC (hereinafter Sterling) and Nisal Corporation

(hereinafter Nisal) appear and file Plaintiffs' Original Petition against Defendant Providian

Holdings, Inc., and in support would show the court the following:

1. This is a Level One Discovery Control Plan case.

2. Plaintiffs are entities doing business in the State of Texas. Defendant Providian

   Holdings, Inc. is a corporation doing business in the State of Texas and can be served

   through its agent for service of process, Khyati Undavia, 2918 San Jacinto, Houston,

   Texas 77004. Plaintiffs seek damages within the jurisdictional limits of the Court. The

   Court has subject matter jurisdiction and venue is proper.

### FACTUAL BACKGROUND

3. Sterling entered into a lease agreement with Defendant. Pursuant to the terms of the

   lease, Sterling made a security deposit in the amount of $2000.00. Upon termination of

   the lease and sixty days after Sterling provided a forwarding address, Defendant has

   refused to refund the security deposit to Sterling. Defendant has acted in bad faith.

   Defendant is liable to Sterling for the full security deposit of $2000.00, plus a statutory



PLAINTIFF'S EXHIBIT 4
ALL-STATE LEGAL®

AR 000156

penalty of $100.00, plus an additional statutory penalty of $4000.00, plus reasonable attorney's fees. Defendant has acted in bad faith by not providing a written description and itemized list of damages and charges, if any, and thus has forfeited its right to withhold a portion of the security deposit for such damages and charges.

4. Nisal entered into a lease agreement with Defendant. Pursuant to the terms of the lease, Sterling made a security deposit in the amount of $3600.00. Upon termination of the lease and sixty days after Nisal provided a forwarding address, Defendant has refused to refund the security deposit to Nisal. Defendant has acted in bad faith. Defendant is liable to Sterling for the full security deposit of $3600.00, plus a statutory penalty of $100.00, plus an additional statutory penalty of $7200.00, plus reasonable attorney's fees. Defendant has acted in bad faith by not providing a written description and itemized list of damages and charges, if any, and thus has forfeited its right to withhold a portion of the security deposit for such damages and charges.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendant Providian Holdings, Inc. be cited to appear and that judgment be taken against it for all damages suffered by Sterling in the amount of $6100.00 (consisting of the security deposit due and owing and all statutory penalties), plus reasonable attorney's fees, and that judgment be taken against it for all damages suffered by Nisal in the amount of $10,900.00 (consisting of the security deposit due and owing and all statutory penalties), plus reasonable attorney's fees, plus all costs of court, plus and any all further relief Plaintiffs may be entitled to.

AR 000157

Respectfully submitted,

PHILLIP BRANTLEY AND ASSOC., P.C.

Phillip Brantley
SBN 02899727
Arena Tower II
7324 Southwest Freeway, Suite 1020
Houston, Texas 77074
(713) 270-4053 phone
(713) 270-0682 facsimile
ATTORNEY FOR PLAINTIFF

FILED

2003 SEP -5 AM 11: 11

Stan Stanart
COUNTY CLERK

AR 000158

# Phillip Brantley and Associates, P.C.
**Arena Tower II**
**7324 Southwest Freeway, Suite 1020**      Tel (713) 270-4053
**Houston, Texas 77074**      Fax (713) 270-0682
*phillipbrantley.com*

September 3, 2013

Stan Stanart
County Clerk
Civil Courts Building
201 Caroline, Suite 300
Houston, Texas 77002

RE:   Sterling Practice Management, LLC, et al. vs. Providian Holdings, Inc.

Dear Mr. Stanart:

Enclosed are an original and two copies of Plaintiff's Original Petition. Please return one copy to me in the self-addressed stamped envelope and stamp the other copy and return it to me with the citation attached. Also enclosed is my check for $221.00.

Very truly yours,

Phillip Brantley

**AR 000159**

Phillip Brantley and Associates, PC
Arena Tower II
7324 Southwest Freeway, Suite 1020
Houston, Texas 77074





$001.06⁰

Stan Stanart
County Clerk
Civil Courts Building
201 Caroline, Suite 300
Houston, TX 77002

AR 000160

## MUTUAL RELEASE

THE STATE OF TEXAS

COUNTY OF HARRIS

**WHEREAS**, certain disputes, claims and causes of action existed by and between STERLING PRACTICE MANAGEMENT, LLC, its officers, directors, shareholders, partners, successors, agents, assigns, employees, servants and attorneys (hereinafter STERLING) and PROVIDIAN HOLDINGS, INC., its officers, directors, shareholders, partners, successors, agents, assigns, heirs, employees, servants and attorneys (hereinafter PROVIDIAN), arising from a commercial lease; and

**WHEREAS**, certain disputes, claims and causes of action existed by and between NISAL CORPORATION, its officers, directors, shareholders, partners, successors, agents, assigns, employees, servants and attorneys (hereinafter NISAL) and PROVIDIAN HOLDINGS, INC., its officers, directors, shareholders, partners, successors, agents, assigns, heirs, employees, servants and attorneys (hereinafter PROVIDIAN), arising from a commercial lease; and

**WHEREAS**, STERLING and NISAL filed suit against PROVIDIAN, No. 1036848, County Civil Court at Law No. 4, Harris County, Texas; and

**WHEREAS**, the parties desire to compromise, settle and provide for the full and final termination of all of the said claims, demands, causes of action and disputes between them arising out of or related to such claims which either party may now have or have had against each other, all without admitting any of the allegations set forth;

**NOW, THEREFORE**, for and in consideration of a check written by PROVIDIAN to STERLING AND NISAL and Phillip Brantley and Associates, PC in the amount of $7600.00, the mutual releases contained herein, and other good and valuable consideration, the receipt and



PLAINTIFF'S
EXHIBIT
5
ALL-STATE LEGAL®

**EXHIBIT C**                                          **AR 000161**

sufficiency of which is hereby acknowledged, STERLING AND NISAL, their officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs and attorneys hereby **RELEASE, ACQUIT** and **FOREVER DISCHARGE** PROVIDIAN, its officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs and attorneys from any and all liabilities, claims, demands, causes of action, judgments, liens, liabilities or potential claims or causes of action which STERLING AND NISAL have ever had or could have had, whether now known or unknown, which have arisen or may arise from the beginning of time to the date of this release, including, without limitation;

**NOW, THEREFORE,** for and in consideration of the acceptance of the aforesaid check written by PROVIDIAN to STERLING AND NISAL and Phillip Brantley and Associates, PC in the amount of $7600.00, the mutual releases contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, PROVIDIAN, its officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs and attorneys hereby **RELEASE, ACQUIT** and **FOREVER DISCHARGE** STERLING AND NISAL, their officers, directors, shareholders, successors, agents, assigns, employees, servants, partners, heirs and attorneys from any and all liabilities, claims, demands, causes of action, judgments, liens, liabilities or potential claims or causes of action which PROVIDAN has ever had or could have had, whether now known or unknown, which have arisen or may arise from the beginning of time to the date of this release, including, without limitation.

Upon signature of all parties, STERLING AND NISAL shall file a nonsuit with prejudice.

The parties hereto represent and warrant that the persons executing this Mutual Release on their behalf as shown on this instrument is authorized to bind same.

**AR 000162**

It is understood and agreed that this is a final Mutual Release, that no further consideration is to be paid by any of the parties, and that this settlement is in compromise of disputed claims and is not to be construed as an admission of liability.

STERLING PRACTICE MANAGEMENT, LLC

BY: _____
NAME: _____
TITLE: _____

THE STATE OF TEXAS
COUNTY OF HARRIS'

BEFORE ME, on this day personally appeared,  _____, of STERLING PRACTICE MANAGEMENT, LLC, whose name is subscribed to the foregoing Mutual Release, and who, acknowledged to me that he/she executed the Mutual Release as the act and deed of said entity, for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN under my hand and seal of office, this ___3rd___ day of ___October___, 2013.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

MARIA PATRICIA MUNIZ
My Commission Expires
May 14, 2016

NISAL CORPORATION

BY: _____

NAME: _____

TITLE: _____

THE STATE OF TEXAS
COUNTY OF HARRIS

BEFORE ME, on this day personally appeared, William Hicks, of NISAL CORPORATION, whose name is subscribed to the foregoing Mutual Release, and who, acknowledged to me that he/she executed the Mutual Release as the act and deed of said entity, for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN under my hand and seal of office, this ___3rd___ day of September, 2013.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS



MARIA PATRICIA MUNIZ
My Commission Expires
May 14, 2016

AR 000164

PROVIDIAN HOLDINGS, INC.

BY: _Khyati Undavia_
NAME: _KHYATI UNDAVIA_
TITLE: _Owner_

THE STATE OF TEXAS
COUNTY OF HARRIS

BEFORE ME, on this day personally appeared, _KHYATI UNDAVIA PRESIDENT_, of PROVIDIAN HOLDINGS, INC., whose name is subscribed to the foregoing Mutual Release, and who, acknowledged to me that he/she executed the Mutual Release as the act and deed of said entity, for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN under my hand and seal of office, this _2nd_ day of ~~September~~ _October_, 2013.

_Keith Chunn Jr._

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

KEITH CHUNN, JR.
MY COMMISSION EXPIRES
November 14, 2016

AR 000165

OFFICE OF BEVERLY B. KAUFMAN, COUNTY CLERK, HARRIS COUNTY, TEXAS 2006 MAR -2 AH 9: 50
P.O. BOX 1525 - HOUSTON, TEXAS 77251-1525

B 394813
$16.00

03/02/06 600143694
Assumed Name

## ASSUMED NAME RECORDS
## CERTIFICATE OF OWNERSHIP FOR
## UNINCORPORATED BUSINESS OR PROFESSION

COUNTY CLERK
HARRIS COUNTY, TEXAS

[A beginning character other than a letter or a number, or the last portion of a name that exceeds 57 characters, will not be reflected in the indices. Please print legibly.]

NAME IN WHICH BUSINESS IS OR WILL BE CONDUCTED: _____

ALLIED MEDICAL CENTERS

BUSINESS ADDRESS 5718 BELLAIRE BLVD

CITY HOUSTON ____ STATE TX ____ ZIP 77081

PERIOD (not to exceed 10 years) DURING WHICH ASSUMED NAME WILL BE USED: 10

BUSINESS IS TO BE CONDUCTED AS (Check One): ☒ Sole Proprietorship ☐ Sole Practitioner ☐ Other____
☐ General Partnership ☐ Joint Venture ☐ Joint Stock Company ☐ Real Estate Investment Trust

I/We, the undersigned, am/are the owner(s) of the above business and my/our name(s) and address(es) given is/are true and correct, and there is/are no ownership(s) in said business other than those listed below.

-NAMES OF OWNERS-

NAME GARNER, BRETT LEWIS ____ SIGNATURE X ____
(print or type)
Residence Address 5903 SOLAR POINT

City: HOUSTON ____ State: TX ____ Zip: 77041

NAME ____ SIGNATURE ____
(print or type)
Residence Address ____

City: ____ State: ____ Zip: ____

NAME ____ SIGNATURE ____
(print or type)
Residence Address ____

City: ____ State: ____ Zip: ____

If this instrument is executed by an attorney-in-fact, the attorney-in-fact hereby states that s/he/they has/have been duly authorized in writing by his/her principal to execute and acknowledge the same.

THE STATE OF TEXAS §
COUNTY OF HARRIS §

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared ____

GARNER, BRETT LEWIS

known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that s/he/they is/are the owner(s) of the above named business and that s/he/they signed the same for the purpose and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, on MARCH 2, 2006

(Seal)

Deputy County Clerk / Notary Public in and for the State of Texas

SHARON B. STEWART

Form No. D-02-07 (Rev. 01/03/05)


ALL-STATE LEGAL® PLAINTIFF'S EXHIBIT 6

AR 000166

FILED
In the Office of the
Secretary of State of Texas

JUL 14 2005

Corporations Section

**Office of the
Secretary of State
Form 204
(Revised 01/06)**

Corporations Section
P.O. Box 13697
Austin, Texas 78711-3697
512-463-5555
Fax: 512-463-5709

**Filing Fee: $750**

## CERTIFICATE OF FORMATION
## PROFESSIONAL ASSOCIATION

### Article 1 – Entity Name and Type

The filing entity being formed is a professional association. The name of the entity is <u>Avant Medical Group, P.A.</u>

### Article 2 – Registered Agent and Registered Office
(Select and complete either A or B and complete C)

☒ A. The initial registered agent is an organization (cannot be entity named above) by the name of: <u>Sterling Practice Management, L.P.</u>

or

☐ B. The initial registered agent is an individual resident of the state whose name is set forth below:

| First Name | MI | Last Name | Suffix |
|------------|----|-----------| -------|

C. The business address of the registered agent and the registered office address is:

| 5718 Bellaire Blvd | Houston | Texas | 77081 |
|--------------------|---------|-------|-------|
| Street Address | City | State | Zip |

### Article 3 – Governing Persons
Select either A or B. (A minimum of 1 individual is required.)

A. ☒ The professional association is to be managed by a board of directors. The names and addresses of the members who are to serve as initial directors are set forth below:

RECEIVED

4

Secretary of State

PLAINTIFF'S
EXHIBIT
7
ALL-STATE LEGAL®

AR 000167

OR

B. ☐ The professional association is to be managed by an executive committee. The names and addresses of the members who are to serve on the executive committee are set forth below:

<u>Anteneh</u>        <u>T.</u>        <u>Roba</u>

*First Name*         *MI*      *Last Name*               *Suffix*

<u>223 Westheimer Road</u>        <u>Houston</u>    <u>Texas USA</u>   <u>77006</u>

*Street Address*              *City*       *State   Country*     *Zip*

### Article 4 – Purpose

The type of professional service to be provided by the professional entity is (use space provided below):
<u>Medical services</u>.

### Supplemental Provisions/Information

Text Area: [The attached addendum, if any, if incorporated herein by reference.]

### Original Members

A member of the association may not dissolve the association independently of other members of the association. The name and address of each original member of the association is:

<u>Anteneh</u>        <u>T.</u>        <u>Roba</u>

*First Name*         *MI*      *Last Name*               *Suffix*

<u>223 Westheimer Road</u>        <u>Houston</u>    <u>Texas USA</u>   <u>77006</u>

*Street Address*              *City*       *State   Country*     *Zip*

### Effectiveness of Filing
(Select either A, B or C)

A. ☒ This document becomes effective when the document is filed by the Secretary of State.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the day of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:_____

_____

**AR 000168**

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: 7 / 13 / 0⁶

_____
*Signature of original member*

_____

AUS:2681595.1
53324.1

**AR 000169**

CAUSE NO. 2014-22186

| | | |
|---|---|---|
| AVANT MEDICAL GROUP, P.A. | § | IN THE DISTRICT COURT OF |
| d/b/a ALLIED MEDICAL CENTERS | § | |
| and INTERVENTIONAL SPINE | § | |
| ASSOCIATES, | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| KHYATI MOHAMED UNDAVIA, | § | |
| MINU RX, LTD., and MINU GP, | § | |
| L.L.C., | § | |
| | § | 152ND JUDICIAL DISTRICT |
| *Defendants* | | |

---

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

**TO THE HONORABLE JUDGE ROBERT SCHAFFER:**

Defendants Khyati Mohamed Undavia, Minu RX, Ltd., and Minu GP, L.L.C. file

this Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment and would

respectfully show the Court as follows:

**I.**
**SUMMARY**

1. Without doubt or dispute, Nisal and Garner released Defendants in the Mutual

Release. They are out. So to retain any modicum of credibility, Plaintiffs should have

jettisoned Nisal and Garner from this lawsuit.

2. Instead, Plaintiffs double down on their bet and contend that the "scope" of the

release is controlling. Defendants' readily agree. The scope of the Mutual Release is so

1

AR 000170

broad and all-encompassing that it covers any known or unknown claims, whether or not they were actually asserted in the underlying lawsuit. Nothing could be broader than that. All of Plaintiffs' current claims are captured and released.

3.      Finally, Plaintiffs make minute, ticky-tack arguments to throw the kitchen sink at the Court. Yet Plaintiffs go to no pains to discuss or distinguish the insurmountable case law cited in Defendants' motion for summary judgment. If ignoring the law is the approach Plaintiffs chose to defeat summary judgment, then the outcome for this Court is simple—Defendants are entitled to judgment as a matter of law.

## II.
### REPLY

**A. THE MUTUAL RELEASE INCLUDED "ALL" CLAIMS, WHETHER "KNOWN OR UNKNOWN," AND THEREFORE SPECIFICALLY MENTIONED PLAINTIFFS' CLAIMS IN THIS LAWSUIT.**

9.      In paragraph 16 of their response, Plaintiffs contend that the scope of the release is a threshold issue. Defendants will take Plaintiffs' cue on that point and show this Court how that threshold issue is dispositive of all of Plaintiffs' claims in this current lawsuit.

10.      As to scope, Plaintiffs argue that they executed the Mutual Release to resolve only the County Court Lawsuit. Therefore, *only* the claims in that lawsuit have been released.

11.      This argument ignores the broad, all-encompassing language of the Mutual Release, which extends to "**any and all** liabilities, claims, demands, causes of action, judgments, liens, liabilities or potential claims or causes of action which . . . [the parties and their agents] . . . have ever had or **could** have had, whether now known or **unknown**, which have arisen or **may arise** from the beginning of time to the date of this release[.]"

2

AR 000171

(See Mutual Release, p. 2) (emphasis added). This language is not limited by or tailored to the claims in the underlying County Court Lawsuit. No claims are reserved for future litigation. The Mutual Release extends to all claims, including those currently asserted by Plaintiffs in this lawsuit.

12. Plaintiffs rely heavily on *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931 (Tex. 1991) for the incorrect proposition that a release only extends to extant, pending claims in a lawsuit. However, *Brady* dealt with far different facts. There, the parties entered into a settlement agreement that released the bank "from any and all claims and causes of action . . . directly or indirectly attributable to the **above described loan transaction**." *Id*. at 938 (emphasis added). The original plaintiffs then filed a new suit against the bank that did not involve the "above described loan transaction." *Id*. The court held that the only claims the settlement agreement released were those dealing with the "above described loan transaction," and thus, did not bar the plaintiffs' current claims against the bank. *Id*.

13. The Texas Supreme Court acknowledges the *narrow* holding of *Brady*. In *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000), the court states:

> [In Brady], we noted that the parties' agreement plainly limited itself to the specific loan and thus did not cover [the] other transaction. The present release is clearly broader than the one in *Brady*. It is not expressly limited to a specific claim or transaction but rather purports to cover "all demands, claims, or causes of action of any kind whatsoever." Nothing in Brady forbids such a broad-form release.
> . . . .

3

**AR 000172**

Although Releases often consider claims existing at the time of execution, a valid release **may encompass unknown claims and damages that develop in the future**.

*Id*. at 698 (emphasis added).

14. Unlike the release in *Brady*, and exactly like the release in *Keck*, the Mutual Release in this case is not limited to claims arising out of a particular transaction. Instead, the Mutual Release extends to "all" claims whether "known or unknown," and without regard to whether they were actually asserted in the County Court Lawsuit. (See Mutual Release, p. 2).

15. *Keck* similarly disposes of Plaintiffs' reliance on the Mutual Release's recital paragraph. In *Keck*, the court held that the specific mention of a pending claim in a recital paragraph did not otherwise reduce or narrow the scope of the broad-form release language that followed. See *Keck*, 20 S.W.3d at 698.

16. When the parties signed the Mutual Release, the claims asserted in this lawsuit were existing claims. Thus, they were specifically mentioned by the Mutual Release and released.

**B. THE MUTUAL RELEASE PLAINLY EXTENDS TO THE PARTIES' "AGENTS," AND THEREFORE INCLUDES GARNER, AVANT, ALLIED, UNDAVIA, AND MINU**

(i) Garner, Allied, and Avant, as agents of Sterling and Nisal, are bound by the plain language of the Mutual Release.

17. Plaintiffs argue that Sterling and Nisal had no authority to release claims belonging to their agents, Garner, Avant, and Allied. Unable to find any support for their untenable position, Plaintiffs simply point the finger back at Defendants: "Defendants cite no authority to support their implicit position that the signatories to the

4

AR 000173

Release had the authority to settle claims belonging to their alleged agents on their behalf." (See Plaintiffs' Response; ¶26).

18.     Defendants, however, rely on the plain, unequivocal language of the Mutual Release. This language provides that Sterling and Nisal's **agents** are also releasing any claims they may have against Defendants.

19.     Further, Plaintiffs contend that Sterling and Nisal lacked "authority" to release claims on behalf of the other Plaintiffs. Garner—the individual that signed the release—is a principal for each of the Plaintiffs. Broken down, Plaintiffs argue that Garner, in his capacity with Nisal, did not have authority to release claims belonging to Garner personally or to his other companies.   That argument makes no factual or legal sense. Is Garner somehow divorced from the knowledge of the Mutual Release just because he signed the document in a corporate capacity? That he signed the document in any capacity eliminates any doubt that he is a party releasing Defendants.

20.     Plaintiffs provide no support to counteract the plain language of the Mutual Release. Garner, Allied, and Avant—as agents of Nisal and Sterling—have released their claims against Defendants.

> (ii)     Defendants are agents of Providian and therefore fall under the protection of the Mutual Release.

21.     Plaintiffs then argue that although they may have released Defendants in their capacity as agents of Providian, they did not release Defendants in their "individual capacity."  After all, Plaintiffs argue, "an agent is liable for his own torts." *Williams v. Olivo*, 912 S.W.2d 319 (Tex. App.—San Antonio 1995).

5

**AR 000174**

22. Once again, this argument is disposed of by the plain language of the Mutual Release, which extends not simply to Providian but also to Undavia and Minu as Providian's agents. Plaintiffs categorically released Undavia and Minu from "all claims," regardless of whether those claims arose in their individual or agency capacities, or in tort or otherwise.

    (iii) <u>By specifically mentioning "agents," the Mutual Release specifically mentioned Garner, Avant, Allied, Undavia, and Minu.</u>

23. Plaintiffs next argue that Defendants belied their own argument by citing to *McMillen v. Klingensmith*, 467 S.W.2d 193, 197 (Tex. 1971) for the proposition that "unless a party is named in a release, his not released." Plaintiffs argue that because they were not identified by name in the Mutual Release, they are not bound by it.

24. Once again, Plaintiffs ignore the plain terms of the Mutual Release, which extends to Sterling, Nisal, and Providian's "**agents**." There is no requirement that a release specify a party by their legal name. Garner, Avant, and Allied are agents of Nisal and Sterling. Undavia and Minu are agents of Providian. Therefore, they were specifically mentioned by the Mutual Release.

**C. DEFENDANTS ESTABLISHED, AS A MATTER OF LAW, THAT PLAINTIFFS GARNER, ALLIED, AND AVANT ARE AGENTS OF STERLING AND NISAL, AND THAT UNDAVIA AND MINU ARE THE AGENTS OF PROVIDIAN**

    (i) <u>Avant Is the agent of Sterling, and Garner and Allied are the agents of Nisal.</u>

25. Plaintiffs next contend that Defendants failed to prove that Avant, Garner, and Allied are agents of either Nisal or Sterling.

6

AR 000175

26.     First, Garner is plainly an agent of Nisal—he is Nisal's director, president, and registered agent.  Plaintiffs don't even bother contesting this point.  Second, Plaintiffs themselves admit in their pleadings that Allied is simply a d/b/a for Garner.  In other words, Garner and Allied are legally the same.  Allied is, therefore, also an agent of Nisal.

27.     Regarding Avant, Defendants introduced evidence showing that although Sterling was the actual lessee, Avant paid Sterling's rent and procured a rental insurance policy on Sterling's behalf.  (See Exhibits J and K to Defendants' Motion for Summary Judgment).  Defendants further testified that Avant was the entity that actually operated in the building. (See Declaration of Khyati Undavia, ¶13; Ex. E to Defendants' Motion for Summary Judgment).  Plaintiff Garner confirmed this fact, testifying in his affidavit that "Avant Medical Group, P.A. regularly provided medical services [in the Building]."  (See Affidavit of Brett Garner, §4).   Finally, there is no testimony to controvert Khyati Undavia's clear, unequivocal testimony that Avant acted as Sterling and Nisal's agent with respect to the lease. (See Declaration of Khyati Undavia; §13;Ex. E to Defendants' Motion for Summary Judgment).

28.     Finally, there is ample, uncontroverted evidence that Garner is also an agent of Avant.  Garner himself testifies:  "I am also one of the owners of Sterling Practice Management, LLC, a management service organization **which manages** the non-medical **business dealings** of Avant Medical Group, P.A."  (See Affidavit of Brett Garner; ¶2; Ex. 1 to Plaintiffs' Response) (emphasis added).   Undavia further testified that "For all matters concerning the lease, I communicated with Brett Garner in  his capacity [as] a

7

AR 000176

representative of not only Sterling and Nisal, but also Avant and Allied." (See Declaration of Khyati Undavia; ¶13; Ex. E to Defendants' Motion for Summary Judgment). Undavia further testified that Garner is a chiropractor for Avant. *Id.*

29. As a matter of law, Defendants established that an agency relationship existed between Sterling and Nisal on one hand, and Garner, Allied, and Avant, on the other.

 (ii) <u>As a matter of law, Undavia and Minu are the agents of Providian</u>

30. Unable to controvert Undavia and Minu's clear-cut agency relationship with Providian, Plaintiffs instead formulate an arbitrary and legally insignificant distinction: Plaintiffs have not sued Undavia and Minu in their capacities as Providian's agents and thus, have not released them.

31. Once again, Plaintiffs' argument ignores the plain language of the Mutual Release. Plaintiffs released Minu and Undavia from "all" claims, whether "known or unknown," whether or not they arose out of their agency capacities with Providian. Further, there is simply no authority for Plaintiff's proposition that an agent—when specifically identified in a release—is not released for claims arising in his or her individual capacity.

32. As a matter of law, Undavia and Minu are Providian's agents and are protected by the Mutual Release.

**D. RES JUDICATA APPLIES BECAUSE THE PARTIES ARE THE SAME AS IN THE ORIGINAL LAWSUIT AND BECAUSE THE CLAIMS ARISE OUT OF THE SAME NUCLEUS OF FACTS**

33. Plaintiffs argue that res judicata does not apply because their current claims and their previous claims "do not share the same operative facts," and further, that the parties

8

AR 000177

in this lawsuit are nominally different than in the County Court Lawsuit. (See Plaintiffs' Response; ¶ 34). Plaintiffs' argument fails.

34.     First, it is of no consequence that this lawsuit and the County Court Lawsuit do not involve precisely the same issues. Res judicata "prevents the relitigation of a claim or cause of action that has been finally adjudicated, **as well as related matters** that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex. 1992) (emphasis added). Here, the same "nucleus of operative facts" between this lawsuit and the former lawsuit are in play: Garner and his companies are suing Undavia and her company for something that arose out of their landlord-tenant relationship. This landlord-tenant relationship forms the nucleus out of which all of Plaintiffs' claims arose, whether in this lawsuit or in the County Court Lawsuit. Thus, Plaintiffs' current claims are related to their former claims and are subject to res judicata.

35.     As proof positive of this notion, consider the factors enunciated in Plaintiffs' cited case, *Samuel v. Federal Home Loan Mortg. Corp.*, 434 S.W.3d 230 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("In considering whether the facts arose out of a single transaction [thus giving rise to res judicata], courts consider whether the facts are related in time, space, origin, or motivation, and whether they form a convenient unit for trial."). Here, Plaintiffs' current claims arose around the same time as the claims in the County Court Lawsuit (between 2011-2013), they involved the same commercial office space, they arose out of the same landlord-tenant relationship and, because they involve all the

9

**AR 000178**

same parties and relationships, would have formed a convenient unit for trial. The factors weigh heavily in favor of res judicata.

36. Plaintiffs next argue that res judicata does not apply because the two lawsuits do not involve the same parties. Once again, Plaintiffs' argument fails.

37. "The doctrine of res judicata, or claim preclusion, bars a second action by parties, **and those in privity with them**, on matters actually litigated in a previous suit, as well as claims that could have been litigated in the prior suit through the exercise of diligence." *Samuel,* 434 S.W.3d at 233 (emphasis added). "Privity connotes those who are so connected with a party to the judgment in the law such that the party to the judgment represented the same legal right." *Id*. at 234. "A party can be in privity in at least three ways: (1) it can control an action even if it is not a party to it; (2) its interests can be represented by a party to the action; or (3) it can be a successor-in-interest, deriving its claim through a party to the prior action. *Id*. at 234-35.

38. Plaintiffs cite to *Lesikar v. Moon*, 2014 WL 4374117 (Tex. App.—Houston [1st Dist.] no pet.) as support for their argument that the parties in the two suits are nominally different, and thus, res judicata does not apply. Yet *Lesikar* holds:

> [A] person's appearance in a difference capacity does not dictate whether a prior judgment bars the subsequent suit. Comment (c) to section 36 [of the Restatement (Second) of Judgments] explains that **the analysis focuses on shared interests, not nominal capacity**[.]

*Id*. at 7 (emphasis added).

39. Here, as demonstrated above, Nisal, Sterling, Garner, Allied, and Avant are so interconnected that they are, as a matter of law, in privity with each other and shared a

10

AR 000179

common interest. All of these Plaintiffs occupied the Building, and are now suing Defendants based on this single fact. But for their tenancy, none of the Plaintiffs would have any claims against Defendants. Garner, as Nisal's president, director, and registered agent, and as Sterling's owners, clearly could have controlled the litigation. Further, were Avant's interests—as the real party in interest to the parties' lease—not shared and represented by Garner, Sterling, and Nisal in the County Court Lawsuit? Even Plaintiff Garner admits that he owns Sterling and that Sterling manages the non-medical business dealings of Avant.

40. Although nominally different, the parties are the same as they were in the County Court Lawsuit. Res Judicata applies.

**E.     PLAINTIFFS' CONVERSION CLAIMS FAILS AS A MATTER OF LAW.**

41. Plaintiffs argue that Defendants had "constructive possession" of their checks and therefore, Plaintiffs can maintain a cause of action for conversion.

42. Plaintiffs' argument completely ignores the issues raised in Defendants' Motion for Summary Judgment. First, Plaintiffs ignore the fact that any "agency" relationship between Plaintiffs and Defendants necessarily terminated with the underlying lease, and thus did not exist when Defendants allegedly deposited at least a portion of the checks.

43. Second, Plaintiffs argue that their side-agreement with Defendants was not a modification to the lease; rather, it was a stand-alone agreement *even though it was clearly within the scope of the parties landlord-tenant relationship*. This puts the agreement squarely in conflict with the lease's integration and no oral-modification clauses. Thus, evidence of this agreement is legally inadmissible.

11

AR 000180

**F.   PLAINTIFFS' ARGUMENTS FOR TOLLING THE STATUTE OF LIMITATIONS FAIL AS A MATTER OF LAW.**

44.   Plaintiffs contend that none of their claims are barred by the statute of limitations.

45.   First, Plaintiffs argue that their claims are barred by the discovery rule, which is wholly inapplicable in this case.  "The discovery rule is a very limited exception to statutes of limitations, and applies only when the nature of the plaintiff's injury is inherently undiscoverable and the evidence of injury is objectively verifiable." *BP Am. Prod. Co. v. Marshall,* 342 S.W.3d 59, 65–66 (Tex. 2011); *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455–56 (Tex. 1996).  "An injury is inherently undiscoverable if, by its nature, it is unlikely to be discovered during the applicable limitation period despite the exercise of due diligence." *Marshall,* 342 S.W.3d at 66; *S.V. v. R.V.,* 933 S.W.2d 1, 7 (Tex.1996).  "The question is not whether the particular injury was actually discovered by the claimant within the limitation period, but whether "it was the type of injury that is generally discoverable by the exercise of reasonable diligence."" *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex. 1998).

46.   Thus, the relevant inquiry in this case is whether the taking and depositing of a check is, by its nature, "inherently undiscoverable."  For example, making a defamatory entry on a credit report is inherently undiscoverable because "a person will not ordinarily have any reason to suspect that he has been defamed by the publication of a false credit report to a credit agency until he makes application for credit." *Computer Associates Intern, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996).  Nor can someone who undergoes a vasectomy "know that he is still fertile, if that be the case, until either his

12

**AR 000181**

wife becomes pregnant or he is shown to be fertile by further testing." *Id*. Likewise, "it is a virtual certainty that [a] patient has no knowledge on the day following surgery—nor for a long time thereafter—that a foreign object was left in the incision." *Id*.

47.     Here, the alleged conversion of the checks is not inherently undiscoverable and is not subject to the discovery rule.   In the exercise of due diligence, a business should discover, at or around the time that it is to receive payment—and not three years later—that payment has not been received.   The fact that Plaintiffs may have had special terms with their payees that "suspended collection efforts" is irrelevant because the focus is objective and not subjective. Most problematic for Plaintiffs, though, is Garner's admission that he routinely checks on the status of his payments from the patients' attorneys. (See Declaration of Brett Garner, ¶6; Ex. 1 to Plaintiffs' Response).  If Garner routinely checks on the status of payment from his patients' attorneys, how did Defendants' alleged wrongful acts go undiscovered for years?

48.     As their second argument for why their claims are not barred, Plaintiffs argue that the limitations period was tolled due to Defendants' "fraudulent concealment."   (See Plaintiffs' Response, ¶ 39).   However, "a party asserting fraudulent concealment as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion ***and*** to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999) (emphasis added).   "A mere pleading does not satisfy either burden." *Id*. at 749-50.

13

AR 000182

49.     Here, Plaintiffs have neither pled fraudulent concealment nor adduced any evidence in support of their fraudulent inducement claim. Plaintiffs' fraudulent concealment argument fails as a matter of law.

**G.     DEFENDANTS ARE ENTITLED TO ATTORNEY'S FEES**

50.     Finally, Plaintiffs assert that Defendants are not entitled to their attorneys' fees. First, they claim that Defendants are not entitled to attorney's fees because they have not presented a breach of contract claim. However, Defendants pled a breach of contract claim in their second and third amended answers.

51.     Second, Plaintiffs claim that Defendants have not moved for summary judgment on their declaratory judgment claim and thus are not entitled to fees. However, Defendants are not required to use magic words to move for summary judgment on their declaratory judgment claim. Defendants are seeking a judicial declaration, as a matter of law, of their rights, status, and other legal relations with respect to the release they entered into with Plaintiffs. "A release is a contract," and is therefore subject to a judicial declaration. *Schlumberger Technology Corp., v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997). Defendants have, therefore, moved for summary judgment on their declaratory judgment claim.

52.     Plaintiffs also claim that Defendants' declaratory judgment claim is improper because it is simply a denial of Plaintiffs' breach of contract claim. Nothing could be farther from the truth. "A counterclaim for declaratory judgment is improper if it is nothing more than a mere denial of the plaintiff's claims and the counterclaim fails to have greater ramifications than the original suit." *Sanchez v. AmeriCredit Fin. Services,*

14

AR 000183

*Inc.*, 308 S.W.3d 521, 524 (Tex. App.—Dallas 2010, no pet.).  Here, Plaintiffs' breach of contract claim is premised on an alleged oral contract between Undavia and Plaintiffs for the collection and distribution of mail.  In contrast, Defendants seek a judicial declaration that Plaintiffs have categorically released Defendants from any and all claims, whether known or unknown, that existed when the Mutual Release was signed.  If Defendants succeed, then all of Plaintiffs claims—not simply their breach of contract—are defeated.  Accordingly, Defendants declaratory judgment counterclaim is not simply a "denial" of Plaintiffs' breach of contract claim. It has greater ramifications than that claim, and is fair game for a declaratory judgment action.

53.     Defendants are entitled to their attorney's fees.

## III.
### CONCLUSION

54.     Defendants respectfully request that this Court grant them summary judgment, dismiss Plaintiffs' claims with prejudice, grant them their reasonable attorney's fees, and grant Defendants all further relief to which they are entitled at law or equity.

Date:  February 17, 2015          Respectfully submitted,

                                  **MAHENDRU, P.C.**

                                  By: _____
                                       Ashish Mahendru
                                       Texas Bar No. 00796980
                                       Darren A. Braun
                                       Texas Bar No. 24082267
                                       639 Heights Boulevard
                                       Houston, Texas 77007

15

**AR 000184**

(713) 571-1519 (Telephone)
(713) 651-0776 (Facsimile)
amahendru@thelitigationgroup.com
dbraun@thelitigationgroup.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been provided to all counsel of record in accordance with the applicable Texas Rules of Civil Procedure on this 16th day of February, 2015.

Matias J. Adrogué            *Email:mja@mjalawyer.com*
Robert Stephan Kaase       *Email: rsk@mjalawyer.com*
1629 West Alabama St.        *Facsimile: 713.425.7271*
Houston, Texas 77006

Ashish Mahendru

16

AR 000185

CAUSE NO. 2014-22186

| | | |
|---|---|---|
| AVANT MEDICAL GROUP, P.A. d/b/a ALLIED MEDICAL CENTERS and INTERVENTIONAL SPINE ASSOCIATES, | § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs* | § § § | |
| VS. | § § | HARRIS COUNTY, TEXAS |
| KHYATI MOHAMED UNDAVIA, MINU RX, LTD., and MINU GP, L.L.C., | § § § § | |
| *Defendants* | § § | 152ND JUDICIAL DISTRICT |

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE**

---

TO THE HONORABLE JUDGE ROBERT SCHAFFER:

Defendants Khyati Mohamed Undavia, Minu RX, Ltd., and Minu GP, L.L.C. file this Response to Plaintiffs' Objections to Defendants' Summary Judgment Evidence and would respectfully show the Court as follows:

**I.**
**RESPONSE**

**A. DEFENDANTS' EXHIBITS B, F, J, AND K ARE ADMISSIBLE SUMMARY JUDGMENT EVIDENCE.**

1. *Exhibit B - Sterling Practice Management's Lease With Providian.* Plaintiffs object to this Lease because it is unsigned, and is thus (a) irrelevant and (b) violates the best evidence rule. However, Khyati Undavia testified that this lease was a true and correct copy of the lease that Providian entered into with Sterling. Whether signed or not, the document

1

**AR 000186**

is still relevant as to the terms of the lease between Sterling and Providian. Further, the best evidence rule does not apply when "the document and its contents are only collaterally related to the issues in the case[.]" *White v. Bath*, 825 S.W.2d 227, 331 (Tex. App.— Houston [14th Dist.] 1992, writ denied). Here, Defendants are not presenting the lease to the Court in the motion for summary judgment to establish a breach of the lease. There is no dispute that Providian and Sterling actually entered into a lease agreement that contained the same terms and provisions as Exhibit B. Defendants simply attached Exhibit B to show that there as a written lease between the parties. Accordingly, it is not barred by the best evidence rule.

2.      *Exhibit F—Elevator Invoices.* Defendant objects because the invoices are hearsay. However, these invoices are not hearsay. Defendants are not introducing them to prove the truth of a matter asserted therein—for example, the price on the invoices or the services performed. Instead, Defendants offer the invoices to show that they were addressed to Minu and *not* Providian. Accordingly, they are not hearsay and Defendants are not required to prove them up as business records.

3.      *Exhibit J—Proof of Insurance.* Plaintiffs object because the Proof of Insurance is hearsay. However, the Proof of Insurance is not hearsay. Defendants are not offering it to show the truth of a matter asserted therein—for example, the amount of coverage or that Avant actually was insured by the insurance company. Instead, Defendants are offering the Proof of Insurance to show the agency relationship between Avant, who purportedly procured the policy, and Sterling, who was listed as an additional insured by Avant. Even if Defendants were offering the Exhibit for the truth of the matter asserted, it is still not

2

AR 000187

hearsay: this document was given to Defendants by Plaintiffs and thus constitutes the admission of a party opponent. Accordingly, the Proof of Insurance is not hearsay and Defendants are not required to prove it up as a business record.

4.    *Exhibit K—Rent Check.* Again, Plaintiffs object because the check is hearsay, when it is in fact not hearsay. Defendants are not offering the check to prove the truth of the matter asserted—for example, that rent was paid or what the amount of the payment was. Instead, Defendants offer the check to show the agency relationship that existed between Sterling, who was the actual lessee, and Avant, because Avant paid the rent on Sterling's behalf. Why else would Avant pay rent on behalf of Sterling? Finally, the check is not hearsay because it is the admission of a party opponent.

**B.    EACH STATEMENT IN KHYATI UNDAVIA'S DECLARATION IS ADMISSIBLE**

5.    Plaintiffs make a variety of objections to Undavia's declaration. Defendants refute each of these objections below.

6.    ***"The Declaration of Khyati Undavia contains statements that are not based on personal knowledge."*** Plaintiffs point to inadmissibility of Undavia's statements that Plaintiffs Nisal Corp. and Sterling Practice Management, LLC "did not have any actual operations in the office space," and that "Allied Medical Centers and Avant Medical Group were the entities that had operations in the leased space." (See Declaration of Khyati Undavia; ¶ 13; Ex. E to Defendants' Motion for Summary Judgment). Incredibly, Plaintiffs claim that Undavia couldn't possibly have personal knowledge of these facts. However, Undavia, as Providian's owner, was the Plaintiffs' landlord. Based on her ownership and execution of the lease, she has personal knowledge of what transpired on her property. She

3

AR 000188

also worked in the pharmacy directly below Plaintiffs' office space and regularly communicated with Garner. Undoubtedly, she has personal knowledge as to the entities that operated in her building.

7. Further, Plaintiffs readily admit that Avant operated in the office space: "Avant Medical Group, P.A. regularly provided medical services at the [leased premises]." (See Affidavit of Brett Garner, ¶4; Ex. A to Plaintiffs' Response). Why then would Undavia not know this fact?

8. Accordingly, Undavia's statement as to which entity operated in the leased space is admissible summary judgment evidence.

9. *"The Declaration of Khyati Undavia contains statements that are merely legal conclusions."* Plaintiffs then complain of Undavia's statement that "for all matters concerning the lease, I communicated with Brett Garner in his capacity [as] a representative of not only Sterling and Nisal, but also Avant and Allied." (See Declaration of Khyati Undavia; ¶13; Ex. E to Defendants' Motion for Summary Judgment). Plaintiffs argue that this statement is an unsubstantiated legal opinion and therefore inadmissible.

10. However, Defendants introduced evidence that Avant paid for Sterling's rent (and introduced a copy of such check), and introduced a Proof of Insurance document that was procured by Avant on behalf of Sterling. This is documentary support for Undavia's statement that she communicated with Garner in his capacity as Avant's agent. Further, Undavia testified that she was the Plaintiffs' landlord, that she owned the leased premises, that she worked in the pharmacy directly below Plaintiffs' office space, and that Garner was

4

AR 000189

Avant's employee and agent. Of course she knows the capacity of the individuals with which she is communicating with respect to the lease.

11. Further, Undavia's statement was easily controvertible yet remains uncontroverted. Plaintiffs could have simply testified, "No, Avant didn't pay Sterling's rent," or that "No, Avant did not procure an insurance policy on behalf of Sterling." They could have testified, "No, Garner was not Avant's agent" or that "No, Garner never communicated with Undavia in his capacity as Avant's agent." By failing to controvert the agency relationship, Plaintiffs admit it, thereby sinking their position with this Court and only leaving themselves a threadbare attempt to object to Undavia's statement. That attempt, however, fails.

12. Instead of controverting Undavia's testimony, Plaintiffs *confirmed* it. Garner testified that "I am also one of the owners for Sterling Practice Management, LLC, a management company which manages the non-medical business dealings of Avant Medical Group." (See Affidavit of Brett Garner, ¶2; Ex. 2 to Plaintiffs' Response). This testimony clearly establishes Garner's agency relationship with Avant. Further, Garner testified that "Avant Medical Group, P.A. regularly provided medical services" in Undavia's building. *Id.* at ¶4. What is there left to contest?

13. Accordingly, Undavia's statements regarding Garner's agency relationship with Avant are admissible.

14. ***"The Declaration of Khyati Undavia Undavia contains statements that are based on hearsay."*** Plaintiffs contend that because exhibits F, J, and K are hearsay, and because Undavia testified regarding those exhibits in paragraphs 11 and 14 of her declaration, then those statements are likewise inadmissible.

5

**AR 000190**

15. As discussed in Section A above, exhibits F, J, and K are not hearsay. Accordingly, Defendants' testimony regarding these exhibits is admissible.

## II.
### CONCLUSION

9. Defendants respectfully request that this Court to overrule Plaintiffs' objections to Defendants' summary judgment evidence and grant Defendants all further relief to which they are entitled.

Date: February 17, 2015

Respectfully submitted,

**MAHENDRU, P.C.**

By: _____

Ashish Mahendru
Texas Bar No. 00796980
Darren A. Braun
Texas Bar No. 24082267
639 Heights Boulevard
Houston, Texas 77007
(713) 571-1519 (Telephone)
(713) 651-0776 (Facsimile)
amahendru@thelitigationgroup.com
dbraun@thelitigationgroup.com

**ATTORNEYS FOR PLAINTIFFS**

6

**AR 000191**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been provided to all counsel of record in accordance with the applicable Texas Rules of Civil Procedure on this 16th day of February, 2015.

Matias J. Adrogué
Robert Stephan Kaase
1629 West Alabama St.
Houston, Texas 77006

*Email:mja@mjalawyer.com*
*Email: rsk@mjalawyer.com*
*Facsimile: 713.425.7271*

Ashish Mahendru

7

**AR 000192**

CAUSE NO. 2014-22186

| | | |
|---|---|---|
| AVANT MEDICAL GROUP, P.A., ET. AL. | § § § | IN THE DISTRICT COURT OF |
| vs. | § § § | HARRIS COUNTY, TEXAS |
| KHYATI MOHAMED UNDAVIA , ET. AL. | § § | 152ⁿᵈ JUDICIAL DISTRICT |

FILED
Chris Daniel
District Clerk
MAR 03 2015
Time:_____
Harris County, Texas
By_____
Deputy

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendants' Motion for Summary Judgment and this court, after considering the pleadings and arguments of counsel, finds that this motion should be granted in part and denied in part.

It is, therefore, ordered that the Motion for Summary Judgment as to claims brought by Plaintiff, Nisal Corp. is granted.

It is further ordered that the Motion for Summary Judgment as to claims brought by all other plaintiffs is denied.

Signed March 3, 2015.

Robert K. Schaffer
Presiding Judge

Unofficial Copy Office of Chris Daniel District Clerk

| | | |
|---|---|---|
| **AVANT MEDICAL GROUP, P.A.** | § | **IN THE DISTRICT COURT OF** |
| **d/b/a ALLIED MEDICAL CENTERS** | § | |
| **and INTERVENTIONAL SPINE** | § | |
| **ASSOCIATES,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **VS.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **KHYATI MOHAMED UNDAVIA and** | § | |
| **MINU RX, LTD.,** | § | |
| *Defendants* | § | **152ND JUDICIAL DISTRICT** |

---

**DEFENDANTS' MOTION FOR PERMISSION TO APPEAL
INTERLOCUTORY SUMMARY JUDGMENT ORDER,
MOTION TO AMEND ORDER, AND REQUEST FOR STAY**

---

**TO THE HONORABLE JUDGE ROBERT SCHAFFER:**

Defendants, Khyati Undavia, Minu RX, Ltd., and MINU GP, LLC, file this Motion

for Permission to Appeal Interlocutory Summary Judgment Order, Motion to Amend Order,

and Request for Stay and would respectfully show the Court as follows:

**I.
INTRODUCTION**

1. Based on a release and dismissal with prejudice between the parties arising out of

a prior lawsuit, Defendants sought dismissal of this case by summary judgment,

requesting this Court to apply the release to the parties in this lawsuit. Agreeing in part,

this Court granted judgment as a matter of law only as to Plaintiff Nisal Corp.

2. Without doubt, the controlling question of law in this case is the applicability of

the release as to all parties. If, as Defendants contend, the release applies to all parties and

1

**AR 000194**

all claims in this lawsuit, Defendants should not be subjected to a trial, having bargained for and bought peace. Without doubt an immediate appeal from the order denying judgment as a matter of law as to all Defendants advances the ultimate termination of the litigation. These two elemental requirements of a permissive appeal and front and center before this Court, and Defendants easily hurdle them to establish the need for an immediate appeal.

3. Defendants, therefore, request this Court to grant a permissive appeal of this Court's Order dated March 3, 2015, requesting this Court to amend its order, and in granting such relief, Defendants further request a stay of this lawsuit pending resolution of the appeal of the interlocutory order.

## II.
## MOTION FOR PERMISSIVE APPEAL

4. Texas Civil Practices and Remedies Code §51.014(d) establishes the standard for a permissive appeals:

> On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:
>
> > (1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and
> >
> > (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

5. In conjunction with this statute, the legislature enacted Texas Rules of Civil Procedure 168 as a new rule:

> On a party's motion or on its own initiative, a trial court may permit an appeal from an interlocutory order that is not otherwise appealable, as provided by statute. Permission must be stated in the order to be appealed. An order previously

2

AR 000195

issued may be amended to include such permission. The permission must identify the controlling question of law as to which there is a substantial ground for difference of opinion, and must state why an immediate appeal may materially advance the ultimate termination of the litigation.

### a. The Order to be Appealed Involves a Controlling Question of Law

6.      Texas courts have little guidance as to what constitutes a controlling legal issue about where there is a difference of opinion and the resolution of which disposes of the primary issues in the case. In *Gulf Coast Asphalt Company, LLC v. Lloyd*, the Houston Court of Appeals recently recognized this absence, and it cited to a Texas commentator's suggestion of looking to federal cases in interpreting the federal counterpart to section 51.014:

> a controlling question of law is one that deeply affects the ongoing process of litigation. If resolution of the question will considerably shorten the time, effort, and expense of fully litigating the case, the question is controlling. Generally, if the viability of a claim rests upon the court's determination of a question of law, the question is controlling.... Substantial grounds for disagreement exist when the question presented to the court is novel or difficult, when controlling circuit law is doubtful, when controlling circuit law is in disagreement with other courts of appeals, and when there simply is little authority upon which the district court can rely.... Generally, a district court will make [a finding that the appeal will facilitate final resolution of the case] when resolution of the legal question dramatically affects recovery in a lawsuit.

2015 WL 393407, at *5 (Tex. App.—Houston [14th Dist.] Jan. 29, 2015, no. pet. h.).

7.      The commentator suggests three or four avenues for meeting this element for a permissive appeal. With the exception of disagreement between controlling circuits since that is not Defendants' contention, Defendants easily hurdle the standard set forth above.

8.      First, is there any doubt that Defendants' legal postulation that the application of the release from the underlying lawsuit will "considerably shorten the time, effort and expense of litigating the case"? No, there is no doubt. The release controls the current

3

AR 000196

case, and if applicable to the claims asserted by Plaintiffs, then this case is over, as this Court partially found in dismissing Nisal Corp's claims.

9. Second, the viability of this lawsuit is fully dependant on the Court's interpretation of the release. That legal interpretation, therefore, is controlling.

10. Third, substantial disagreement exists when the question presented to the Court is novel or difficult. As evidenced by the lengthy and detailed presentation by Defendants and as evidenced by the numerous questions propounded by the Court during the summary judgment hearing, the issues confronting this Court are difficult, novel, and outcome determinative. Defendants, therefore, meet this requirement.

11. Fourth, there is little authority for this Court to rely on in deciding the novel and difficult issues. A prime example of that is based on the Court's contention that an agent in one context may not necessarily release a claim brought in the future or different context if not cloaked in the original agency. Specifically, as discussed with the Court during the hearing, a committed tort by an agent that was unknown at the time of the release is still captured by the very terms releasing the parties. This Court was unsure of that application of the release in such a broad context. However, neither Plaintiffs nor Defendants provided this Court with any controlling law on the subject of the scope of the agency and/or the underlying scope of the release when applying that release in a future series of claims that still refer back and relate to the underlying dispute engendering the release in the first place.

12. Additionally, Plaintiffs contended that the principal-agent relationship is a question of fact for the jury. Defendants' vociferously argued that there is simply no

4

**AR 000197**

space for a principal-agent analysis in the construction of a release. Principal-agent delves into actual and apparent authority, *i.e.*, whether a third party has the right to charge the principal based on the agent's conduct *vis-a-vis* the third party.

13. In the context of a release, however, the word "agent" as a releasing or released party does not require any interpretation of the principal-agent relationship in the context of actual or apparent authority. There is no authority that Plaintiffs cited this Court for this proposition that the Court must labor into questions of fact based on principal-agent analysis, and certainly there is no case law Defendants put forth for the Court's counter-consideration. With little or no binding or persuasive authority, this issue is controlling, necessitating a permissive appeal.

### b. An Immediate Appeal from the Order Shall Materially Advance the Ultimate Termination of the Litigation

14. Defendants' summary judgment sought complete and total dismissal of all claims Plaintiffs asserted against Defendants Khyati Undavia, Minu RX, Ltd., and MINU GP, LLC. That is, the granting of Defendants' motion would dispose of all of Plaintiffs' claims against Defendants. When this Court granted judgment in favor of Defendants as to Plaintiff Nisal Corp., this Court fully acknowledged that this case is subject to immediate termination--at least as to one party.

15. It can be no other way. If the release applies to all Plaintiffs, then they have no claims against Defendants. The case is over and terminated. The second element of a permissive appeal is readily present.

### III.
### MOTION TO AMEND ORDER

5

AR 000198

16.    Under Rule 168, there is a requirement that the permission to appeal the interlocutory order be granted in the order to appealed and not in a separate order.

> On a party's motion or on its own initiative, a trial court may permit an appeal from an interlocutory order that is not otherwise appealable, as provided by statute. **Permission must be stated in the order to be appealed. An order previously issued may be amended to include such permission.** The permission must identify the controlling question of law as to which there is a substantial ground for difference of opinion, and must state why an immediate appeal may materially advance the ultimate termination of the litigation.

17.    Therefore, Defendants respectfully request this Court to enter the attached amended order, granting Defendants permission to appeal.

## IV.
### REQUEST FOR STAY

18.    Defendants also request a stay of further proceedings in this Court pending the resolution of a permissive appeal. Tex. Civ. Prac. & Rem. Code §51.014(e)(2). Such a stay is warranted because, until the controlling issues are resolved by the court of appeals, any further trial in this Court may be for naught and result in a tremendous waste of judicial resources, the parties' time, energy, attorney's fees.

## V.
### CONCLUSION

19.    Defendants request this Court to (i) grant them permission to appeal this Court's interlocutory summary judgment order dated March 3, 2015, (ii) amend the Court's Order dated March 3, 2015, and (iii) request this Court to stay the proceedings pending appellate outcome.

20.    Defendants further pray for any such other and further relief to which they are

6

entitled to at law or in equity.

Dated:  March 13, 2015

Respectfully submitted,

MAHENDRU, P.C.

By:

Ashish Mahendru
State Bar No. 00796980
Darren A. Braun
State Bar No. 24082267
639 Heights Blvd.
Houston, Texas  77007
Telephone:    713-571-1519
Facsimile:    713-651-0776
amahendru@thelitigationgroup.com
dbraun@thelitigationgroup.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been provided to all counsel of record in accordance with the applicable Texas Rules of Civil Procedure on this 13th day of March, 2015.

Matias J. Adrogué
Robert Stephan Kaase
1629 West Alabama St.
Houston, Texas 77006

*Email:mja@mjalawyer.com*
*Email:  rsk@mjalawyer.com*

William P. Huttenbach
Hirsch & Westheimer, PC
1415 Louisiana, 36th Floor
Houston, Texas 77002

*Email: phuttenbach@hirschwest.com*

7

**AR 000200**

Ashish Mahendru

AR 000201

| | | |
|---|---|---|
| AVANT MEDICAL GROUP, P.A. d/b/a | § | IN THE DISTRICT COURT OF |
| ALLIED MEDICAL CENTERS and | § | |
| INTERVENTIONAL SPINE | § | |
| ASSOCIATES, | § | |
| | § | |
| Plaintiffs | § | HARRIS COUNTY, TEXAS |
| | § | |
| VS. | § | |
| | § | |
| KHYATI MOHAMED UNDAVIA and | § | |
| MINU RX, LTD. | § | 152nd JUDICIAL DISTRICT |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PERMISSION TO APPEAL INTERLOCUTORY SUMMARY JUDGMENT ORDER, MOTION TO AMEND ORDER, AND REQUEST FOR STAY**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, AVANT MEDICAL GROUP, P.A. d/b/a INTERVENTIONAL SPINE ASSOCIATES, BRETT L. GARNER d/b/a ALLIED MEDICAL CENTERS (hereinafter referred to as "Plaintiffs") and files this response to Defendants' Motion for Permission to Appeal Interlocutory Summary Judgment Order, Motion to Amend Order, and Request for Stay and in support thereof would respectfully show the Court as follows:

**I. INTRODUCTION**

1. Plaintiffs are AVANT MEDICAL GROUP, P.A. d/b/a INTERVENTIONAL SPINE ASSOCIATES, BRETT L. GARNER d/b/a ALLIED MEDICAL CENTERS, and NISAL CORP. d/b/a QUALCARE REHABILITATION.

2. Defendants are KHYATI MOHAMED UNDAVIA, MINU RX, LTD. d/b/a MEMORIAL COMPOUNDING PHARMACY, MINU GP, LLC, and COMPASS BANK.

3. On January 30, 2015 the Defendants in this case filed a Motion for Summary Judgment based on a release signed relating to a security deposit of a commercial lease. Plaintiffs filed

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PERMISSION TO APPEAL INTERLOCUTORY SUMMARY JUDGMENT ORDER, MOTION TO AMEND ORDER, AND REQUEST FOR STAY          PAGE 1

AR 000202

their Response on February 13, 2015 and the Court heard oral argument on the Motion on February 20, 2015.  After taking the matter under consideration, the Court signed an order granting the Defendant's Motion for Summary Judgment as to Plaintiff Nisal Corp. and denying the Defendants' Motion as to all other parties.

4.  Defendant now seeks to appeal the Court's interlocutory summary judgment order. Plaintiffs ask the Court to deny Defendants' Motion because Defendants have not met the burden for a permissive appeal and because an appeal from the interlocutory summary judgment is unnecessary at this time.

## I. ARGUMENT & AUTHORITIES

5.  Tex. Civ. Prac. & rem. Code § 54.014(d) provides that "On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is  not otherwise appealable if: (1)  the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and (2)  an immediate appeal from the order may materially advance the ultimate termination of the litigation." Further, Texas courts have ruled that permissive appeal is "premised on the trial court having first made a substantive ruling on the controlling legal issue being appealed." *See, e.g. Gulley v. State Farm Lloyds*, 350 S.W.3d 204 (Tex. App.—San Antonio 2011, no pet.).

6.  The Court's March 3, 2015 Order does not contain an explicit ruling on the Question presented by Defendants in their Motion.  Defendants now ask the Court not only to amend its Order to permit appeal, but to also provide an explicit ruling on a specific question of law.  The Court was not required to make specific conclusions of law on the issue, and did not opt to do so in this case.  Therefore, the Court's interlocutory order is not a candidate for permissive appeal.

7. Plaintiffs additionally contend that this case does not present a controlling question of law "as to which there is a substantial ground for difference of opinion." In their Motion for Summary Judgment, Defendants claimed that Nisal Corp.'s signing of the release bound all of its agents to the terms of the release, regardless of in what capacity a future suit might be brought. Plaintiffs contended that agents of the signatory are not bound to the release because a principal does not have authority to act on the agent's behalf. However, at oral hearing Plaintiffs cited case law which clearly states that "An agent acts on behalf of its principal rather than the principal acting on behalf of the agent, and no Texas case has held that a principal owes a fiduciary duty to an agent." *Casteel v. Crown Life Ins. Co.*, 3 S.W.3d 582, 590 (Tex. App—Austin 1999), *rev'd in part on other grounds* 22 S.W. 3d 378 (Tex. 2000). Defendants admit in their Motion that they have no authority to support their claim that the nonsignatory Plaintiffs are bound by the release from asserting claims against other nonsignatories for actions not related to either's alleged role as an agent for any signatory. Because Defendants' legal claims have no basis in law, they seem to abandon their agency theory altogether and claim that the nonsignatory Plaintiffs should be bound because they are "intimately related" to the signatories. As far as Plaintiffs' counsel can determine, this "intimately related" standard for determining who is bound to a contract is heretofore unseen in Texas contract jurisprudence. Further, Defendants' faulty assertion that Plaintiffs did not bring sufficient legal authority to support their claims is irrelevant—is it Defendants who must prove their entitlement to judgment as a matter of law. Therefore, the question of law on which Defendants seek review is not one for which there is a substantial ground for difference of opinion, and Defendants' Motion should be denied.

8. Defendants further assert that the Court <u>may not</u> inquire into questions of fact as to whether the agency relationships alleged by the Defendants themselves actually exist.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PERMISSION TO APPEAL
INTERLOCUTORY SUMMARY JUDGMENT ORDER, MOTION TO AMEND ORDER, AND REQUEST FOR STAY** **PAGE 3**

**AR 000204**

Defendants' entire theory surrounding the release rests on the existence of agency relationships. Plaintiffs' counsel can only assume that Defendants believe the Court must take on faith that the relationships exist based on nothing more than the argument of Defense counsel. This is simply an attempt by Defendant to paint the issues in this case as issues of law only. However, even if an appellate court were to decide that in some cases nonsignatories could be bound to a release by an agency relationship, a factual inquiry would still be necessary to determine whether such relationships exist in this case, and to what extent the parties are bound by virtue of those relationships. Therefore, a ruling from the court of appeals would not immediately terminate the litigation as Defendants claim. Because the Defendants cannot show that a permissive appeal would materially advance termination of the litigation, and because their claims in the Motion for Permissive Appeal are so inconsistent with Texas law, the Defendants' Motion should be denied.

9. In essence, Defendants claim that because they have no legal authority to support their Motion for Summary Judgment, there must be a controlling question of law as to which there is a substantial ground for difference of opinion. As shown above, there is no reasonable ground for difference of opinion in this case. Defendants have attempted to craft new legal standards out of whole cloth and sell them to the Court as a reasonable interpretation of nonexistent law. The Court has already determined, when it signed the March 3, 2015 Order, that the facts of the case, and the law as applied to those facts, is sufficient to allow this lawsuit to proceed to trial. Therefore, Defendants have not shown adequate grounds for a permissive appeal of the Court's interlocutory order. For this reason, the Defendants' Motion should be denied.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PERMISSION TO APPEAL**
**INTERLOCUTORY SUMMARY JUDGMENT ORDER, MOTION TO AMEND ORDER, AND REQUEST FOR STAY**          **PAGE 4**

**AR 000205**

## III. PRAYER

For the above reasons, Plaintiffs ask the court to deny Defendants' Motion for Permission to Appeal Interlocutory Summary Judgment Order, Motion to Amend Order, and Request for Stay.

Respectfully submitted,

**MATÍAS J. ADROGUÉ**
PROFESSIONAL LIMITED LIABILITY COMPANY

By: _____

Matías J. Adrogué
Attorney at Law
State Bar No. 24012192
Robert Stephan Kaase
State Bar No. 24083287
1629 West Alabama St.
Houston, Texas 77006
713-425-7270 *Telephone*
713-425-7271 *Facsimile*
service@mjalawyer.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served to all counsel of record in accordance with the Texas Rules of Civil Procedure, on this the 17th day of March, 2015.

_____

Matías J. Adrogué

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PERMISSION TO APPEAL
INTERLOCUTORY SUMMARY JUDGMENT ORDER, MOTION TO AMEND ORDER, AND REQUEST FOR STAY   PAGE 5

AR 000206

| | | |
|---|---|---|
| AVANT MEDICAL GROUP, P.A. | § | IN THE DISTRICT COURT OF |
| d/b/a ALLIED MEDICAL CENTERS | § | |
| and INTERVENTIONAL SPINE | § | |
| ASSOCIATES, | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | |
| | § | HARRIS COUNTY, TEXAS |
| KHYATI MOHAMED UNDAVIA, | § | |
| MINU RX, LTD., | § | |
| | § | 152ND JUDICIAL DISTRICT |
| *Defendants* | § | |

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANTS' MOTION FOR PERMISSIVE APPEAL AND REQUEST FOR STAY

On this day the Court considered Defendant Khyati Undavia and Minu Rx, Ltd.'s Motion for Permission to Appeal Interlocutory Summary Judgment Order, Motion to Amend Order, and Request for Stay. After considering the pleadings and the arguments of counsel, the Court ORDERS as follows:

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Original Order Granting and Denying Defendants' Motion for Summary Judgment dated March 3, 2015 is superseded and replaced by this Order.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants' Motion for Summary Judgment as to Plaintiff Nisal Corp. is granted.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants' Motion for Summary Judgment as to the claims brought by all other Plaintiffs is denied.

1

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**AR 000207**

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants Undavia and Minu Rx, Ltd. have this Court's permission to file an interlocutory appeal with the Texas Court of Appeals. This Court finds that the controlling question of law to be determined on appeal is whether the release (a) signed in a prior lawsuit between (b) parties intimately related to parties in the current lawsuit is sufficient to release the claims asserted between the current Plaintiffs and Defendants Khyati Undavia, Minu RX, Ltd., and MINU GP, LLC in this lawsuit. The legal interpretation of the release, therefore, is controlling. Imbedded in that controlling question is the effect of the agency relationship between signatories of the release when applying that release in a future series of claims that still refer back and relate to the underlying dispute engendering the release in the first place. Further, the controlling question involves the extent to which principal-agent analysis applies in the construction of a release.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that an appeal of this Order will materially advance the ultimate termination of the litigation because if the controlling issue of law is resolved in the Defendants' favor, then Defendants Khyati Undavia, Minu RX, Ltd., and MINU GP, LLC will be granted final summary judgment and Plaintiffs claims against them will be dismissed.

~~IT IS FURTHER ORDERED, ADJUDGED, AND DECREED this case is stayed pending outcome of Defendants' appeal.~~

SIGNED this _____ day of _____**MAR 2 0 2015**_____, 2015.

_____
HONORABLE ROBERT SCHAFFER
JUDGE PRESIDING

2

AR 000208